**Appeal Nos. 2023-1005 and 2023-1007**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**SOFTVIEW LLC,**
*Appellant*,

v.

**APPLE INC., MOTOROLA MOBILITY LLC,**
*Appellees*,

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
*Intervenor*.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. 95/000,634 and 95/002,132

# BRIEF FOR INTERVENOR

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

MICHAEL S. FORMAN
Associate Solicitor

U.S. Patent and Trademark Office
Office of the Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the U.S. Patent and Trademark Office*

April 17, 2023

**Representative Claim:**

87. A mobile hand-held device, comprising:

a processor,

a wireless communications interface, to facilitate wireless communication with a network that supports access to the Internet;

a display; and

non-volatile memory, operatively coupled to the processor, in which a plurality of instructions are stored that when executed by the processor enable the mobile hand-held device to perform operations including,

rendering a browser interface on the display via which a user is enabled to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;

in response to a user request of the Web page,

retrieving the Web page via the wireless communications interface;

rendering the Web page such that a width of the Web page is rendered to fit across the display, and

re-rendering the display in response to associated user inputs to enable the Web page to be browsed at various zoom levels and panned views while preserving the original page layout, functionality, and design of the Web a e [sic] page content at each zoom level and panned view.

Appx56.

# TABLE OF CONTENTS

Statement of the Issues ........ 1

Statement of the Case ........ 2

A. Relevant Statutory Background ........ 2

B. Regulatory Background of 37 C.F.R. § 42.73(d)(3)(i) ........ 6

C. USPTO Proceedings Involving the '353 Patent ........ 10

1. Prosecution History ........ 10

2. Procedural History of Post-Issuance Proceedings Involving the '353 Patent ........ 11

3. The Instant Inter Partes Reexaminations ........ 14

4. PTAB's Rehearing Decisions Regarding Estoppel Under 37 C.F.R. § 42.73(d)(3)(i) ........ 15

Summary of the Argument ........ 22

Argument ........ 24

I. STANDARD OF REVIEW ........ 24

II. THE PRECLUSION RULE IN 37 C.F.R. § 42.73(d)(3)(i) IS A VALID EXERCISE OF THE USPTO'S RULEMAKING AUTHORITY ........ 24

A. The USPTO Has Reasonably Exercised Its Delegated Authority to Promulgate 37 C.F.R. § 42.73(d)(3)(i) ........ 24

B. Section 42.73(d)(3)(i) Is Not a Substantive Rule Beyond the USPTO's Delegated Regulatory Authority ........ 28

III. THE BOARD'S APPLICATION OF ESTOPPEL PURSUANT TO 37 C.F.R. § 42.73(d)(3)(i) IS CORRECT ........ 31

A. Patentee Estoppel Under 37 C.F.R. § 42.73(d)(3)(i) Applies to Reexaminations ........ 31

B. The Phrase "Patentably Distinct" In 37 C.F.R. § 42.73(d)(3)(i) Should Be Given Its Long-Established Meaning in the Obviousness-Type Double Patenting Sense............34

IV. THE USPTO IS NOT REQUIRED TO IMPORT COMMON LAW PRECLUSION ELEMENTS INTO 37 C.F.R. § 42.73(d)(3)(i)'s PATENTABLY DISTINCT ANALYSIS....................37

Conclusion......................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Laboratories v. Cordis Corporation*,
710 F.3d 1318 (Fed. Cir. 2013)....................5, 6

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*,
764 F.3d 1366 (Fed. Cir. 2014)....................35

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
880 F.3d 1345 (Fed. Cir. 2018)....................19

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991)....................37

*Callaway Golf Co. v. Kappos*,
802 F. Supp. 2d 678 (E.D. Va. 2011).................... 4, 34

*Clement, In re*,
131 F.3d 1464 (Fed. Cir. 1997)....................10

*Cooper Techs. Co. v. Dudas*,
536 F.3d 1330 (Fed. Cir. 2008).................... 4, 28

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016)....................5, 6, 29, 30

*Davis v. Loesch*,
998 F.2d 963 (Fed. Cir. 1993)....................21

*Deckler, In re*,
977 F.2d 1449 (Fed. Cir. 1992)....................10, 36

*Eli Lilly & Co., v. Barr Labs., Inc.*,
251 F.3d 955 (Fed. Cir. 2001)....................21, 35

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988).................... 3, 33

*Etter, In re*,
756 F.2d 852 (Fed. Cir. 1985)....................3, 33

*FCC v. Schreiber*,
381 U.S. 279 (1965) .......... 37

*General Foods Corp. v. Studiengesellschaft Kohle mbH*,
972 F.2d 1272 (Fed. Cir. 1992) .......... 21, 35

*Johnson v. Whitehead*,
647 F.3d 120 (4th Cir. 2011) .......... 37, 38

*Kroekel, In re*,
803 F.2d 705 (Fed. Cir. 1986) .......... 36

*MaxLinear, Inc. v. CF CRESPE, LLC*,
880 F.3d 1373 (Fed. Cir. 2018) .......... 17, 37

*Merck & Co., Inc. v. Kessler*,
80 F.3d 1543 (1996) .......... 28

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011) .......... 36

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018) .......... 5

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) .......... 24

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) .......... 20

*Softview LLC, In re*,
847 F. App'x 930 (Fed. Cir. 2021) .......... 13

*Softview LLC v. Apple Inc., et al.*,
No. 1:10-cv-389-LPS (D. Del.) .......... 13

*Softview LLC v. Kyocera Corp.*,
592 F. App'x 947 (Fed. Cir. 2015) .......... 13

*Softview LLC v. Kyocera Corp.*,
592 F. App'x 949 (Fed. Cir. 2015) .......... 13

*Sullivan, In re*,
362 F.3d 1324 (Fed. Cir. 2004) ........ 24

*Swanson, In re*,
540 F.3d 1368 (Fed. Cir. 2008) ........ 3

*SynQor, Inc. v. Vicor Corp.*,
988 F.3d 1341 (Fed. Cir. 2021) ........ 17, 37

*Tafas v. Doll*,
559 F.3d 1345 (Fed. Cir. 2009) ........ 29

*Thryv, Inc. v. Click-to-Call Techs.*,
140 S. Ct. 1367 (2020) ........ 26

*Vazquez-Claudio v. Shinseki*,
713 F.3d 112 (Fed. Cir. 2013) ........ 24

*Vogel, In re*,
422 F.2d 438 (CCPA 1970) ........ 35

*Wi-Fi One, LLC v. Broadcom Corp.*,
887 F.3d 1329 (Fed. Cir . 2018) ........ 24

**Statutes**

5 U.S.C. § 706(2) ........ 24

35 U.S.C. § 1 et seq. ........ 2

35 U.S.C. § 2(b) ........ 28, 29, 30

35 U.S.C. § 2(b)(2) ........ 28, 29

35 U.S.C. § 2(b)(2)(A) ........ 16, 28, 30

35 U.S.C. § 6 ........ 5

35 U.S.C. § 6(a) ........ 5

35 U.S.C. § 103 ........ 14, 35

35 U.S.C. § 131 ........ 2

35 U.S.C. § 134 (pre-AIA) .......... 4

35 U.S.C. § 135(a)(2) .......... 34

35 U.S.C. § 143 .......... 22

35 U.S.C. § 302 .......... 3

35 U.S.C. § 304 .......... 17

35 U.S.C. § 305 .......... 3

35 U.S.C. §§ 311-319 .......... 5

35 U.S.C. § 314 (pre-AIA) .......... 4, 23, 31-32

35 U.S.C. § 314(b)(2) .......... 4

35 U.S.C. § 314(c) (pre-AIA) .......... 17

35 U.S.C. § 315(c) .......... 12

35 U.S.C. § 315(d) .......... 27, 38

35 U.S.C. § 316 .......... 28, 29

35 U.S.C. § 316(a) .......... 6, 7, 17

35 U.S.C. §§ 316(a)(1)-(13) .......... 6

35 U.S.C. § 316(a)(2) .......... 6

35 U.S.C. § 316(a)(4) .......... *passim*

35 U.S.C. § 316(a)(5) .......... 6

35 U.S.C. § 316(b) .......... 7, 25, 26

35 U.S.C. §§ 321-329 .......... 5

35 U.S.C. § 325(d) .......... 38

35 U.S.C. § 326(a)(4) .......... 8, 9, 26, 33

**Regulations**

37 C.F.R. § 41.77(b)........................................................................................15

37 C.F.R. §§ 42.1-42.80.....................................................................................7

37 C.F.R. § 42.1(b)..........................................................................................8

37 C.F.R. § 42.73.............................................................................................8

37 C.F.R. § 42.73(b)........................................................................................19

37 C.F.R. § 42.73(d)....................................................................................22, 26

37 C.F.R. § 42.73(d)(3) ...............................................................................*passim*

37 C.F.R. § 42.73(d)(3)(i)............................................................................*passim*

37 C.F.R. § 42.73(d)(3)(ii)...............................................................................9

37 C.F.R. §§42.100-42.123..............................................................................7

37 C.F.R. § 42.401..........................................................................................34

37 C.F.R. § 42.405 (b)(3)(i)...............................................................................34

**Other Authorities**

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (Sept. 16, 2011) ......................................................................................5, 6

Pub. L. No. 106-113 (1999)...............................................................................3

Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions (Proposed), 77 Fed. Reg. 6879 (Feb. 9, 2012).........................................7

Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48612 (Aug. 14, 2012)..........................................*passim*

Changes to Implement Derivation Proceedings, 77 Fed. Reg. 56068 (Sept. 11, 2012).........................................................................35

H.R. Rep. No. 98, 112th Cong., 1st Sess. Pt. 1 (2011) .................................... 5, 6

MPEP § 706.03(w) .......................................................................................... 10

## Statement of Related Cases

Softview LLC seeks relief from final decisions of the Patent Trial and Appeal Board in inter partes reexamination proceeding nos. 95/000,634 and 95/002,132, brought by Apple Inc. and Motorola Mobility LLC, respectively, challenging all pending claims of U.S. Patent No. 7,461,353 (the ’353 patent).

The ’353 patent was previously before this Court in *Softview LLC v. Kyocera Corp.*, No. 2014-1600, 592 F. App’x 947 (Fed. Cir. 2015) (Judges Wallach, Taranto, Hughes), in connection with inter partes review proceedings brought by Kyocera Corporation (IPR2013-00007) and Motorola Mobility LLC (IPR2013-00256).

*Softview LLC v. Apple Inc.*, Appeal Nos. 23-1006, -1008, a companion case to this appeal, is a consolidated appeal involving a sibling patent, U.S. Patent No. 7,831,926, which shares a common specification with the ’353 patent, but does not involve the estoppel issues addressed in this appeal.

To the Director’s knowledge, there are no other appeals or pending litigation concerning the ’353 patent that will affect or be directly affected by a decision in this appeal.

## STATEMENT OF THE ISSUES

35 U.S.C. § 316(a)(4) of the AIA states that the USPTO "shall prescribe regulations . . . establishing and governing inter partes review . . . and the relationship of such review to other proceedings under this title." Based on this authority, the USPTO issued 37 C.F.R. § 42.73(d)(3), which precludes a "patent applicant or owner" "from taking action inconsistent with [an] adverse judgment [of unpatentability as to the patent], including obtaining" "[a] claim that is not patentably distinct from a finally refused or canceled claim."

In this case, the Board found certain claims of Softview's patent unpatentable in an inter partes review (IPR). After the IPR determination became a final adverse judgment, the Board applied § 42.73(d)(3) to find other claims in the same patent unpatentable in two pending inter partes reexaminations. The Board reasoned that § 42.73(d)(3) applies to reexamination, just as it does to examination, and found that the claims at issue in the reexaminations, some of which had been amended or added, were not patentably distinct from the claims that were finally held unpatentable in the IPR.

On appeal, Softview challenges the USPTO's authority to issue § 42.73(d)(3), as well as its proper interpretation. Specifically, the issues on appeal are:

(1) whether the authority conveyed by 35 U.S.C. § 316(a)(4) to establish

regulations governing the relationship of IPRs to other USPTO proceedings authorized the USPTO to issue § 42.73(d)(3),

(2) if so, whether the Board properly determined that § 42.73(d)(3) is applicable to inter partes reexamination proceedings,

(3) if so, (a) whether the Board properly understood the term "not patentably distinct" in § 42.73(d)(3)(i) to have the same well-understood meaning that it has in the context of obviousness-type double patenting, and (b) whether the Board properly refused to read common law principles of collateral estoppel into the text of § 42.73(d)(3)(i).

As explained below, this Court should affirm the Board's determinations as to each of these issues.

## STATEMENT OF THE CASE

### A. Relevant Statutory Background

The Patent Act of 1952 (Patent Act), 35 U.S.C. § 1 et seq., charges the USPTO with examining applications for patents, directing it to issue a patent if the statutory criteria are satisfied. 35 U.S.C. § 131. Federal law permits the USPTO to reconsider the patentability of inventions claimed in issued patents, and Congress has established and modified several administrative proceedings to enable the agency to revisit existing patents.

In 1980, Congress empowered the USPTO to conduct ex parte

reexamination of existing patent claims. The statutory provisions authorized the USPTO to conduct reexamination of "any claim of a patent" "at any time," either at the request of "[a]ny person" or on the agency's "own initiative," if the USPTO determined that prior art raised a "substantially new question of patentability." 35 U.S.C. § 302. The resulting reexamination proceedings are akin to an initial examination. Indeed, Congress expressly provided that reexamination proceedings are to be "conducted according to the procedures established for initial examination." 35 U.S.C. § 305. As this Court has recognized, "[i]n a reexamination proceeding . . . the 'focus' of the reexamination 'returns essentially to that present in an initial examination.'" *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (quoting *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) (en banc))); *see also id.* (explaining "[t]he intent underlying reexamination is to 'start over' in the PTO" and to reexamine the claim as "if they had been originally examined in light of all of the prior art of record in the reexamination proceeding"). Thus, in a reexamination, the "'examiner is not attacking the validity of the patent but is conducting a subjective examination of the claims in light of prior art.'" *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008).

In 1999, Congress elected to add a new optional "inter partes" reexamination proceeding. Pub. L. No. 106-113 (1999). Congress's purpose was to entice more parties to use the reexamination process "'by giving third-party requesters the

option of inter-partes reexamination procedures' in which they are 'afforded an expanded, although still limited, role in the reexamination process.'" *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1332 (Fed. Cir. 2008) (emphasis added).

Inter partes reexamination is conducted under nearly identical procedures as ex parte reexamination. Like ex parte reexamination, Congress expressly provided that inter partes reexamination "shall be conducted according to the procedures established for initial examination." 35 U.S.C. § 314 (pre-AIA). The primary difference in the proceeding is that during the reexamination, after every substantive response by the patent owner, the third-party requester is given "one opportunity to file written comments addressing issues raised by the action . . . or the patent owner's response." *Id.* § 314(b)(2). Thus, the "[US]PTO's role is identical" in ex parte and inter partes reexaminations. *Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 687 (E.D. Va. 2011). The "[US]PTO is not a neutral adjudicator in an *inter partes* reexamination;" rather "[i]n both *ex parte* and *inter partes* reexaminations, the [US]PTO determines whether it correctly approved the patent during its initial examination of the patent's application." *Id.*

As with initial examinations, Congress provided that all reexamination proceedings – whether ex parte or inter partes – are conducted by a "primary examiner," whose decisions are appealable to the Board. 35 U.S.C. § 134 (pre-AIA).

In the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (Sept. 16, 2011), Congress further modified the framework for USPTO review of claims in existing patents in an effort to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 98, 112th Cong., 1st Sess. Pt. 1, at 39-40 (2011); *see Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1370 (2018); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 267-68 (2016).

The AIA established several new procedures through which third parties may challenge the patentability of claims in issued patents and directed the USPTO's Board to conduct such proceedings. 35 U.S.C. § 6 ("There shall be . . . a Patent Trial and Appeal Board [, which] . . . shall conduct inter partes reviews and post-grant reviews pursuant to chapters 31 and 32."). The form of those proceedings is primarily governed by 35 U.S.C. §§ 311-319 (inter partes review) and §§ 321-329 (post-grant review). As relevant here, the AIA retained ex parte reexamination, and transformed inter partes reexamination into a new streamlined, adjudicative proceeding called inter partes review. *Cuozzo*, 579 U.S. at 267-68; *see* AIA § 6(a), 125 Stat. 299. One of the main purposes of this reform was to "'convert[] inter partes reexamination from an examinational to an adjudicative proceeding.'" *Abbott Lab's v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013)

(quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)). A key "improvement" that Congress made to the proceeding was the new availability of "discovery," including depositions and cross-examinations. *See* 35 U.S.C. § 316(a)(5). Congress accordingly eliminated the role of the examiner in the inter partes review and instead placed these proceedings directly before the Board, as it has done with other types of contested proceedings. *Abbott*, 710 F.3d at 1327. Congress further provided that prior provisions governing inter partes reexamination "shall continue to apply" to all remaining inter partes reexaminations. Pub. L. No. 112-29, 125 Stat. 283, 305 (2011).

### B. Regulatory Background of 37 C.F.R. § 42.73(d)(3)(i)

To implement the AIA's review scheme, Congress granted the USPTO new rulemaking authority. *See* 35 U.S.C. § 316(a); *see also Cuozzo*, 579 U.S. at 277. Section 316(a) contains several express delegations of authority empowering the Director, *inter alia*, to prescribe regulations "setting forth the standards for the showing of sufficient grounds to institute a review," and regulations "establishing and governing inter partes review" and "the relationship of such review to other proceedings." 35 U.S.C. §§ 316(a)(2), (a)(4); *see also* 35 U.S.C. §§ 316(a)(1)-(13). Congress further specified that, in exercising its rulemaking authority under the AIA, "the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, [and] the efficient administration of

the Office." 35 U.S.C. § 316(b).

Pursuant to the delegation under § 316(a), the Director issued a series of proposed rules in February 2012,[1] hosted public meetings to introduce the rules across the country, and ultimately received 251 comments. 77 Fed. Reg. 48612, 48626-48670 (Aug. 14, 2012) (Final Rule). The USPTO issued final rules in August 2012, codified in Part 42 of Title 37 of the Code of Federal Regulations. Subpart A sets forth regulations governing all post-issuance proceedings, including inter partes reviews. 37 C.F.R. §§ 42.1-42.80. Subpart B provides regulations specific to inter partes reviews. 37 C.F.R. §§42.100-42.123. The rulemaking states that the purpose of the rule package "is to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." Final Rule, 77 Fed. Reg. at 48,612. It further states that "the rulemaking process is designed to ensure the integrity of the trial procedures." *Id.*

In furtherance of the statutory mandate in § 316(b) to take into account "the effect of any such regulation" on "the efficient administration of the Office," the regulations themselves require that they be construed to "secure the just, speedy,

[1] Notice of Proposed Rulemaking, Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 6,879 (proposed Feb. 9, 2012).

and inexpensive resolution of every proceeding" before the Board. 37 C.F.R. § 42.1(b) ("Construction").

In accordance with this statutory and regulatory directive, the USPTO adopted a regulation outlining the estoppel effect of a final adverse judgment of unpatentability by the agency in an AIA review proceeding. *See* 37 C.F.R. 42.73(d)(3)(i). The regulation states:

> § 42.73 Judgment.
>
> (a) A judgment, except in the case of a termination, disposes of all issues that were, or by motion reasonably could have been, raised and decided.
>
> . . .
>
> (d) Estoppel.
> . . .
> (3) *Patent applicant or owner*. A patent applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining in any patent:
>
> (i) A claim that is not patentably distinct from a finally refused or canceled claim; . . . .

*Id.*

The final rule specifically identifies 35 U.S.C. § 316(a)(4) as providing rulemaking authority for 37 C.F.R. § 42.73(d)(3):

> Section 42.73(d)(3) applies estoppel against a party whose claim was cancelled or who requested an amendment to the specification or drawings that was denied. *The rule is consistent with 35 U.S.C. 316(a)(4), as amended, and 326(a)(4), which require that the Office prescribe regulations establishing and governing the reviews and the*

*relationship of such reviews to other proceedings under title 35.*

Final Rule, 77 Fed. Reg. at 48625 (emphasis added). In the commentary accompanying the final rule package, the USPTO responded to questions about "whether there is [a] statutory basis for the patent owner estoppel provisions set forth in proposed § 42.73(d)(3)." Final Rule, 77 Fed. Reg. at 48649. Specifically, comment 213 and the agency's response states:

> **Comment 213**: A number of comments questioned whether there is statutory basis for the patent owner estoppel provisions set forth in proposed § 42.73(d)(3). Several comments specifically stated that proposed § 42.73(d)(3)(ii) is inconsistent with the AIA and other statutory provisions, and exceeds the scope of the common law doctrines of claim preclusion and issue preclusion. Several comments suggested alternative language for the rule. For instance, two comments suggested that the proposed rule should be revised to be limited to claims that are not patentably distinct from the claims held to be unpatentable in the proceeding. On the other hand, several other comments were in favor of proposed § 42.73(d)(3). According to those comments, it is reasonable for the Office to limit recapture of substantially similar claim limitations, and the estoppel provision is consistent with the interference estoppel.
>
> **Response**: In view of the comments, the Office modified the proposed rule. As adopted in this final rule, § 42.73(d)(3) does not contain the provision that a patent applicant or owner may not obtain in a patent "[a] claim that could have been filed in response to any properly raised ground of unpatentability for a finally refused or cancelled claim." Additionally, the Office modified the provision that was proposed in § 42.73(d)(3)(i) to "[a] claim that is not patentably distinct from the finally refused or cancelled claim."
>
> *Under 35 U.S.C. 316(a)(4), as amended, and 35 U.S.C. 326(a)(4), the Office is required to prescribe regulations setting forth the relationship between the review and other proceedings in the Office (e.g., examination).* Section 42.73(d)(3)(i), as adopted in this final rule,

> merely provides estoppel against claims that are patentably indistinct from those claims that were lost, and claim amendments that were presented and denied, during a trial. In other words, the patent owner may subsequently present in a continuing or reissue application claims that are patentably distinct from such claims. As such, § 42.73(d)(3) set forth in this final rule is consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule. *See, e.g., In re Deckler*, 977 F.2d 1449, 1452 (Fed. Cir. 1992); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997) (the recapture rule prevents a patentee from regaining through reissue the subject matter that the patentee surrendered in an effort to obtain allowance of the claim).

*Id.* (emphasis added).

A second comment (comment 215) "suggested that the Office should examine the claim on the merits in the subsequent proceeding, rather than applying the patent owner estoppel." *Id.* The USPTO responded:

> **Response**: The Office will examine a claim presented in a subsequent proceeding on the merits and apply the estoppel if the claim is not patentably distinct from the finally refused or cancelled claim, similar to a ground of rejection based on res judicata (see, e.g., MPEP § 706.03(w)).

*Id.*

### C. USPTO Proceedings Involving the '353 Patent

#### 1. Prosecution History

Softview owns the '353 patent, entitled "Scalable Display of Internet Content on Mobile Devices." Appx218. The '353 patent issued on December 2, 2008, claiming priority to an application filed on April 7, 2001. *Id.* Initially, the

patent application that resulted in the '353 patent had only 16 claims that focused on the translation of web content from its original format into a scalable vector presentation. Appx978-979. During prosecution, the applicant submitted a series of amendments to the specification and claims, and by the time the '353 patent issued on December 2, 2008, it contained 319 claims. *Id.*

At a high level, and as indicated by its title, the '353 patent relates to the scalable display of Internet content, e.g., Hyper Text Markup Language HTML-based content, on mobile devices by enabling the content "to be rapidly rendered, zoomed, panned" for better viewing on small screens. Appx242, col. 2, ll. 22-39. The patent describes the translation of the content into a scalable vector representation for display on a mobile device. Appx249, col. 15:43-18:39. The patent discloses manipulating the webpage by zooming and panning the webpage while preserving the original page layout, function, and design. Appx251, col. 20:49-55.

### 2. Procedural History of Post-Issuance Proceedings Involving the '353 Patent

On May 20, 2011, Apple Inc. filed a request for inter partes reexamination (95/000,634) of the '353 patent (Appx456-568), and subsequently also filed a separate request for ex parte reexamination (90/009,994) of the '353 patent on April 13, 2012, Appx4455-4514. On August 31, 2012, Motorola Mobility LLC also filed a request for inter partes reexamination (95/002,132) of the '353 patent.

Appx3109-3618.

On October 12, 2012, about a month after the AIA's inter partes review provisions went into effect, Kyocera filed a petition for inter partes review of 18 (out of the 319) claims of the '353 patent. Appx50. On December 21, 2012, because all of the claims and grounds challenged in the inter partes review (IPR2013-00007) would be considered in the three reexaminations, the Board issued orders staying the ex parte and inter partes reexaminations filed by Apple and Motorola, pending the outcome of the inter partes review. *See* Appx51. In its orders staying the reexaminations, the Board noted that "[c]onducting … reexaminations concurrently with the instant proceeding . . . would duplicate efforts within the Office . . . result in inconsistencies, [and] amendment of the claims in the reexamination proceedings could change the scope of the claims challenged" in the inter partes review. *Apple Inc. v. Softview LLC*, No. IPR2013-00007, Paper 9 (PTAB Dec. 20, 2012), at 2.

On March 29, 2013, the Board instituted inter partes review proceeding no. IPR2013-00007 as to the challenged claims in the '353 patent. Appx50. Following institution, Motorola filed its own petition, along with a motion for joinder under 35 U.S.C. § 315(c), which the Board granted. *Id.* On March 27, 2014, the Board issued a final written decision, finding each of the 18 challenged claims of the '353 patent unpatentable. Appx50-51. Softview appealed the

Board's final written decision to this Court. Appx51. This court affirmed. *Softview LLC v. Kyocera Corp.*, 592 F. App'x 947 (Fed. Cir. 2015) (Rule 36 judgment).[2] The inter partes review certificate in IPR2013-00007 issued on January 12, 2016, and cancelled the challenged claims from the '353 patent.[3] Appx267-268.

The stay of the ex parte and inter partes reexamination proceedings was lifted on November 27, 2015. Appx51. Subsequently, the ex parte reexamination no. 90/009,994 found certain amended claims to be patentable, added new claims 320-322, and canceled other claims.[4] Appx51. On December 29, 2017, the ex parte reexamination certificate for 90/009,994 issued. Appx269-275. All of the

[2] Because the claims asserted by Softview in the infringement litigation, *Softview LLC v. Apple Inc., et al.*, No. 1:10-cv-389-LPS (D. Del), were the same claims that were finally canceled in the inter partes review, the district court action was dismissed with prejudice on October 29, 2015.

[3] Related U.S. Patent No. 7,831,926 has the same title, is a sibling of, and shares a common specification with the '353 patent. Post-issuance reconsideration of the '926 patent has followed a similar path with: (i) two inter partes reexaminations (95/000,635 and 95/002,126), currently on appeal in *Softview LLC v. Kyocera Corp.*, Fed. Cir. Appeal Nos. 23-1006, -1008; (ii) an ex parte reexamination 90/009,995 (affirmed in *In re Softview LLC*, 847 F. App'x 930 (Fed. Cir. 2021) (Rule 36)); and (iii) two inter partes reviews IPR2013-00004 and IPR2013-000257 (affirmed in *Softview LLC v. Kyocera Corp.*, 592 F. App'x 949 (Fed. Cir. 2015)(Rule 36)). The consolidated appeal from the inter partes reexaminations involving the '926 patent is currently before this court in Nos. 23-1006 and 23-1008, and has been designated as a companion case to the instant appeal.

[4] The Board issued its final decision in the ex parte reexamination on July 6, 2021. Softview did not appeal that decision.

claims reflected in the ex parte reexamination certificate are identical to those at issue in the inter partes reexaminations, and thus are at issue in this appeal. *See* Appx2663-2664.

### 3. The Instant Inter Partes Reexaminations

On October 1, 2018, the Examiner in the inter partes reexaminations rejected the vast majority of the pending claims and issued actions closing prosecution.[5] Appx1704-1803 (95/000,634); Appx3760-3818 (95/002,132). The Examiner found the rejected claims obvious under 35 U.S.C. § 103 over the Pad++ references, and in some cases, combined with other prior art. *Id.* The Examiner also found some of the claims to be patentable over the same prior art. *Id.* In 2020, the Examiner ultimately issued right of appeal notices maintaining the October 2018 findings, and notifying Softview and the third party requesters of their appeal rights to the Board. Softview appealed the Examiner's rejections (Appx2125-2201 (95/000,634); Appx4023-4114 (95/002,132)), and Apple and Motorola Mobility cross-appealed from the Examiner's findings favorable to patentability. Appx2523-2565 (95/000,634); Appx4115-4150 (95/002,132).

[5] The Action Closing Prosecution in an inter partes reexamination proceeding is not a "final" appealable office action, but it does place restrictions on the ability of the Patent Owner to amend the claims. The Patent Owner may respond to the Action Closing Prosecution and if it does so, the Third Party Requester may again file comments. A "Right of Appeal Notice" typically follows. The "Right of Appeal Notice" is a final, appealable office action.

In its final decisions on appeal, issued April 6, 2022, the Board reversed all of the Examiner's rejections under 35 U.S.C. § 103, and also reversed the Examiner's decisions favorable to patentability for the claims appealed by the third-party requesters. Appx47-145 (95/000,634); Appx184-209 (95/002,132). The Board next entered a new ground of rejection as to all claims still subject to the reexamination proceedings as precluded under 37 C.F.R. § 42.73(d)(3)(i) based on the adverse decision in IPR2013-00007. Appx72-132 (95/000,634); Appx195-198 (95/002,132). Specifically, although IPR2013-00007 resulted in the final cancellation of only the 18 challenged claims, the Board in the instant inter partes reexaminations found the remaining pending claims to be "not patentably distinct" from the cancelled claims per § 42.73(d)(3)(i). Appx74 (95/000,634); Appx195 (95/002,132; incorporating by reference the decision on appeal in 95/000,634).

Because the Board relied on a new ground of rejection, the USPTO rules allowed Softview to either: (1) request rehearing, or (2) reopen prosecution. 37 C.F.R. § 41.77(b). Appx129 (95/000,634); Appx196 (95/002,132). Softview elected to seek rehearing. *See* Appx1-46 (95/000,634); Apppx146-183 (95/002,132).

#### 4. PTAB's Rehearing Decisions Regarding Estoppel Under 37 C.F.R. § 42.73(d)(3)(i)

The Board's final and rehearing decisions rejected numerous arguments by Softview as to why § 42.73(d)(3)(i) is inapplicable. Appx8-22 (Decision on

Request for Rehearing); Appx70-78 (Decision on Appeal).[6]

At the outset, the Board found wholly unpersuasive Softview's argument that the USPTO did not have rulemaking authority to promulgate 37 C.F.R. § 42.73(d)(3)(i). Appx12-16. The Board found that 35 U.S.C. § 316(a)(4) provided the necessary rulemaking authority when it instructed the Director to prescribe regulations "establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title." Appx13. The Board found that the USPTO has consistently and correctly pointed to § 316(a)(4), both in its final rule and in the comments accompanying notice and comment, and its specific mandate to "prescribe regulations setting forth the relationship between the review and other proceedings in the Office (e.g., examination)," as providing the necessary rulemaking authority. Appx13. Additionally, the Board found that the agency had authority under 35 U.S.C. § 2(b)(2)(A), which permits the agency to establish regulations, not inconsistent with law, which "shall govern the conduct of proceedings in the Office." Appx14.

The Board found that Softview wrongly argued that the rule exceeds the USPTO's rulemaking authority because there is no statutory provision that

[6] For purposes of the Director's intervention, the differences in the records of the two inter partes reexaminations are immaterial. Accordingly, this brief cites only to the record of 95/000,634, unless separate citations to the record of 95/002,132 are necessary.

specifically provides for estoppel against the patent owner. The Board explained that there is no requirement "that final rulemaking mirror statutory provisions," nor could it, given that Congress very explicitly gave rulemaking authority to the Director under § 316(a), and, with it, the discretion to determine the means to achieve Congress's mandates. Appx14.

Softview also argued that because the grounds for inter partes reexamination are limited to patents and printed publications, estoppel cannot apply. *See* Appx14-15. The Board rejected this argument based on *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1347 (Fed. Cir. 2021) and *MaxLinear, Inc. v. CF CRESPE, LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018), in which this Court applied common law collateral estoppel in inter partes reexamination. Appx14-15; Appx19. The Board further noted that holding patentably indistinct claims unpatentable based on a prior adverse decision in an IPR advances the legislative mandate that "inter partes reexamination proceedings 'be conducted with special dispatch,'" and, in any event, such a finding of unpatentability effectively operates as a rejection based on the patents or printed publications underlying the prior adverse decision. Appx15 (quoting 35 U.S.C. § 314(c) (pre-AIA)).

In response to Softview's assertion that estoppel would violate patent owners' statutory rights to make statements on the record about a substantial new question of patentability under 35 U.S.C. § 304 (a provision governing ex parte

reexaminations), the Board observed that § 42.73(d)(3)(i) operates only to "prohibit patentably indistinct claims and in no way limits a patent owner's opportunity to explain why its claims are patentably distinct." Appx15. The Board noted that Softview has had ample opportunity to make statements and, indeed, contends that its claims are patentably distinct from those canceled in IPR2013-00007. *Id.*

The Board also rejected Softview's argument that § 42.73(d)(3)(i) applies only to estop a patent owner from "obtaining a new claim" and does not apply to previously issued claims. Appx8-12; *see also* Appx75-77. The Board found that § 42.73(d)(3)(i), implemented pursuant to 35 U.S.C. § 316(a)(4), creates an estoppel between cancelled claims in an IPR and claims in "'other proceedings in the Office,'" which necessarily includes both examination and reexamination. Appx9. And, unlike inter partes reviews of issued claims, where a patentee is merely defending a claim against a charge of unpatentability, the Board found that because "reexamination is based on an examinational and not an adjudicatory model" and is conducted according to the rules of examination, confirming a claim in a reexamination is the same as "'obtaining' a claim" in an examination for purposes of § 42.73(d)(3)(i). Appx9; *see also* Appx76-77.

For the same reasons, the Board distinguished two non-precedential IPR decisions involving unamended claims cited by Softview, as those cases did not

involve examination or examination-like action by the office. Appx10. The Board further noted that public policy favors its reading because it prohibits "repeated litigation of the same validity issues," and protects the public's reliance on the final cancellation of the claims in an inter partes review. Appx11; Appx77, n.11.

The Board found Softview's reliance on *Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1347 (Fed. Cir. 2018), as misguided. Appx10-11. In *Arthrex*, this Court held that "37 C.F.R. § 42.73(b) permits the Board to enter an adverse judgment when a patent owner cancels all claims at issue after an IPR petition has been filed, but before an institution decision." *Id.* at 1350. The Board found that the logic of *Arthrex* does not extend to the situation here because the "*Arthrex* court had no occasion to consider whether § 42.73(d)(3) applies to subsequent reexamination proceedings and did not hold, as [Softview] contends, that the regulation would only affect prosecution of a pending patent application." Appx11 (emphasis omitted).

Regarding Softview's interpretation of "not patentably distinct" as used in § 42.73(d)(3)(i) to mean "the same or substantially the same," the Board found that Softview's arguments are without merit. Appx17. First, the Board found that nothing supports Softview's assumption that because the originally proposed rule would have applied estoppel to "'[a] claim to substantially the same invention,'" but, in the final rule, estoppel applied to "'[a] claim that is not patentably distinct,'"

the regulatory history suggests that "'not patentably distinct'" means "'substantially the same invention.'" Appx17-18. The Board found that the more logical reading is that because the final rule adopted language different from "same or substantially the same invention," it intended something different [Appx17-19], i.e., the long-settled understanding of "'not patentably distinct'" in the double patenting and interference contexts as meaning no "'more than an obvious variation,'" Appx77-78.

Next, the Board rejected as a logical fallacy Softview's argument that because "same or substantially the same" has the meaning "patentably indistinct" in derivation proceedings, "[w]ritten in reverse form, the Definition becomes 'patentably indistinct [i.e., not patentably distinct] means the same or substantially the same." Appx18. Likewise, the Board found that Softview's reliance on *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018), is based on the same false premise. The Board noted that in the portion of *SimpleAir* that Softview quotes, this Court determined that "claims which are patentably indistinct are essentially the same." *Id.* But, as with Softview's recasting of the definition from derivation practice, "if claims are 'patentably indistinct' in the obviousness sense, then they are 'essentially the same,' . . . does not mean the converse is [also] true – . . . 'i.e., that claims are only patentably indistinct if they are 'essentially the same.'" Appx18-19.

Instead, the Board concluded that "not patentably distinct" in § 42.73(d)(3)(i) has the same meaning as it has long had in the obviousness-type double patenting context. Appx31 (citing *Eli Lilly & Co. v. Barr Labs.*, Inc., 251 F.3d 955, 968 (Fed. Cir. 2001) ("A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim."); *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1278 (Fed. Cir. 1992); *Davis v. Loesch*, 998 F.2d 963, 965 n.2 (Fed. Cir. 1993) (interference)); *see also* Appx77 (finding that "'patentably distinct' has been interpreted to mean 'if the rejected claim defines more than an obvious variation, it is *patentably distinct*'") (citations omitted; emphasis in original).

The Board also dismissed Softview's attempts to import common law elements of collateral estoppel into § 42.73(d)(3). Appx19-22. The Board noted that Softview had not cited any authority under which the Board is required to undertake a collateral estoppel analysis in applying § 42.73(d)(3). Appx21. The Board found that Softview read too much into the fact that "in promulgating the rule, the [US]PTO stated § 42.73(d)(3) should be interpreted 'consistent with . . . the common law related to estoppel.'" Appx20. The Board found that there was no basis for reading § 42.73(d)(3) as an adoption of common law estoppel. Rather § 42.73(d)(3) is merely "'consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture

rule,'" as stated in the rulemaking. Appx20 (citing Rules of Practice, 77 Fed. Reg. at 48648).

Softview appealed the Board's decisions to this Court. The Director intervenes to defend the USPTO's promulgation of § 42.73(d)(3)(i) and the Board's application of estoppel in the inter partes reexaminations at issue in this appeal. *See* 35 U.S.C. § 143.[7]

## SUMMARY OF THE ARGUMENT

Softview challenges the USPTO's promulgation, interpretation, and application of 37 C.F.R. § 42. 73(d)(3), which governs the actions a "patent applicant or owner is precluded from taking" after an "adverse judgment" regarding its patent claims. First, Softview challenges the agency's authority to promulgate § 42.73(d)(3), but the regulation is a straightforward exercise of the authority in 35 U.S.C. § 316(a)(4) to establish regulations "governing . . . the relationship of [inter partes] review to other proceedings under this title," given that inter partes reexamination is undoubtedly another "proceeding under" title 35.

Softview's challenges to the Board's interpretation and application of § 42.73(d)(3) are likewise meritless. Softview's contention that the regulation cannot be applied in this inter partes reexamination because Softview cannot be

[7] The Director has intervened only to address the challenges to the agency's promulgation and interpretation of the § 42.73(d)(3) rule, and thus does not address the merits of the agency's application of the rule to the facts of this case.

said to be "obtaining" claims that have already issued, fails for three reasons. First, it is at odds with the regulation's plain language, which refers not only to a "patent applicant" but also to an "owner." 37 C.F.R. § 42.73(d)(3). Second, the regulation bars patent owners from taking any "action inconsistent" with a prior adverse judgment, "including"—but not limited to — "obtaining" a patent. Third, because there is no dispute that § 42.73(d) applies to examination, it necessarily applies to inter partes reexamination, which is "conducted according to the procedures established for initial examination," 35 U.S.C. § 314 (pre-AIA).

Softview's argument that "not patentably distinct" in § 42.73(d)(3)(i) means "the same or substantially the same" ignores the well-established usage of the phrase "patentably distinct" in patent law, and would read out the term "patentably" from the regulation's text.

Finally, Softview's argument that § 42.73(d)(3) must be read to embody common law principles of collateral estoppel is without merit. Section 42.73(d)(3) stands on its own and should not be construed as including limitations that are not in its text.

These textual points are further supported by sensible policy considerations. Once the USPTO has made a final determination that a claim is unpatentable, that claim and those patentably indistinct should not subsequently be patented. Thus,

§ 42.73(d)(3) avoids both inconsistent results and the wasting of resources required for a second patentability analysis of patentably indistinct claims.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews issues of regulatory interpretation de novo. *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013). This Court will only set aside agency actions if they are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706(2); *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004).

The "Board's administration of its rules for trial proceedings is reviewed for an abuse of discretion." *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1339 (Fed. Cir. 2018); *see also Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015). An abuse of discretion only occurs "if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings, or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Redline*, 811 F.3d at 442 (internal quotation omitted).

## II. THE PRECLUSION RULE IN 37 C.F.R. § 42.73(d)(3)(i) IS A VALID EXERCISE OF THE USPTO'S RULEMAKING AUTHORITY

### A. The USPTO Has Reasonably Exercised Its Delegated Authority to Promulgate 37 C.F.R. § 42.73(d)(3)(i)

As most relevant here, Congress empowered the USPTO Director to issue

rules "establishing and governing inter partes review under this chapter and the *relationship of such review to other proceedings under this title*." 35 U.S.C. § 316(a)(4) (emphasis added). It further instructed that, "[i]n prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter." 35 U.S.C. § 316(b).

Pursuant to that grant of rulemaking power, and following notice and comment, the agency promulgated § 42.73(d)(3)(i) specifying the estoppel effect of an adverse judgment against a patent owner in an AIA proceeding on subsequent proceedings. *See* 37 C.F.R. § 42.73(d)(3)(i). Section 42.73(d)(3) provides that when the Board enters an adverse judgment against a patent owner in an inter partes review proceeding, an estoppel effect attaches, precluding the patent owner "from taking action inconsistent with the [earlier] adverse judgment" in later proceedings. Among other things, the "patent applicant or owner" is precluded in subsequent proceedings from "obtaining in any patent . . . [a] claim that is not patentably distinct from a finally refused or canceled claim." 37 C.F.R. § 42.73(d)(3)(i).

In promulgating the rule, the USPTO principally identified 35 U.S.C. § 316(a)(4) as authority for its enactment:

> Section 42.73(d)(3) applies estoppel against a party whose claim was cancelled or who requested an amendment to the specification or drawings that was denied. *The rule is consistent with 35 U.S.C. 316(a)(4), as amended, and 326(a)(4), which require that the Office prescribe regulations establishing and governing the reviews and the relationship of such reviews to other proceedings under title 35.*

Final Rule, 77 Fed. Reg. at 48625 (emphasis added). In § 316(a)(4), the AIA conferred capacious rulemaking authority on the USPTO Director to "prescribe regulations . . . establishing and governing inter partes review . . . and the relationship of such [inter partes] review to other proceedings under [Title 35]." 35 U.S.C. § 316(a)(4). "[O]ther proceedings under [Title 35]" straightforwardly includes all other patent proceedings at the USPTO, including examination and reexamination proceedings. And, § 316(a)(4)'s reference to "the *relationship* of such review to [those] other proceedings" necessarily contemplates the power to promulgate regulations ensuring the efficacy of inter partes review while respecting the patent owner's right to seek patentably distinct claims after the inter partes review. *See id.* Section 42.73(d) serves that purpose.

Contrary to Softview's arguments, nothing in the statute suggests that Congress intended a patent owner to have the opportunity to seek claims patentably indistinct from claims finally canceled in an inter partes review. Instead, Congress was focused on "the integrity of the patent system" and "the efficient administration of the Office" and expressly required the Director to prescribe regulations to further those goals. 35 U.S.C. § 316(b); *see also Thryv,*

*Inc. v. Click-to-Call Techs.*, 140 S. Ct. 1367, 1374 (2020) (explaining that the AIA "sought to weed out bad patent claims efficiently" and was designed "'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs'"). Prohibiting a patent owner from procuring claims that are patentably indistinct from claims finally adjudicated unpatentable accomplishes those goals; it improves patent quality, ensures consistency across proceedings, and reduces litigation and administrative costs associated with needless follow-on agency proceedings.

Further reflecting Congress's desire for consistency on issues of patentability, the AIA authorizes the USPTO to issue "stay, transfer, consolidation, or termination" orders for other proceedings in the USPTO pending an inter partes review if the proceeding "involve[es]" the same patent. *See* 35 U.S.C. § 315(d) (giving the Director discretion to determine how co-pending matters may proceed). Because the USPTO has the power to consolidate multiple proceedings with inter partes review, it would make little sense to deny the USPTO the ability to prescribe regulations ensuring that those proceedings are efficient and produce consistent results.

Congress thus left in the agency's expert hands the resolution of questions necessary to make inter partes review a practical success, and intentionally made the choice to give the agency the discretion to decide how best to deal with

questions regarding the patentability of claims across proceedings. Because interference with the USPTO's management of that "relationship" would run counter to Congressional intent, the agency's exercise of conferred discretion in promulgating § 42.73(d)(3)(i) should not be disturbed.

### B. Section 42.73(d)(3) Is Not a Substantive Rule Beyond the USPTO's Delegated Regulatory Authority

Softview asserts that § 42.73(d)(3) exceeds the USPTO's "rulemaking authority[, is] contrary to statute, fundamentally unfair, and void as *ultra vires*." Br. at 15. Softview contends that the power of the USPTO "to prescribe regulations related to IPRs is limited by 35 U.S.C. § 316 in view of § 2(b)(2)," (Br. at 15) and Congress purportedly only authorized the USPTO to prescribe "procedural" rather than "substantive" rules under § 2(b)(2). Br. at 7-10. Softview seeks (Br. at 7) to derive that limit from a line of decisions from this Court construing 35 U.S.C. § 2(b), a statutory grant of rulemaking authority that long predates the AIA and the more directly applicable § 316(a)(4). Section 2(b) authorizes the Director to "establish regulations [] not inconsistent with law, which . . . shall govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2)(A). This Court has concluded that the USPTO may issue only "procedural" rules under section 2(b), *see, e.g., Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549-50 (1996), *cert. denied*, 519 U.S. 1101 (1997), and that it therefore cannot rely on § 2(b) as authority to "effect[] a change in existing law or policy which affects individual

rights and obligations," *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336 (2008) (citation, internal quotation marks, and brackets omitted).

The Supreme Court's opinion in *Cuozzo*, 579 U.S. 261, calls this pre-AIA precedent into doubt, both on its own terms and in light of the additional rulemaking authorities enacted in the AIA. *See id.* at 277 (noting that the Federal Circuit reads 35 U.S.C. § 2(b)(2) as "limited to procedural rules" but stating that "[t]hat [the] statute does not clearly contain the Circuit's claimed limitation, nor is its language the same as that of § 316(a)(4)"); *see also Tafas v. Doll*, 559 F.3d 1345, 1365 (Fed. Cir. 2009) (Bryson, J., concurring), *reh'g en banc granted, opinion vacated*, 328 Fed. App'x 658 (Fed. Cir. 2009) ("[T]he question whether the [US]PTO is authorized to promulgate particular regulations" under Section 2(b) "does not turn on an abstract inquiry into whether a particular rule can be characterized as substantive, procedural, or interpretive. Instead, it calls on [the courts] to ask what Congress has empowered the [US]PTO to do through rulemaking.").

Nothing in § 316 or any other provision of the AIA draws that distinction or attempts to limit the agency's authority to procedural matters. In adopting § 42.73(d)(3), the agency primarily relied on 35 U.S.C. § 316(a)(4),[8] which

[8] In addition to § 316(a)(4), the Office relied on the power granted in 35 U.S.C. § 2(b) as an independent source of authority. *See* Final Rule, 77 Fed. Reg. at 48670 (listing both 35 U.S.C. § 2(b)(2) and § 316(a)(4) as authority for the rule).

broadly authorized the agency to prescribe regulations "establishing" and "governing" inter partes review, as well as the authority to specifically define the "relationship of such review to other proceedings under this title." 35 U.S.C. § 316(a)(4). And the Supreme Court has already rejected an attempt to read this Court's "procedural" limitation regarding 35 U.S.C. § 2(b) into 35 U.S.C. § 316(a)(4), explaining that the latter "refers more broadly to regulations 'establishing and governing inter partes review,'" and that this "Circuit's prior interpretation of § 2(b)(2)(A) cannot magically render unambiguous the different language in the different statute," *i.e.*, § 316(a)(4). *Cuozzo*, 579 U.S. at 277. Softview identifies no persuasive reason to conclude that § 42.73(d)(3)(i) falls outside 35 U.S.C. § 316(a)(4)'s broad grants of rulemaking power.

In any event, even if this Court's § 2(b) precedent did control the analysis here, § 42.73(d)(3) and the "patentably distinct" standard it employs would not be "substantive" under this Court's case law. Section 42.73(d)(3) does not prescribe what is patentable and what is not. Instead, familiar principles of estoppel are applied to prevent patentees from recouping patent claims indistinct from claims that they have lost in AIA proceedings. As the Board correctly found, it "simply operates to prohibit patentably indistinct claims and in no way limits a patent owner's opportunity to explain why its claims are patentably distinct." Appx15. In fact, Softview contends that its claims are patentably distinct from those

canceled in IPR2013-00007. Br. 30-79. The Board's finding of unpatentability based on estoppel and rejection of Softview's arguments as to patentability have not violated any of Softview's substantive rights.

## III. THE BOARD'S APPLICATION OF ESTOPPEL PURSUANT TO 37 C.F.R. § 42.73(d)(3)(i) IS CORRECT.

### A. Patentee Estoppel Under 37 C.F.R. § 42.73(d)(3)(i) Applies to Reexaminations

Based on the word "obtaining" in the regulation, Softview contends that the regulation is inapplicable to "any previously issued claims" in reexamination proceedings, where a patentee seeks only to maintain or "confirm[]" existing patent claims, not to "obtain[]" new ones. Br. at 10-13. Softview's contention, however, is at odds with the plain text of the regulation and sensible policy considerations.

First, the regulation makes clear that it applies to patent applicants and patent owners. The regulation thus plainly applies to patent owners in post-issuance reconsideration proceedings involving challenges to issued claims, such as reexaminations. As the Board explained, patentee estoppel is triggered any time an "examination (or examination-like) action occur[s]." Appx10; Appx76. And inter partes reexamination is indisputably an examination-like proceeding, as it "shall be conducted according to the procedures established for initial examination." 35 U.S.C. § 314 (pre-AIA).

Second, the regulation does not limit its estoppel effect to efforts to "obtain[]" a patent claim; it specifically applies to any "action . . . "*including* obtaining" a patent claim. 37 C.F.R. § 42.73(d)(3) (emphasis added). The regulation's plain language thus indicates that "obtaining" a patent claim is not the only "action inconsistent with the adverse judgment" that a patent owner in a Board proceeding can be barred from taking. The Board correctly "explained that a narrow focus on sub-section (i) ignores the broader prohibition in § 42.73(d)(3) that precludes a patent owner 'from taking action inconsistent with the adverse judgment' in the prior IPR." Appx12. Read as a whole, § 42.73(d)(3) precludes a patent owner from, "obtaining," or "confirming," or taking any other action regarding the "patentability of claims that are not patentably distinct from those subject to the final adjudication of unpatentability in" a prior IPR. Appx12.

In support of its reading, Softview first points to commentary accompanying the final rule as purportedly indicating that the regulation applies only to new claims in continuation and reissue applications. Br. at 10, n.2 (citing Final Rule, 77 Fed. Reg. 48612 (Aug. 14, 2012)). The Board, however, correctly identified the agency's response to that comment as supporting applicability of estoppel to reexamination proceedings. The agency's response clearly gave examination only as an example with an "e.g.," providing that:

> *Under 35 U.S.C. 316(a)(4), as amended, and 35 U.S.C. 326(a)(4), the Office is required to prescribe regulations setting forth the relationship*

> *between the review and other proceedings in the Office (e.g., examination).*

*Id.* at 48,649.

As the Board explained, "examination" is used as an example of one of the "'other proceedings'" in § 316(a)(4), and "reexamination, like examination, is one of the 'other proceedings in the Office' and subject to the prohibition on patentably indistinct claims." Appx9. In other words, inter partes reexamination is a "proceeding[] under" Title 35, and the regulation at issue here is naturally characterized as addressing the "relationship" of inter partes review to that proceeding.

As the Board further explained, reexamination (like initial examination) is based on an examinational and not adjudicatory model. Appx9; Appx76-77. The reason why Congress provided that identical procedures shall apply in reexaminations and initial examination is that "[i]n a reexamination proceeding . . . the 'focus' of the reexamination 'returns essentially to that present in an initial examination.'" *Ethicon*, 849 F.2d at 1427 (quoting *Etter*, 756 F.2d at 857)). "[T]he intent underlying reexamination is to 'start over' in the [US]PTO" and to "*re* examine" the claims "as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding." *Id* (emphasis in original). The "[US]PTO's role is identical" in ex parte and inter partes reexaminations: "the [US]PTO is not a neutral adjudicator in

an *inter partes* reexamination"; rather "[i]n both *ex parte* and *inter partes* reexaminations, the [US]PTO determines whether it correctly approved the patent during its initial examination of the patent's application." *Callaway*, 802 F. Supp. 2d at 687. Accordingly, the Board correctly concluded that § 42.73(d)(3)(i) applies to the inter partes reexaminations at issue here.

### B. The Phrase "Patentably Distinct" In 37 C.F.R. § 42.73(d)(3)(i) Should Be Given Its Long-Established Meaning in the Obviousness-Type Double Patenting Sense

On appeal, Softview repeats the same arguments regarding the meaning of the term "not patentably distinct" in § 42.73(d)(3)(i) that it presented to the Board. Br. at 15-17. Relying on a definition of "same or substantially the same" as "patentably indistinct" in the derivation context, 37 CFR § 42.401, Softview contends that the term "not patentably distinct" must mean "the same or substantially the same." Br. at 16-17. But that definition is merely clarifying that "same or substantially the same" – an unclear term – actually has the same meaning as "patentably indistinct," a familiar and well-understood term. *See* Appx18-19.[9] It cannot possibly be read to redefine "patentably distinct."

[9] In the rulemaking relating to the new derivation proceedings created by the AIA, the USPTO proposed Rule 42.405(b)(3)(i) which, tracking the language of post-AIA 35 U.S.C. § 135(a)(2), required a derivation petitioner to "[s]how why the claimed invention is the same or substantially the same as the invention disclosed to the respondent." The definition of the "same or substantially the same" to mean "patentably indistinct" came in response to commenters' request for clarification. *Changes to Implement Derivation Proceedings*; Final Rule, 77 Fed. Reg. 56068,

In any event, Softview's argument would read out the term "patentably" from the regulation's text. The term "patentably" is critical to the meaning of the phrase because it means that the second patent claim has to be "patentable" over the previous adversely adjudged claim, and not just "distinct" from that claim. Moreover, the term "patentably distinct" has a long-established usage in patent law. At least since the "restatement of the law" by the CCPA in *In re Vogel*, 422 F.2d 438, 441-42 (CCPA 1970) (en banc), the law of obviousness-type double patenting has used the term "patentably distinct" to refer to a claim in a later patent or patent application that is more than an "obvious variation" of an invention claimed in an earlier patent. *Id.* at 441-42; *see also* Appx 17 (citing *General Foods*, 972 F.2d at 1278, among others).

The obviousness-type double patenting doctrine was judicially created to ensure that a patentee does not improperly extend the term of a patent by obtaining a subsequent patent for the same invention or an obvious variation of that invention. *General Foods*, 972 F.2d 1279-80. It deals with the problem of obvious variations by not permitting claims that are "not patentably distinct" from outliving the claims of the earlier reference patent. *Id.* at 1278-79; *see Eli Lilly &*

---

56071-56072 (Sept. 11, 2012).

*Co., v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001); *AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust,* 764 F.3d 1366, 1373 (Fed. Cir. 2014) (explaining that the patentably distinct inquiry is analogous to an obviousness analysis under 35 U.S.C. § 103, where the second claim is not "patentably distinct" if it is an "obvious" or "anticipated" variation or modification to the earlier claim); *see also In re Deckler*, 977 F.2d 1449, 1452 (Fed. Cir. 1992) (applying interference estoppel to preclude a losing party in a previous interference from asserting claims for inventions that were not "patentably distinct" from those the applicant had lost); *In re Kroekel*, 803 F.2d 705, 710 (Fed. Cir. 1986) ("If [the claim] were patentably distinct from the lost count, it could not be denied to [the Applicant] on the sole ground of interference estoppel.").

Softview does not and could not suggest that the agency was unaware of this historical backdrop when it adopted the "patentably distinct" language in § 42.73(d)(3)(i). *Cf. Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101-03 (2011) (explaining that when Congress drafts a statute including a term with a well-settled meaning, the term comes with that meaning absent evidence to the contrary). The background understanding against which the agency promulgated the patentee estoppel rule was that the agency intended the phrase "patentably distinct" as used in the regulation to have the same meaning as the agency and the courts have given it in other contexts. Appx17-19. As the Board explained, "'patentably distinct' . . .

means that the claim at issue is more than simply an obvious variation over a prior patent claim." *Id.*

## IV. THE USPTO IS NOT REQUIRED TO IMPORT COMMON LAW PRECLUSION ELEMENTS INTO 37 C.F.R. § 42.73(d)(3)(i)'s PATENTABLY DISTINCT ANALYSIS

There is no dispute that a final decision in an inter partes review can give rise to collateral estoppel. *See SynQor*, 988 F.3d at 1347 ("'It is well established that collateral estoppel, also known as issue preclusion, applies in the administrative context.'") (quoting *MaxLinear*, 880 F.3d at 1376). However, the applicability of collateral estoppel in USPTO agency proceedings does not mean, as Softview contends, that § 42.73(d)(3) must also be construed to apply traditional principles of collateral estoppel. Br. at 18-19. As the Board correctly found, absent from Softview's assertion is "any authority for importing common law estoppel or res judicata into § 42.73(d)(3)." Appx19-20. "While judicial preclusion rules ordinarily reflect the common law, agency preclusion rules are creatures of statute. Courts must thus refrain from imposing judge-made preclusion principles on agencies unless such a course is dictated by statute." *Johnson v. Whitehead*, 647 F.3d 120, 129 (4th Cir. 2011) (citing, among others, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) and *FCC v. Schreiber*, 381 U.S. 279, 290-91 (1965)), *cert. denied*, 132 S. Ct. 1005 (2012)).

Congress gave the Director the authority to issue regulations to govern "the

relationship" between an inter partes review and other proceedings at the agency. *See* 35 U.S.C. § 316(a)(4). Congress also gave the Director discretion to determine how co-pending matters may proceed. *See* 35 U.S.C. §§ 315(d), 325(d). In sum, Congress's scheme under the AIA gives the agency discretion to decide when or how to apply preclusion rules based on the agency's own expert considerations which may or may not include specific elements of common law collateral estoppel. Unless the agency puts a particular element of common law estoppel in the text of its regulation, that element plays no role in the agency's preclusion analysis.

Softview mistakenly contends that both the regulatory history of § 42.73(d)(3) and this Court's precedent indicate that "estoppel under § 42.73(d)(3) must apply the principles of common law collateral estoppel." Br. at 18. But, as the Board correctly found, the rulemaking simply points out that the rule is "'consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule.'" Appx20.

Thus, there is no authority to construe § 42.73(d)(3) as requiring the agency to undertake a collateral estoppel analysis. And, as a policy matter, the USPTO has chosen a "straightforward" rule that prohibits actions inconsistent with the final adverse judgment under the well-understood "patentably distinct" standard, and Softview has not provided any reason to disturb that exercise of the agency's

judgment under its rulemaking authority. *Johnson*, 647 F.3d at 128 ("Congress determined that 'administrative agencies . . . will be in a better position than federal courts . . . to design procedural rules adapted to the peculiarities of the . . . tasks of the agency involved.'") (citations omitted).

## CONCLUSION

For the reasons discussed above, this Court should find that 37 C.F.R. § 42.73(d)(3)(i) constitutes a valid exercise of the USPTO's rulemaking authority and that the Board correctly applied the estoppel provision in § 42.73(d)(3)(i) in the instant reexaminations.

April 17, 2023

Respectfully submitted,

/s/ *Farheena Y. Rasheed*
THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

MICHAEL S. FORMAN
Associate Solicitor

U.S. Patent and Trademark Office
Office of the Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035
*Attorneys for the Director of the U.S. Patent and Trademark Office*

**RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE**

I certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing brief complies with the type-volume limitation required by the Court's rule. The total number of words in the foregoing brief, excluding the table of contents and the table of authorities, is 9,226 words as calculated using the Word® software program.

/s/ Farheena Y. Rasheed
Farheena Y. Rasheed
Deputy Solicitor