**No. 2023-1005, -1007**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SOFTVIEW LLC,

*Appellant*,

*v.*

APPLE INC., MOTOROLA MOBILITY LLC,

*Appellees.*

On Appeal from the United State Patent and Trademark Office, Patent Trial and Appeal Board In Reexamination Control Nos. 95/000,634 and 95/002,132

**BRIEF FOR APPELLEES MOTOROLA MOBILITY LLC AND APPLE INC.**

MELANIE L. BOSTWICK
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400

EDMUND HIRSCHFELD
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Attorneys for Appellee*
APPLE INC.

SONAL N. MEHTA
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

MADELEINE C. LAUPHEIMER
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Appellee*
MOTOROLA MOBILITY LLC

April 17, 2023

# PATENT CLAIMS AT ISSUE

87. A mobile hand-held device, comprising:
a processor,
a wireless communications interface, to facilitate wireless communication with a network that supports access to the Internet;
a display; and
non-volatile memory, operatively coupled to the processor,
in which a plurality of instructions are stored that when executed by the processor enable the mobile hand-held device to perform operations including,
rendering a browser interface on the display via which a user is enabled to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content of the Web page;
in response to a user request of the Web page,
retrieving the Web page via the wireless communications interface;
rendering the Web page such that a width of the Web page is rendered to fit across the display; and
re-rendering the display in response to associated user inputs to enable the Web page to be browsed at various zoom levels and panned views while preserving the original page layout, functionality, and design of the Web [page] content at each zoom level and panned view.

# CERTIFICATE OF INTEREST

Counsel for Appellee Motorola Mobility LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Motorola Mobility LLC

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

Google LLC

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Lenovo Group Limited
Motorola Mobility Global Holdings Limited
Motorola Mobility Holding LLC
Alphabet Inc.
XXVI Holdings Inc.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Michael S. Pavento
Kilpatrick Townsend & Stockton LLP

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

*SoftView LLC v. Apple Inc. & Motorola Mobility LLC*, 2023-1006, 2023-1008 (Fed. Cir.)

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1599 (Fed. Cir. Feb. 9, 2015) (aff'd Rule 36)

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1600 (Fed. Cir. Feb. 9, 2015) (aff'd Rule 36)

*In re SoftView LLC*, 2020-1971 (Fed. Cir. May 14, 2021) (aff'd Rule 36)

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: April 17, 2023

/s/ Sonal N. Mehta
Sonal N. Mehta
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

## CERTIFICATE OF INTEREST

Counsel for Appellee Apple Inc. certifies the following:

**1.** **Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

**2.** **Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.** **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.** **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Donald J. Quigg
Tracy W. Druce
James P. Murphy
Marylauren N. Ilagen
Novak Druce + Quigg LLP
Novak Druce Connolly Bove + Quigg LLP

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

*SoftView LLC v. Apple Inc. & Motorola Mobility LLC*, 2023-1006, 2023-1008 (Fed. Cir.)

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1599 (Fed. Cir. Feb. 9, 2015) (aff'd Rule 36)

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, 2014-1600 (Fed. Cir. Feb. 9, 2015) (aff'd Rule 36)

*In re SoftView LLC*, 2020-1971 (Fed. Cir. May 14, 2021) (aff'd Rule 36)

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: April 17, 2023

/s/ Edmund Hirschfeld
Edmund Hirschfeld
ORRICK HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

## TABLE OF CONTENTS

Page

PATENT CLAIMS AT ISSUE

CERTIFICATE OF INTEREST ....... i

CERTIFICATE OF INTEREST ....... iii

STATEMENT OF RELATED CASES ....... 1

INTRODUCTION ....... 1

STATEMENT OF ISSUES ON APPEAL ....... 4

STATEMENT OF THE CASE ....... 4

A. Background ....... 4

B. Procedural History ....... 6

1. IPX requests and related proceedings ....... 6

2. Examiner and Board decisions ....... 8

3. Board decision on rehearing ....... 10

SUMMARY OF ARGUMENT ....... 11

ARGUMENT ....... 16

I. STANDARD OF REVIEW ....... 16

II. THE BOARD CORRECTLY APPLIED 37 C.F.R. § 42.73(D)(3). ....... 17

A. Section 42.73(d)(3) Was Lawfully Adopted By The Patent Office. ....... 17

B. Section 42.73(d)(3) Applies To IPXs. ....... 20

1. Section 42.37(d)(3) applies to any examination-like proceeding. ....... 20

2. Application to issued claims is not contrary to law. ....23

3. SoftView does not contest the Board's determination of which claims are issued. ....24

C. Different Claim Construction Standards Do Not Preclude Estoppel. ....25

D. Common-Law Collateral Estoppel Is Not At Issue. ....27

III. THE APPEALED CLAIMS ARE NOT PATENTABLY DISTINCT FROM THE CANCELED IPR CLAIMS. ....30

A. The Board Applied The Correct Standard For "Patentably Distinct" ....30

B. The Board Did Not Improperly Apply A "Domino" Approach. ....33

C. The Board Correctly Determined That The Appealed Claims Are Not Patentably Distinct. ....36

1. Independent claims (preserving/preservation) ....37

a. Claims 70, 209, and 216 ....40

b. Claims 87, 185, 285, and 318 ....41

2. Dependent claims 3, 41, 75, 101, 154, and 199 (real-time rendering/zooming) ....47

3. Dependent claims 35, 69, 111, 184, 185, 215, 251, 310, 319 and 274 (billions of Web pages) ....51

4. Dependent claims 106, 182, 204, 282, 304, and 322 (cascaded style sheets) ....53

5. Dependent claims 13, 20, 50, 55, 90, 97, 129, 134, 162, 171, 187, 194, 227, 234, 265, 270, 287, and 294 (tap-to-zoom on column and paragraph) ....54

6. Dependent claims 105, 203, and 303 (XML code) ....59

7. SoftView does not challenge the Board's determination that other claims are not patentably distinct. ....60

D. If Estoppel Does Not Apply, Remand Is Required. ....61

IV. THE BOARD DID NOT VIOLATE THE APA. ....61

CONCLUSION ....63

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Andrx Pharm., Inc.*,
473 F.3d 1196 (Fed. Cir. 2007) ....................18

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
880 F.3d 1345 (Fed. Cir. 2018) (Br. 9-10) ....................19, 22

*Best Med. Int'l, Inc. v. Elekta Inc.*,
46 F.4th 1346 (Fed. Cir. 2022) ....................57

*Bourns, Inc. v. United States*,
537 F.2d 486 (Ct. Cl. 1976)....................*passim*

*Cooper Techs. Co. v. Dudas*,
536 F.3d 1330 (Fed. Cir. 2008) ....................16

*In re CSB-Sys. Int'l, Inc.*,
832 F.3d 1335 (Fed. Cir. 2016) ....................12, 26

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016)....................16, 18

*Eli Lilly & Co. v. Barr Labs., Inc.*,
251 F.3d 955 (2001)....................31, 32

*Genentech, Inc. v. Hospira, Inc.*,
946 F.3d 1333 (Fed. Cir. 2020) ....................29, 52

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017)....................13, 31

*In re Hitachi Metals, Ltd.*,
603 F. App'x 976 (Fed. Cir. 2015) ....................16

*Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*,
370 F. Supp. 3d 251 (D. Mass. 2019)....................26

*JEM Broadcasting Co. v. Fed. Commc'ns Comm'n*,
22 F.3d 320 (D.C. Cir. 1994)....................17

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................................................................................58

*Kyocera Corp. v. SoftView LLC*,
IPR2013-00007, Paper 25 (P.T.A.B. July 19, 2013)..........................................29

*In re Miller*,
2022 WL 594417 (Fed. Cir. Feb. 28, 2022) .......................................................52

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ...................................................................29, 32

*Panduit Corp. v. All States Plastic Mfg. Co.*,
744 F.2d 1564 (Fed. Cir. 1984) ........................................................................18

*Phil-Insul Corp. v. Airlite Plastics Co.*,
854 F.3d 1344 (Fed. Cir. 2017) ........................................................................39

*Regents of Univ. of Cal. v. Broad Inst., Inc.*,
903 F.3d 1286 (Fed. Cir. 2018) ...................................................................31, 32

*Regents of the Univ. of Minnesota v. LSI Corp.*,
926 F.3d 1327 (Fed. Cir. 2019) ........................................................................28

*Simpleair, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) ........................................................................32

*SoftVeiw LLC v. Kyocera Corp.*,
592 F. App'x 947 (Fed. Cir. 2015).......................................................................7

*In re SoftView LLC*,
No. 2020-1971 (Fed. Cir. May 14, 2021)..............................................................1

*SoftView LLC v. Apple Inc. & Motorola Mobility LLC*,
Nos. 2023-1006, 2023-1008 (Fed. Cir.) ...............................................................1

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*,
No. 2014-1599 (Fed. Cir. Feb. 9, 2015) ...............................................................1

*SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*,
No. 2014-1600 (Fed. Cir. Feb. 9, 2015) ...............................................................1

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*
778 F.3d 1311 (Fed. Cir. 2015) ....................18, 32

*Stevenson v. Sears, Roebuck & Co.*,
713 F.2d 705 (Fed. Cir. 1983) ....................16, 62

*SynQor, Inc. v. Vicor Corp.*,
988 F.3d 1342 (Fed. Cir. 2021) (IPX) ....................24, 29

*Vicor Corp. v. SynQor, Inc.*,
869 F.3d 1309 (Fed. Cir. 2017) ....................16

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ....................47

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018) ....................12, 26, 29

**Statutes**

35 U.S.C.
§ 2....................10
§ 2(b)....................12
§ 2(b)(2)(a)....................16
§ 301....................23
§ 304....................23
§ 311....................23
§ 312(a)....................62
§ 315....................19, 24
§ 315(e) ....................24
§ 316....................10, 19, 23
§ 316(a)(4) ....................12, 16, 18, 19, 24
§ 325(e) ....................24

Administrative Procedure Act....................4, 61

37 C.F.R.
§ 42.73(b)....................19
§ 42.73(d)(3) ....................*passim*
§ 42.73(d)(3)(i) ....................9, 21

**Other Authorities**

Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 6,879 (Feb. 9, 2012) ....................................................................31

Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612 (Aug. 14, 2012) ........................................................*passim*

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this or any other appellate court. *SoftView LLC v. Apple Inc. & Motorola Mobility LLC*, Nos. 2023-1006, 2023-1008 (Fed. Cir.), currently pending in this Court, involves U.S. Patent No. 7,831,926 ("the '926 patent"), which is related to and shares a specification with the patent at issue in this case, U.S. Patent No. 7,461,353 ("the '353 patent"). *SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC*, No. 2014-1600 (Fed. Cir. Feb. 9, 2015), affirmed the Patent Trial and Appeal Board's ("Board") holding in an *inter partes* review that certain claims of the '353 patent were unpatentable. *SoftView LLC v. Kyocera Corp. & Motorola Mobility LLC,* No. 2014-1599 (Fed. Cir. Feb. 9, 2015), affirmed the Board's holding in an *inter partes* review that certain claims of the '926 patent were unpatentable. *In re SoftView LLC*, No. 2020-1971 (Fed. Cir. May 14, 2021), affirmed the Board's holding in an *ex parte* reexamination that certain claims of the '926 patent were unpatentable.

## INTRODUCTION

The '353 patent's sole alleged contribution is the ability to zoom HTML websites for small screens while preserving the layout, functionality, and design of the original page. Yet it contains ***over three hundred*** claims that mix and match

from a menu of trivial additional prior-art limitations to create a thicket of obvious claims that SoftView has asserted against every mobile-phone maker it can find.

SoftView had a full and fair opportunity to litigate the patentability of eighteen claims of the ’353 patent in a previous *inter partes* review. It lost, and this Court affirmed. As the Board in this case recognized, the remaining claims add nothing inventive to the claims SoftView already litigated and lost. The Board therefore properly applied its regulation set forth at 37 C.F.R. § 42.73(d)(3) to reject those claims and prevent wasteful reexamination.

SoftView’s grab-bag of appellate arguments miss the mark. SoftView contends that § 42.73(d)(3) was not lawfully adopted and that its application to issued claims in an *inter partes* reexamination is contrary to any number of statutes. But the Patent Office—pursuant to an express grant from Congress permitting it to issue regulations and following notice and comment—determined that it need not waste its time examining claims not patentably distinct from claims already found unpatentable. The Board here correctly held that that regulation applies to all claims being prosecuted in an examinational setting and that there is no principled distinction to be made between issued claims in an *inter partes* reexamination and claims in a continuation or reissue application.

SoftView further attacks the Board’s interpretation of its own regulation, contending that—despite using different language—it necessarily incorporates the

requirements of common-law collateral estoppel, including the standard for identity of issues. But the regulation purposefully uses the same words, "patentably distinct," that already have a clear meaning in the law. The Board did not err in using that standard.

SoftView also argues that, because the '353 patent has now expired, this Court's previous determination of unpatentability—made under the broadest-reasonable-interpretation claim-construction standard—is dead letter and the claims must be reconstrued under the *Phillips* standard. But, legally, a change in claim-construction standard is not sufficient to defeat estoppel, and, factually, SoftView fails to show how the change in standard would change the well-reasoned (and affirmed) analysis of the IPR Board denying it the scope it now seeks. SoftView cannot get another bite at patentably indistinct claims simply because its patent happened to expire.

Although SoftView makes much of the fact that certain appealed claims require preserving the entire translated HTML-based Web content rather than "at least a portion," that does not raise a patentable distinction. The reasoning the IPR Board gave in finding obvious certain claims requiring preserving a "portion" of the HTML-based Web content applies equally to the claims requiring preservation of the "entire" HTML-based Web content. There is no new question of patentability. And, as the Board found, the various dependent claim limitations—

many of which are already found in canceled claims and all of which are in the prior art—do not render the appealed claims more than the obvious sum of their parts, no matter how they are recombined.

Appellees respectfully seek affirmance of the Board in full.

## STATEMENT OF ISSUES ON APPEAL

1. Whether the Board properly determined that 37 C.F.R. § 42.73(d)(3) estoppel applies to claims in an *inter partes* reexamination to prevent wasteful relitigation;

2. Whether the Board correctly determined that the appealed claims are not patentably distinct from the claims finally adjudicated unpatentable; and

3. Whether the Board violated the Administrative Procedure Act ("APA") by reaching a different patentability conclusion from the examiner in an *ex parte* reexamination on a different record.

## STATEMENT OF THE CASE

### A. Background

This consolidated appeal arises from two *inter partes* reexaminations ("IPXs") of U.S. Patent No. 7,461,353 ("the '353 patent"). The '353 patent's independent claims are directed to mobile devices that translate HTML-based Web content into scalable vectors to allow zooming that preserves the layout, functionality, and design of the original page. Appx242(1:43-50); *e.g.*,

Appx256(30:1-25). The relevant dependent claims recite trivial additional limitations including real-time zooming, tap-to-zoom functionality, support for known technologies like cascaded style sheets and XML code, and the ability to zoom "billions of Web pages." Appx252(22:49-51); Appx253(23:46-48); Appx254(25:25-30); Appx257(31:29-35). The '353 patent claimed priority to June 12, 2000, at the earliest; issued on December 2, 2008, with 319 claims; and expired on April 18, 2022. Appx218.

Zooming Web pages so they could be viewed on the small screens of mobile devices was not new, even in 2000. For example, a series of references published in 1995-1998 describe Pad++, a Web browser with a zoomable graphical user interface designed to work on the small screens of Personal Digital Assistants. Appx3128-3133. Those references include five articles by Benjamin Bederson, a Pad++ Reference Manual, a Pad++ Programmer's Guide, and a published "tour" through Pad++ (collectively, "Pad++"). Appx570-910. Japanese Application Publication No. H10-326169 ("JP169"), published in 1998, also describes using vector data structure to store information about Web page content, enabling it to be resized while preserving functionality. Appx923-958; Appx3134-3135. Each of Pad++ and JP169 disclosed all of the allegedly novel aspects of the '353 patent.

## B. Procedural History

In addition to the two IPXs on appeal, the ’353 patent has been subject to an *ex parte* reexamination (“EPX”) and an *inter partes* review (“IPR”). Every proceeding has alleged obviousness over either or both of Pad++ and JP169 in combination with other references, and every proceeding has resulted in rejected and/or canceled claims.

### 1. IPX requests and related proceedings

Apple requested an IPX of the ’353 patent on May 20, 2011, challenging all 319 claims (95/000,634) as obvious over Pad++ and/or JP169, combined with other references. Appx456-569. Review was instituted as to all claims. Appx968.

Motorola requested an IPX of the ’353 patent on Aug. 31, 2012, also challenging all 319 claims (95/002,132) as obvious over Pad++ and/or JP169, combined with other references. Appx3109-3618. Review was instituted as to claims 1, 5, 6, 23-27, 33, 36, 39, 43, 58-61, 70, 84, 118, 122, 137-141, 147, 149, 156, 174-177, 183, 216, 220, 238-242, 248, 252, 259, 274-277, and 283. Appx3620.

Apple separately requested an EPX of the ’353 patent on April 13, 2012, (90/009,994) as obvious over Pad++ and/or JP169, combined with other references. Appx50. The EPX was instituted on July 21, 2012, as to claims 5, 23-27, 33, 43, 58-61, 84, 122, 137-141, 147, 156, 174-177, 183, 220, 238-242, 248,

259, 274-277, and 283. *Ex Parte* Reexamination Communication Transmittal Form, Control No. 90/009,994 (U.S.P.T.O. June 21, 2012).

On October 2, 2012, third party Kyocera petitioned for IPR of claims 1, 33, 36, 43, 48, 51-52, 58-59, 66, 118, 138-139, 149, 183, 252, 283, and 317 as obvious over Zaurus, a publication describing a Personal Digital Assistant, combined with Pad++ or JP169, among other references. Appx50.[1] Those claims recited several of the same limitations at issue here, including "preserv[ing] the original page layout, functionality, and design," "zoom[ing] in on a column … by tapping on the column," zooming "billions of Web pages," and a "cascaded style sheet." Appx138-144. The Board held all challenged clams unpatentable (Appx346-382), and this Court affirmed. Appx383-384 (*SoftVeiw LLC v. Kyocera Corp.*, 592 F. App'x 947 (Fed. Cir. 2015)). Those claims were canceled on January 12, 2016. Appx51.

On December 29, 2017, the EPX certificate issued cancelling claims 84 and 220 and confirming the patentability of amended claims 5, 23-27, 60-61, 122, 137, 140, 141, 147, 156, 174-177, 238-242, 248, 259, and 274-277, and new claims 320-322. Appx269-275.

---

[1] Motorola later filed its own IPR which was joined to Kyocera's IPR. Appx50.

### 2. Examiner and Board decisions

On October 7, 2020, the Examiner in the Apple IPX rejected claims 2-28, 30-32, 34-35, 37-38, 41, 44-46, 50, 53-55, 60-61, 69-83, 85-105, 107-111, 122-126, 128-135, 137, 140-141, 144-145, 147, 150-152, 154, 156-159, 161-177, 184-203, 205-209, 215-216, 226-236, 238-242, 245-248, 251, 253-254, 257, 259, 264-271, 274-277, 285-303, 305-310, and 318-323 as obvious on several grounds and confirmed the patentability of claims 106, 182, 204, 282, 304, and 322. Appx1968-2124 (right of appeal notice); Appx1704-1803 (action closing prosecution).

On August 28, 2020, the Examiner in the Motorola IPX rejected claims 5, 6, 23-27, 60-61, 70, 122, 137, 140-141, 147, 156, 174-177, 216, 238-242, 248, 259, 274-277, and 320-321 as obvious on several grounds and confirmed the patentability of claim 322. Appx3909-4022 (right of appeal notice); Appx3760-3818 (action closing prosecution).

All parties appealed to the Board. On April 6, 2022, the Board reversed the Examiner's obviousness determinations on the ground that "there is currently insufficient articulated reasoning to support the Examiner's finding that Pad++ … teach[es], suggest[s], or otherwise render[s] obvious the layout and design limitation of the claims." Appx67-69; Appx195. The Board agreed with the Examiner that the IPR Board had already determined that Pad++ taught preserving

the functionality of HTML-based Web content, but because the IPR Board had relied on ***Zaurus*** for preserving the layout and design content, it found that the Examiner should have done more to explain how ***Pad++*** taught preserving the design and layout content. *Id.*

But, recognizing that these issues had already been determined by the IPR Board, the Board rejected all claims under the new ground of 37 C.F.R. § 42.73(d)(3)(i) estoppel, which does not rely on the particular prior art asserted. Appx72-129; Appx195-196. Specifically, the Board found that § 42.73(d)(3)(i) applied to pre-AIA IPXs of issued patent claims for which a “substantial new question of patentability” was raised (here, all 319 claims) (Appx73), because the proceeding includes examination-like action (Appx76). The Board found that none of the remaining claims were patentably distinct from the claims finally canceled in the IPR.[2]

Twelve days later, the ’353 patent expired. As a result, all amendments were withdrawn except those cancelling claims, and the claims reverted to their issued forms (either as originally issued or as issued in the EPX certificate).

---

2 Because the Board rejected all claims on estoppel grounds, it did not separately address Appellees’ unpatentability arguments for claims 106, 182, 204, 282, 304, and 322. Appx59; Appx194.

Appx129-131; Appx196-197; *see* Appx1705 (listing claims that were canceled during the IPX).

### 3. Board decision on rehearing

SoftView petitioned for rehearing. On September 22, 2022, the Board denied rehearing and maintained its rejection of the claims on the estoppel ground.

The Board reiterated that § 42.73(d)(3) applied (Appx8-12, Appx152-157), and held that the Patent Office had authority to issue the regulation under 35 U.S.C. §§ 2 & 316 (Appx12-16, Appx157-161). The Board held that the term "patentably distinct" in § 42.73(d) should mean the same thing as the same term in the interference and obviousness-type-double-patenting context: "more than simply an obvious variation over a prior patent claim." Appx16-19; Appx161-164. The Board held that estoppel under § 42.73(d) was distinct from common-law collateral estoppel and that it was not required to perform a common-law-collateral-estoppel analysis. Appx19-22; Appx164-166.

The Board held that the different claim-construction standards applied in the IPR and after expiration did not defeat estoppel because (1) the IPR construction was based on SoftView's proposed *Phillips* construction and did not expressly rely on the broadest-reasonable-interpretation ("BRI") standard, and (2) SoftView failed to explain to the Board "what the new construction should be or why the difference in standards would materially alter the question of patentability."

Appx22-23; Appx166-168. The Board further held that none of the additional limitations in SoftView's non-canceled claims rendered them patentably distinct from the canceled IPR claims. Appx29-38; Appx174-178.

Finally, the Board rejected SoftView's argument that its decision was arbitrary and capricious for rejecting claims that had been confirmed in the EPX. Appx38-39; Appx179.

Although listed nowhere in its brief, SoftView's notices of appeal recite fewer than all of the rejected claims. Per those notices and the lack of any specific argument from SoftView on other claims, the only claims now at issue are: 3, 5, 6, 11, 13-14, 16-18, 20-21, 23-27, 30-32, 35, 37-38, 41, 50, 53, 55, 60-61, 69-70, 75, 78-79, 81-83, 87-88, 90-95, 97-98, 101, 105-109, 111, 122, 128-129, 131-134, 137, 140-141, 144-145, 147, 150-151, 154, 156, 161-162, 164-169, 171, 174-177, 182, 184-187, 189-194, 196, 199, 203-204, 206-207, 209, 215-216, 226-227, 229-235, 238-242, 245-246, 248, 251, 253-254, 259, 264-265, 267-270, 274-277, 282, 285-288, 290-294, 296, 303, 304-307, 310, and 318-322 ("the Appealed Claims"). 23-1005 Dkt. 1; 23-1007 Dkt. 1.

## SUMMARY OF ARGUMENT

The Board correctly held that the Appealed Claims are not patentably distinct over claims already canceled in the IPR, and therefore SoftView is

estopped from asserting their patentability by 37 C.F.R. § 42.73(d)(3). The Court should affirm.

***First***, the Board properly applied § 42.73(d)(3) to reject all claims. Section 42.73(d) governs the relationship between IPRs and other Board proceedings, and it was lawfully adopted pursuant to 35 U.S.C. §§ 2(b) & 316(a)(4). The Board correctly determined that it prevents a patent owner from "obtaining" claims in an examinational setting that are not patentably distinct from canceled claims, including issued claims in an IPX. But even if SoftView were right that issued claims cannot be "obtained," estoppel still applies because the regulation more broadly prevents a patentee from "taking action inconsistent with the adverse judgment." 37 C.F.R. § 42.73(d)(3).

SoftView is wrong that a difference in claim-construction standard alone defeats estoppel. Were that true, an IPR could never form the basis for common-law collateral estoppel in a district court, but this Court has explicitly held that it can. *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018). Indeed, the BRI and *Phillips* standards often lead to the same result. *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016). Furthermore, requiring relitigation of claim scope following patent expiration before applying estoppel would destroy estoppel's benefits: efficiency and public reliance.

Although SoftView spills much ink complaining that not one of the requirements of common-law collateral estoppel is met and all of the exceptions apply, common-law collateral estoppel is not at issue. SoftView's meager support comes nowhere close to justifying its contention that § 42.73(d)(3) incorporates principles of common-law collateral estoppel, and the Board expressly declined to apply it.

***Second***, the rejected claims are not patentably distinct from the canceled IPR claims. As an initial matter, the Board properly determined that the standard to determine whether claims are "patentably distinct" under § 42.73(d)(3) is the same standard as that used to determine whether claims are "patentably distinct" in the obviousness-type-double-patenting and interference contexts. The same words are presumed to mean the same thing. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). And the fact that the proposed regulation used the words "substantially the same invention" but then was amended to use the words "patentably distinct" shows that the Patent Office specifically intended something different.

Nor did the Board improperly apply a "domino" approach to invalidate successively narrower claims without comparing them to the prior art, as warned against in *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976). Instead, the Board performed exactly the same analysis as the *Bourns* court: It compared

the claims at issue to the previously adjudicated claims, identified any differences, and considered the claims as a whole before concluding that they were not patentably distinct.

The Board correctly found that none of the Appealed Claims are patentably distinct from canceled IPR claims. Independent claims 70, 209, and 216 all use the same language as canceled claim 1: translating "a portion of" the HTML-based Web content. SoftView's only basis for arguing that these claims should have different scope is the change in claim-construction standard. But the standard change alone is not reason to preclude estoppel, and SoftView fails to explain how the standard change here wins it the scope it seeks.

Independent claims 87, 185, 285, and 318, which require the entire HTML-based Web content to be translated and preserved, are likewise not patentably distinct from canceled claims. First, as SoftView explained during prosecution, "preserving" just means preserving the HTML-based Web content to the extent the browser implementation supports it. It does not mean every item must appear exactly as it does on the original webpage, because there may be some HTML "tags" that a particular browser cannot render. Because the claims do not require any particular HTML tags and Pad++ preserves the "entire" HTML-based Web content for a Web page that contains only tags Pad++ supports, these claims are not patentably distinct from those requiring preservation of only a "portion" of the

HTML-based Web content. Second, even if the claims required implementation of every HTML tag, the IPR Board has already held that that would have been obvious over the prior art in IPR.

No dependent claim limitation is transformative. As to "real-time zooming," the Board correctly found that it was an inherent feature of the vector-based zooming already required by canceled claims. SoftView defies the intrinsic record by construing "real-time" to describe a timeframe for completion not inherent in vector-based operation. And in any event, overwhelming evidence shows that Pad++ rendered SoftView's timeframe obvious.

As to "billions of Web pages," "cascaded style sheets," and "tap-to-zoom" on a column, these limitations were already present in canceled claims and their inclusion here does not provide a patentable distinction. The Board correctly determined that tapping to zoom on a paragraph was not patentably distinct from tapping to zoom on a column, and that neither was patentably distinct from zooming via a "user input" because it would have been obvious to select tapping as a "user input" given the disclosures in the prior art. Finally, the Board correctly determined that "XML code" was a well-known feature of HTML that did not offer a patentable distinction.

***Third***, the Board's decision rejecting claims the EPX had found patentable is not arbitrary and capricious because the determinations were made on two different

records, and claims are commonly found patentable during one examination and unpatentable in another. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 710 (Fed. Cir. 1983).

## ARGUMENT

### I. STANDARD OF REVIEW

The Board's factual findings are reviewed for substantial evidence, and legal determinations are reviewed *de novo*. *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1320 (Fed. Cir. 2017).

The Patent Office's interpretation of the AIA as reflected in its regulations is reviewed with deference in light of 35 U.S.C. § 316(a)(4)'s express conferral of authority to the Patent Office to promulgate rules governing its own proceedings. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 276-277 (2016). The Patent Office's interpretation of 35 U.S.C. § 2(b)(2)(a) as authorizing regulations is afforded deference if "procedural," and whether a regulation is procedural or substantive is reviewed *de novo*. *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335-1337 (Fed. Cir. 2008).

Whether claims are patentably distinct is a question of law reviewed *de novo* based on underlying facts reviewed for substantial evidence. *See In re Hitachi Metals, Ltd.*, 603 F. App'x 976, 978-979 (Fed. Cir. 2015).

## II. THE BOARD CORRECTLY APPLIED 37 C.F.R. § 42.73(d)(3).

Section 42.73(d)(3) provides that "[a] patent applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining in any patent … [a] claim that is not patentably distinct from a finally refused or canceled claim." 37 C.F.R. § 42.73(d)(3). The Board sensibly determined that that regulation provides a basis to reject claims in the IPXs on appeal not patentably distinct from claims finally canceled following the IPR. SoftView responds to this reasonable limit on duplicative examination with a kitchen-sink of challenges, none of which succeed.

### A. Section 42.73(d)(3) Was Lawfully Adopted By The Patent Office.

SoftView contends that the Patent Office had no authority to promulgate § 42.73(d)(3) because it creates a substantive, rather than procedural, rule. Br. 6-10. Contrary to SoftView's contention (Br. 8-9), § 42.73(d)(3) does not "foreclose effective opportunity to make one's case on the merits," it only prevents the patentee from getting a second, procedurally similar bite in the same forum at claims with no meaningfully different scope and no meaningfully different procedures from those that were lost. *See JEM Broadcasting Co. v. Fed. Commc'ns Comm'n*, 22 F.3d 320, 328 (D.C. Cir. 1994).[3]

---

[3] Although cited by SoftView, *JEM Broadcasting* does not support SoftView's argument because it concerned the test for whether an agency could invoke the APA's "procedural" exception to adopt a rule without notice and

Indeed, this Court has expressly held that common-law collateral estoppel is a procedural rule when determining what circuit's law to apply. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC* 778 F.3d 1311, 1314 (Fed. Cir. 2015) ("We apply the law of the regional circuit to the general ***procedural*** question of whether issue preclusion applies." (emphasis added)); *Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1202 (Fed. Cir. 2007) ("Whether collateral estoppel applies to prevent Abbott from attempting to preliminarily enjoin Andrx based on decisions in preliminary injunction proceedings against other defendants is a ***procedural*** issue not unique to patent law.") (emphasis added)); *see Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573-1575 & n.12 (Fed. Cir. 1984) (explaining difference between procedural and substantive law with reference to *Erie*), *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).

Moreover, 35 U.S.C.§ 316(a)(4) provides authority for the Patent Office to "prescribe regulations … establishing … the relationship of [*inter partes*] review to other proceedings under this title." *See Cuozzo Speed Techs.*, 579 U.S. at 276-277.

---

comment. Here, the Patent Office followed the notice-and-comment process, and SoftView does not challenge the adequacy of that process. Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,612-48,613 (Aug. 14, 2012) (describing many public notices and educational roadshows).

Section § 42.73(d)(3) does just that, by explaining how the results of an IPR affect other Patent Office proceedings.

This Court's discussion in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345 (Fed. Cir. 2018) (Br. 9-10), does not suggest otherwise. There, as SoftView concedes, the Court declined to consider whether the regulations were not authorized by statute because no party so argued. *Id.* at 1347. SoftView cites a concurring opinion referring to "doubts about whether the Director had the authority under 35 U.S.C. § 316" to issue 37 C.F.R. § 42.73***(b)***, which relates to requests for adverse judgments, (not § 42.73(d)(3), as SoftView contends). Br. 9-10. But those "doubts" regarded the Patent Office's authority to make patentability decisions with estoppel effect "particularly prior to institution," and distinguished that from the estoppel allowed by 35 U.S.C. § 315, which arises following the issuance of a final written decision. *Arthrex*, 880 F.3d at 1351-1352 (O'Malley, J., concurring). Nothing in *Arthrex* casts doubt on 35 U.S.C. § 316 as authorizing 37 C.F.R. § 43.73(d)(3) relating to estoppel as it applies here—following a final written decision in the IPR—and SoftView presents no other argument for why it would not.

### B. Section 42.73(d)(3) Applies To IPXs.

#### 1. Section 42.37(d)(3) applies to any examination-like proceeding.

SoftView contends that § 42.73(d)(3) cannot apply to issued claims because they are already "obtained." Br. 10-13. But the Board correctly determined that "obtaining" includes "obtaining confirmation" of patentability of claims in an examination-like setting, including not only continuation and reissue applications (which SoftView concedes are covered (Br. 10-11)), but also IPX claims for which a substantial new question of patentability is raised. Appx8-12; Appx72-77. Further, the rule is not limited to "obtaining" claims, but more broadly prohibits the patent owner from "taking action inconsistent with the adverse judgment," 37 C.F.R. § 42.73(d)(3); that plainly covers this case.

SoftView's entire argument rests on the word "obtaining." Br. 10. But once a substantial new question of patentability is raised, claims in an IPX are subject to examination just like the continuing and reissue applications specifically referred to in the Patent Office's explanation of the rule, 77 Fed. Reg. at 48,649. Appx76-77. There is no principled reason to allow a patentee to obtain claims following an IPX that it would be prohibited from obtaining following reissue. In both instances the patent owner seeks approval of the claim from an examiner. And in both instances the purpose of estoppel is the same: promoting efficiency of the Office and allowing the public to rely on the determination that the claim is finally

canceled. The term "obtain" plainly covers securing a claim in an IPX just as it does in a continuation or reissue application.

But even accepting SoftView's narrow reading, the regulation is broader than "obtaining" claims; it prevents the patent owner from "taking action inconsistent with the adverse judgment." 37 C.F.R. § 42.73(d)(3)(i). SoftView appears to be drawing a hair-splitting distinction between "obtaining" a claim in initial prosecution and retaining a claim in reexam, but SoftView provides no explanation for why prosecuting claims no different from claims already canceled would not be "inconsistent with the adverse judgment," nor would that make sense. Indeed, the regulation itself refers to the "patent applicant ***or owner***," expressly recognizing that estoppel may apply to claims in an issued patent "owned" by the estopped party. 37 C.F.R. § 42.73(d)(3) (emphasis added). If this broader catch-all means anything, it must encompass prosecution in an IPX.

Nor does the Board's interpretation conflict with the Patent Office's intent at the time the regulation was promulgated. SoftView cites the following commentary accompanying the final rule: "[T]he patent owner may subsequently present in a continuing or reissue application claims that are patentably distinct from such claims." 77 Fed. Reg. 48,649 (Aug. 14, 2012). Not only does that statement refer to what is ***allowed*** rather than what is ***prohibited***, but it in no way suggests that the regulation applies ***only*** to continuing or reissue applications.

Elsewhere, the commentary broadly explains that the rule "merely provides estoppel against claims that are patentably indistinct from those claims that were lost, and claim amendments that were presented and denied, during a trial," drawing no distinctions based on proceeding or claim status. *Id.*

*Arthrex*—which did not address reexaminations—is not to the contrary. The statements SoftView cites merely refer to § 43.73's application to continuations without ***limiting*** application to continuations. 880 F.3d at 1347; *id.* at 1353 (Newman, J., dissenting). Although this Court has not yet addressed the issue, the Board has previously held that § 42.73(d)(3) applies to *inter partes* reexaminations. Appx11-12 (citing *Ex Parte Nelson*, 2020 WL 8186425 at *5, No. 2020-004978, *Inter Partes* Reexamination 90/014,266 (P.T.A.B. Dec. 31, 2020) ("§ 42.73(d)(3) 'precludes a patent owner from taking any action in subsequent reexamination proceedings that are inconsistent with a prior adverse judgment.'")). Likewise, the cases SoftView cites, in which the Board did not apply estoppel in the IPR context (Br. 11-12), are inapposite. IPRs do not involve continued examination (except for amended claims, in which case the Board indicated estoppel would apply (Appx10; Appx76)).

Finally, SoftView insists that other determinations of these claims' patentability—either when the IPX Board reversed the examiner's obviousness rejections or when the EPX examiner found them to be patentably distinct—

prevent application of § 42.73(d) to those issued claims. Br. 12-13. Not so. *First*, the Board's "merits" reversal was not a determination that the claims were patentable over the prior art; just a determination that the Examiner had not yet adequately explained why they were unpatentable. *Second*, claims may be found patentable in an EPX, with no adverse party to champion their unpatentability, but later be found unpatentable. *See infra* § IV.

**2. Application to issued claims is not contrary to law.**

SoftView contends that applying estoppel to issued claims would be contrary to 35 U.S.C. §§ 301, 304, 311, and 316. Br. 13-15. Those arguments are misguided.

Section 42.73(d)(3) does not add a ground on which to institute *inter partes* reexamination (contrary to §§ 301 and 311) or affect a Patent Owner's right to make record statements about an alleged substantial new question of patentability (contrary to § 304).[4] Br. 14-15. It merely prevents a patent owner from relitigating claims not patentably distinct from claims found unpatentable. The Board expressly held that estoppel can only be applied in an *inter partes* reexamination to those claims for which a substantial new question of patentability had been found. Appx73. Thus, the institution decision rests on the cited prior art/printed

---

4 Further, 35 U.S.C. §§ 301 & 304 are inapposite because they relate to EPXs, not IPXs.

publications, which is all the statutes require. Further, SoftView's argument proves too much: If § 42.73(d)(3) were to violate the statutes SoftView cites by adding an impermissible institution ground, then common-law collateral estoppel would likewise violate those statutes. But SoftView concedes that common-law collateral estoppel can apply in agency proceedings (Br. 18), and its application is well-established. *See, e.g.*, *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1342, 1353 (Fed. Cir. 2021) (IPX); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) (IPR).

SoftView contends that § 42.73(d)(3) is void as *ultra vires* because it does not fall under the estoppel provided for in 35 U.S.C. §§ 315(e) and 325(e). Br. 15. But § 42.73(d)(3) falls well within the Director's mandate under 35 U.S.C. § 316(a)(4) regarding the relationship of proceedings under Title 35. And § 42.73(d) (which constrains the patent owner) operates in addition to, not inconsistent with, § 315 (which constrains an IPR petitioner). *See SynQor*, 988 F.3d at 1347-1349 (determining that common-law collateral estoppel against patent owner was "fully consonant" with statutory scheme even though § 315 only provides for estoppel against requestor).

**3. SoftView does not contest the Board's determination of which claims are issued.**

Although SoftView contends that estoppel should not apply to issued claims, it does not dispute the Board's determination that the following claims should be

treated as "amended," not "issued." Appx7, Appx52-53, Appx152, Appx189-190; *see* Appx1373-1425.

- 5, 23-27, 60, 61, 122, 137, 140, 141, 147, 156, 174-177, 238-242, 248, 259, and 274-277 (claims subject to EPX)
- 9, 12-14, 16, 17, 19-21, 71-83, 85, 86, 88-111, 126, 129, 130, 132, 134, 135, 162-164, 166, 167, 215, 226-236, 245-247, 251, 265, 266, 268, 270, and 271 (claims amended via amendment to claim from which they depend).

Thus, even if the Court determines that § 42.73(d) does not apply to issued claims, that determination would not affect those claims.

### C. Different Claim Construction Standards Do Not Preclude Estoppel.

To the extent SoftView contends that § 42.73(d)(3) cannot apply simply because the claim-construction standard in the IPR (BRI) was different from the standard that must apply now that the patent has expired (*Phillips*) (*see* Br. 20-21), that is wrong.

First, this Court has applied other forms of estoppel despite differences in claim-construction standards. For example, the very fact that Board decisions can be preclusive in district court actions—despite the different burdens of proof (preponderance v. clear and convincing) and claim-construction standards (BRI v. *Phillips*)—belies the idea that the difference in claim-construction standard alone

can defeat estoppel. Appx23; *see XY*, 890 F.3d at 1294 ("[A]ffirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions."); *see also Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 256 (D. Mass. 2019) (explaining that the *XY* Court "rejected the argument, articulated in the dissent, that PTAB opinions should not have preclusive effect in district courts because of the tribunals' different standards of validity, different burdens of proof, and different standards of appellate review" (citing *XY*, 890 F.3d at 1300 (Newman, J., dissenting))).

Second, this Court has explained that "[i]n many cases, the claim construction will be the same under the *Phillips* and BRI standards." *In re CSB-Sys.*, 832 F.3d at 1341 (citing *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1302 n.1 (Fed. Cir. 2015), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017)). Critically, SoftView has provided no reason why the standard itself makes a difference here. Indeed, as explained *infra* § III.C.1, SoftView proposed the same claim construction in the IPRs that it proposed in the district court (Br. 39) and continues to assert that the distinction between standards makes no difference to claim meaning (*e.g.*, Br. 44, 46).

Third, allowing patent expiration—and the resulting change in claim construction standards—to defeat estoppel would be antithetical to estoppel's goals

of promoting efficiency and public reliance. This Court does not revive patent claims invalidated under BRI upon patent expiration to test their validity under *Phillips*; as the Board explained, such a rule would be unworkable and would yield absurd results. Appx27; Appx172. A patent owner does not get another bite at patentably indistinct claims merely because the invalid claims happened to expire.

### D. Common-Law Collateral Estoppel Is Not At Issue.

SoftView devotes twelve pages of its opening brief (Br. 18-29) to discussing why common-law collateral estoppel should not apply. But the Board did not apply common-law collateral estoppel, so there is no common-law collateral estoppel determination for this Court to review or reach. Appx19-22. SoftView expansively contends that § 42.73 necessarily incorporates principles of common-law collateral estoppel, while citing just one line from regulatory commentary and one line from the footnote of a non-binding opinion of this Court as support. Br. 18-19. But, as the Board recognized, § 42.73 does not incorporate common-law collateral estoppel and the Board was not required to apply it.

First, a rule can be interpreted ***consistent with*** the principles of common-law collateral estoppel without ***incorporating*** those principles. Appx20-21. The commentary accompanying the final rule merely states that § 42.73(d)(3) is "consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule." 77 Fed. Reg. at

48,649. Not even SoftView contends that § 42.73(d)(3) ***incorporates*** other items listed in the commentary—*e.g.*, "the AIA" or "the recapture rule"—and the Board properly recognized that "§ 42.73(d)(3) is not simply an adoption of common law estoppel but rather a new rule consistent with various statutes and law." Appx20 n.2. Indeed, if the Patent Office intended to implement common-law collateral estoppel, it would have said so, rather than creating a new rule.

Second, SoftView points to the Additional Views in *Regents of the Univ. of Minnesota v. LSI Corp.*, 926 F.3d 1327 (Fed. Cir. 2019), but, as the Board noted, that "does not support its argument." Appx21. The Additional Views merely note that common-law collateral estoppel and § 42.73 ***can*** have the same result, and, in any event, are not binding.

Finally, the fact that common-law collateral estoppel can also apply to an *inter partes* reexamination does not make it the same as estoppel under § 42.73(d)(3). The Board was free to apply its "straightforward regulation that precludes a patent owner from relitigating patentability after having a full and fair opportunity to defend the patentability of a claim in an IPR" without reference to common-law-collateral-estoppel principles. Appx21.

Nevertheless, the rule is consistent with principles of collateral estoppel, and SoftView is wrong that those criteria are not met. For the reasons described *infra* § III, the differences between the Appealed Claims and the canceled IPR claims do

not "materially alter the question of invalidity," *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); instead, these claims are unpatentable ***for the same reasons***. Different prior art (Br. 21) does not affect the identity of issues. *MaxLinear*, 880 F.3d at 1375-1378 (remand to evaluate question of patentability "in view of the prior art cited in the [previous] IPR").

Dependent claims 58, 59, 66, 138, and 139 were actually litigated: SoftView addressed them in its Response by arguing that they were nonobvious for the same reasons as other claims. Patent Owner Response at 17-40, *Kyocera Corp. v. SoftView LLC*, IPR2013-00007, Paper 25 (P.T.A.B. July 19, 2013); *see Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1340 (Fed. Cir. 2020) (claims not separately argued rise and fall together). The Board addressed those claims (Appx368-369), and this Court affirmed.

The IPR claims' unpatentability was clearly necessary to the judgment of their unpatentability. SoftView's convoluted proposition that no prior art was essential to the IPR judgment because multiple references were independently invalidating (Br. 23) falls flat absent any specific argument that the different references raised different questions of patentability.

SoftView had a full and fair opportunity to litigate its claims in the IPR and the subsequent appeal to this Court. *MaxLinear*, 880 F.3d at 1373 (applying estoppel following IPR); *XY*, 890 F.3d at 1282 (same); *see SynQor*, 988 F.3d at

1349-1353 (IPX procedures afford a full and fair chance to litigate validity). Its arguments to the contrary (Br. 24-27) merely attempt to relitigate questions it lost in the IPR (Appx2929-2973; Appx3017-3024). To the extent SoftView contends that subsequent decisions from this Court (Br. 24-27) represented material changes in the law that would have changed the IPR's outcome, SoftView does not explain how these procedural changes are so fundamental as to have rendered the IPR proceeding unfair. No exceptions to issue preclusion apply, and SoftView's arguments to the contrary (Br. 27-29) only repeat its unpersuasive full-and-fair-opportunity arguments.

## III. THE APPEALED CLAIMS ARE NOT PATENTABLY DISTINCT FROM THE CANCELED IPR CLAIMS.

Because § 42.73 applies, the only question is whether the Appealed Claims are patentably distinct from the canceled IPR claims. SoftView raises several challenges—to the overall analytical framework and to certain additional claim limitations—but none undermines the Board's application of estoppel.

### A. The Board Applied The Correct Standard For "Patentably Distinct"

Per § 42.73(d)(3), estoppel applies to claims "not patentably distinct" from previously canceled claims. The Board interpreted those words to mean the same thing as the same words in obviousness-type-double-patenting or interferences, *i.e.*, that the claims are "more than simply an obvious variation over a prior patent

claim." Appx17; *see Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (2001) (double-patenting); *Regents of Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018) (interference).

SoftView, citing cases applying common-law collateral estoppel, contends that "not patentably distinct" should mean "substantially or essentially the same." Br.15-16. But the Board's interpretation is clearly correct. The Patent Office used the same words—"patentably distinct"—that it uses in the context of obviousness-type-double patenting and interferences. There is a presumption that the same words mean the same thing. *See Henson*, 582 U.S. at 85 (Petitioners did not show "why we should abandon our usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'") (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). Nothing in the promulgation history suggests a contrary intent. Indeed, the fact that language originally referred to "[a] claim to substantially the same invention as the finally refused or canceled claim" and then was ***amended*** to use the different language "[a] claim that is not patentably distinct from a finally refused or canceled claim" (Br. 16) suggests that the Office intended the new language to have a different meaning. *Compare*, Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 6,879, 6,913 (Feb. 9, 2012)

(proposed version), *with* 77 Fed. Reg. 48,676-48,677 (final version); 77 Fed. Reg. at 48,649 (explaining change).

SoftView further contends that because regulations (in a section related to derivation) define "[s]ame or substantially same" as "patentably indistinct," the term "not patentably distinct" must mean "the same or substantially the same." Br. 16-17. But, as the Board recognized, that conclusion does not follow. Appx18. That conclusion is appropriate only if claims are ***only*** patentably indistinct when they are the same or substantially the same. Appx17-19. None of SoftView's cases (Br. 17) stand for that proposition. *See Simpleair, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018) (for ***claim*** preclusion, which does not rest on identity of issues, "claims which are patentably indistinct are essentially the same"); *Soverain Software*, 778 F.3d at 1319 (not even referring to the term "patentably distinct"). Rather, as the Board recognized, this Court has held that claims can be patentably indistinct where they are anticipated or obvious over other claims. *Eli Lilly*, 251 F.3d at 968; *Regents of Univ. of Cal.*, 903 F.3d at 1291.

In any event, the Board's interpretation is consistent with how common-law collateral estoppel is applied. "Our precedent does not limit collateral estoppel to patent claims that are identical…. If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Ohio Willow Wood*, 735 F.3d at 1342. The

question is not whether the ***claims*** are essentially the same, but rather whether the ***issue of patentability*** is essentially the same. *MaxLinear*, 880 F.3d at 1377-1378 ("The Board must decide whether the remaining claims present materially different issues that alter the question of patentability, making them patentably distinct from [previously adjudicated claims]."). In other words, new claims may well include additional limitations which materially narrow their scope, such that they are not "essentially the same" as broader, invalidated claims. But the issue of patentability may still be "essentially the same," where, *e.g.*, the issue in the previous case was motivation to combine references, and the additional limitations were already present in one of the references. Thus, SoftView is not only wrong about the proper interpretation of "patentably distinct," but also that common-law collateral estoppel requires the ***claims*** to be "essentially the same," rather than the ***issue***.

### B. The Board Did Not Improperly Apply A "Domino" Approach.

SoftView argues that the Board improperly applied a "domino" approach to the dependent claims "in which each successively narrower claim is compared with the one before it, not with the prior art," which was "inappropriate since it improperly gives prior-art effect to the subject matter of an invalid claim." Br. 63 (quoting *Bourns*, 537 F.2d at 493). Not so.

First, the concerning "domino" approach arises when new claims are compared to claims previously found obvious without regard to whether the issue

of patentability is the same. *Bourns*, 537 F.2d at 493. But *Bourns* acknowledges that comparing unadjudicated claims to adjudicated claims is appropriate in the course of determining whether the claims raise the same issue of patentability. *Id.* ("To assess the identity of [the issues bearing on validity], it is convenient to compare the adjudicated and unadjudicated claims" and then determine if the "differences revealed … vary the relevant issues bearing on obviousness."). The *Bourns* court compared the claims, identified "essentially two features … not found in the adjudicated claims," and held that the plaintiffs were estopped because the "distinguishing features" had no "importance or significance"—which procedure the court found perfectly consistent with the proposition that "the subject matter of a claim must be considered as a whole." *Id.* at 492-494.

That is precisely what the Board did here: After comparing the appealed claims to the canceled claims to determine what was different, the Board evaluated whether any differences recited in the dependent claim limitations—all of which are individually in the prior art, and some of which appear in other canceled claims—added anything to the claims to make them more than the obvious sum of their parts, making clear that it was considering each claim as a whole. Appx92 (real-time rendering) ("Our review does not find any additional synergy from the combination of canceled claims 33/1 and 138/118. Rather, in the combination the

limitations merely perform as they did in each sub-combination.")[5]; Appx98 (same for column tapping, canceled claims 1, 138/118, and 48/36); Appx108 (same for "billions of Web pages," canceled claims 1 and 138/118); Appx115 (same for cascaded style sheet defining design, canceled claims 1 and 66/36); *id.* (same for XML code, canceled claims 1 and 36); Appx101 (finding paragraph tapping no different from column tapping); Appx110-111 (finding cascaded style sheet defining layout no different from cascaded style sheet defining design); Appx29; Appx113-114. Importantly, SoftView does not articulate how the claims as a whole offer more than the sum of their parts.

Furthermore, for several claim groups, there is not even a single new limitation to evaluate; rather, the column tapping, billions of Web pages, and cascaded style sheets limitations are each already present in a canceled claim and the Board merely determined that SoftView's multiplicative combinations add nothing compared to sub-combinations of those same limitations in canceled claims. Appx255 (canceled claim 66: "cascaded style sheet data defining aspects of the Web page design"); Appx263 (canceled claim 252: "billions of Web pages"); Appx266 (canceled claim 317: "zoom in on a column of the Web page by tapping on the column via the display"). SoftView cannot escape § 42.73(d)(3) by

---

5 This notation shows the dependency of the claims. "33/1" is claim 33, depending from claim 1.

mixing and matching dependent claim limitations, already found obvious in other combinations, in hundreds of ways.

Nor does the mere fact that dependent claims are presumed to differ in scope (Br. 64-65) mean that they raise materially different questions of patentability or are patentably distinct. A presumption can be overcome, as the *Bourns* court and every court to apply collateral estoppel to different claims understands. *Bourns*, 537 F.2d at 492 ("[M]erely because the invention … is presented in varying language or varying combinations of elements does not necessarily mean that the issues bearing on the nonobviousness of that concept or contribution vary from one claim to the next.").

### C. The Board Correctly Determined That The Appealed Claims Are Not Patentably Distinct.

Unsurprisingly, SoftView's 322 claims do not recite 322 patentably distinct inventions. Instead, the independent claims at issue have either the same scope as the canceled claims or scope not meaningfully different, and the additional limitations in the dependent claims add only routine features already present in the prior art (and, in some cases, the canceled claims). The appealed claims are at best obvious variations of claims already found to be unpatentable.

### 1. Independent claims (preserving/preservation)

Canceled claim 1 recites "translating at least a portion of the HTML-based Web content" into a format that "preserves the original page layout, functionality and design." Appx252.

Canceled claim 1:

> … the Web page comprising HTML-based Web content having an original format defining an original width and height of the Web page and an original page layout, functionality and design of content on the Web page;
>
> …
>
> ***translating at least a portion of*** the HTML-based Web content from its original format into scalable content that supports a scalable resolution-independent representation of the Web page that ***preserves*** the original page layout, functionality, and design of the content defined by its original format when scaled and rendered.

*Id.* (emphasis added).

Canceled claim 36 likewise requires processing only a portion of the HTML-based Web content by virtue of its failure to recite processing "***the***" HTML-based Web content. Appx254.

Canceled claim 36:

> … rendering a browser interface via which a user is enabled to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;
>
> retrieving the Web page via the wireless communications device, and ***processing HTML-based Web content*** to produce scalable content; and

> employing at least one of the scalable content or data derived therefrom to
>
> …
>
> re-render the display in response to associated user inputs to enable the Web page to be browsed at various zoom levels and panned views while preserving the original page layout, functionality, and design of the Web page content at each zoom level and panned view.

*Id.* (emphasis added).

In the Kyocera IPRs, the Board construed "preserving" a Web page's original layout, functionality, and design to mean "*maintains the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances*." Appx358. The Board further determined that claims 1 and 36 did not require translating (and therefore did not require preserving) every HTML-based content element. Appx356-358; Appx367. Nevertheless, it found that Pad++ not only disclosed what those claims required—"preserving the layout, functionality and design of the part of the web page that is translated (claim 1) or processed (claim 36)" (Appx367)—but also provided "proof of concept" that would have rendered obvious an implementation that included other known HTML capabilities. Appx368 ("The fact that Bederson did not implement all, or even many, of the known capabilities of HTML does not alter the fact that Pad++ demonstrates the concept, suggests it could be applied to the Netscape and Mosaic browsers, and

states that it was being designed for use on devices with small screens, such as PDAs.”).

SoftView contends that claims 87, 185, 285, and 318, which do not use the words “at least a portion of” and refer to translating “the” HTML-based Web content, require preserving ***all*** of the original page layout, functionality, and design (under either BRI or *Phillips*) and therefore are patentably distinct from the canceled IPR claims. *See* Br. 46-47, 53-55. SoftView further appears to contend that claims 70, 209, and 216—which contain no meaningfully different language from canceled claims and require translating/processing only a portion of the HTML-based Web content—likewise are patentably distinct from the canceled claims because, under the *Philips* standard, those claims must be construed to have different scope from the IPR claims despite the identity of language.[6]

SoftView’s arguments fail for the reasons described below.

---

[6] SoftView’s brief addresses independent claims 87, 185, 285, and 318 (Br. 46-47) and 70, 209, and 216 (with canceled claims 1, 36, and 149) (Br. 48-50). But SoftView nowhere addresses other independent claims listed in its notice of appeal—claims 5, 24, 60,122, 174, 239, and 274. SoftView has therefore waived any argument that these claims—and claims that depend from them without including additional, separately argued limitations—are patentably distinct from canceled claims. *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed. Cir. 2017). Regardless, they are not patentably distinct for the same reasons as the independent claims discussed below.

### ***a. Claims 70, 209, and 216***

The scope of claims 70, 209, and 216 is no different from the scope of the claims that were canceled in the IPR. These claims, which recite "at least a portion of the HTML-based Web content," use the same language as canceled claim 1. Appx255-256; Appx261; *see* Appx131. SoftView never articulates any difference in scope between canceled claims 1, 36, and 149 and appealed claims 70, 209, and 216, and even treats all six claims together in its brief. Br. 49-50. There can therefore be no dispute that these claims are not patentably distinct and that estoppel applies.

SoftView invokes the theoretical possibility that a change in claim construction standard could alter the meaning of the claim language. But as discussed *supra* § II.C, the mere fact of a standard change is not sufficient to defeat estoppel. And SoftView does not come close to showing that it would be inappropriate or unfair to apply estoppel here.

First, SoftView fails to explain ***how*** the standard change could yield the change in claim scope it advocates. For example, SoftView nowhere explains how claims that explicitly recite translating "a portion of" the HTML-based content under a BRI standard could be interpreted to vitiate that language under a *Philips* standard. Nor does it directly address the IPR Board's reasoning to explain how a different standard would change the construction. Indeed, it maintains that the

claim construction affirmed in the previous appeal was wrong and the claims by rights should have the same interpretation under both standards. Br. 30-31.

Second, while SoftView contends that the "at least a portion of" language was intended to distinguish between HTML version/head information, on one hand, and HTML body information, on the other (Br. 48-50), that is not what its claims say. As the Board recognized, SoftView's "intent" while drafting the claims is not relevant, and shifting from BRI to *Phillips* does not make its intention-based construction more viable. Appx24.

Third, the Board's construction in the IPR did not turn on any distinction between the BRI standard and the *Phillips* standard (Appx23), and SoftView has not identified any; instead, the Board considered the same arguments the parties were proffering to the district court. Indeed, SoftView concedes that "[t]he '926 Decision to Institute"—on which the construction in the '353 IPR FWD is based—"used Patent Owner's claim construction *proffered* in the litigation." Br. 39; Appx22-23. The change in claim-construction standard now is of no moment.

#### ***b. Claims 87, 185, 285, and 318***

The Board agreed that deleting the words "at least a portion of" requires the entire HTML-based Web content to be translated and preserved. Appx82. But that does not render such claims patentably distinct because the IPR Board already

determined that the prior art either teaches or renders obvious preserving the "entire" HTML-based Web content as SoftView limited that term in prosecution.

As the IPR Board recognized, even SoftView agrees that "entire" does not mean every HTML-based content item has to be translated and preserved exactly as it appears in the original web page. Appx354-355; Appx365-368; *see* Br. 49, Appx1515-1551. SoftView explained during prosecution that "preserving the original page layout, functionality, and design … doesn't imply that all of the content associated with the Web page must be retrieved or downloaded" because "content may be referenced that is not supported by the requesting browser." Appx1520-1521; *see* Appx1766 (examiner quoting). "When a browser encounters content that is not supported 'natively' by the browser, the browser will typically check to see if an appropriate plug-in is available…. In other instances, the content is simply ignored." Appx1521; *see* Appx1766 (examiner quoting). SoftView explained that "[e]ven when rendering the same Web page source content … conventional Web browsers may not render the (full scale) Web page identically." Appx1526. SoftView even specifically stated that its invention applied to browsers that could not render "new types" of HTML-based Web content:

> [E]arlier browsers using rendering/layout engines that were developed prior to the definitions of the new types of content and/or design elements or otherwise did not include support for such content or design elements will not display the content or design element(s) or may attempt to display them in an erroneous manner. Typically, when a browser rendering engine encounters content or a CSS

> element it doesn't recognize, it simply ignores it. In other cases the HTML-based content may include support for functionality that is applicable to a desktop environment, but not applicable to a mobile device[, e.g., mouse "hover-over" menus]. Since there is no mouse or equivalent on a typically mobile device, the browser's rendering/layout engine may be configured to ignore support of such functionality.
>
> The claim language "preservation of the original page layout, functionality and design" is to be considered in the context of the browser implementation itself. That is, the preservation is relative to the interpretation of the page by the browser implementation itself, as opposed to preservation of the original layout, functionality and design based on some rigid consideration of a 'perfect' interpretation of the page."

Appx1529-1530. Those statements by SoftView as to the meaning of "preserve" were not limited to claims only requiring translation and preservation of "a portion of" the HTML-based content; indeed, SoftView has consistently argued that even those claims require preservation of the layout, functionality, and design of ***all*** HTML-based content. Thus, by SoftView's own admission, a browser that cannot implement certain HTML tags can ignore those tags, and still meet the "preserving" limitation.

Given that scope, there is no patentable distinction here. There is no dispute that Pad++ preserves the "entire" HTML-based Web content for any Web page that includes only those particular HTML tags supported by the Pad++ browser or the "entire" HTML-based Web content for any HTML-based Web content that it could translate. Appx1767; Appx1485-1489 (citing Appx2353; Appx854-861).

And the claims do not require any specific level of Web page complexity regarding the types of HTML tags included in the requested Web page.

Even if the claims did require that every HTML tag be implemented, the IPR Board already held that that would have been obvious over the IPR prior-art combination of Zaurus and Pad++. Appx367-371 (IPR Board); Appx1771 (IPX Examiner explaining IPR Board found obviousness over Pad++); Appx66-69 (IPX Board agreeing with examiner that IPR Board found it obvious, but over Pad++ and Zaurus together). The IPR Board explained that "[t]he fact that Bederson did not implement all, or even many, of the known capabilities of HTML does not alter the fact that Pad++ demonstrates the concept[ and] suggests it could be applied to the Netscape and Mosaic browsers" (Appx368 (IPR Board)), and "even if Pad++ does not implement all available HTML tags … the selection of which tags to implement is a matter that would be well within the knowledge and abilities of a person of ordinary skill in the art and would be obvious" (Appx371 (IPR Board)). Thus, these claims are not patentably distinct from the canceled claims.

Furthermore, because the claims are silent about what HTML-based Web content is being translated and preserved, the scope of those claims turns out to overlap significantly with the scope of the canceled claims, as the Board explained. Appx80-83. Where A, B, and C are the original layout, functionality, and design that the claim requires preserving, and X is additional content, the canceled claims

cover starting from ABCX and preserving ABC. Claims 87, 185, 285, and 318 do not limit what the starting HTML-based Web content can be; they only say it must all be preserved. It could cover a Web page with ***only*** HTML-based layout, functionality, design, ***or*** a Web page with HTML-based layout, functionality, design and additional features. Accordingly, the claims on appeal cover: (1) starting from ABCX and preserving ABCX or (2) starting from ABC and preserving ABC. Thus, both sets of claims lead to zooming that preserves ABC, which the IPR Board found was taught by the prior art. "[W]hat is the 'entire' preserved content in the [appealed] claims encompasses the preserved 'portion' in the canceled claim given the obvious variation of simply removing completely from the canceled claim processing the original web page content portion that is not preserved." Appx26.

SoftView's other arguments are unavailing.

First, SoftView urges the Court to "consider" the district court's construction (admitting that it is non-binding), but does not explain how such "consideration" would change the analysis here. Br. 45. In any event, the district court's construction—issued after the Board's decision but before this Court's decision—is not inconsistent with the construction affirmed by this Court: it merely gave the term its plain meaning. Appx3068-3069.

Second, SoftView disagrees with the Board's determination that claim 87 is largely a combination of the canceled sub-combination claims 1 and 36 (Br. 61 (citing Appx113-114)), but does not even explain what the alleged additional limitations are, much less explain how they render claim 87 patentably distinct. Instead, its only argument is that claims 87, 185, 285, and 318 are patentably distinct because of the differences in claim scope from the removal of "portion" (Br. 62), which is wrong for the reasons explained *supra*.

Finally, SoftView contends that the prior art in the IPR cannot read on the appealed claims because the renderings of Web pages in the prior art do not look identical to the Mozilla renderings. Br. 55-61. But SoftView made similar arguments in the IPR and the Board already rejected them. *See* Appx392-408. In particular, the IPR Board rejected the idea that the original page layout, functionality, and design must be preserved "as viewed on a conventional desktop browser," like the Mozilla browser shown on Br. 60, because—as discussed above—SoftView conceded during prosecution that "preserving" "refers to preserving the design as interpreted by the browser while at different zoom levels and panned views as opposed to rendering the content identically to how it is rendered by a particular desktop browser that may interpret the page design differently." Appx354.

### 2. Dependent claims 3, 41, 75, 101, 154, and 199 (real-time rendering/zooming)

The Board soundly concluded that SoftView's dependent claims for zooming "in real-time" are not patentably distinct from those canceled during the IPR. Claims 3, 41, 75, 87, 101, 154, and 199 specify that "the display of the Web page is re-rendered in real-time to effect zooming operations." *E.g.*, Appx252 (claim 3). Claims canceled in the prior IPR already required re-rendering to effect zooming. *E.g.*, Appx352 (canceled claim 36 required "re-render[ing] the display … to enable the Web page to be browsed at various zoom levels"). The claims at issue on appeal simply add the phrase "in real-time." Appx92.

The Board correctly found that new language does not create a patentable distinction. Carefully parsing the intrinsic record, the Board explained that the ordinary meaning of "real-time," as used in the '353 patent, describes an inherent feature of vector-based zooming. Appx92; Appx95. So the canceled claims *already* required real-time zooming, and SoftView did not alter those limitations by making the "real-time" feature explicit.

The specification consistently uses "real-time" that way. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (specification is "the single best guide" to ordinary meaning). After explaining that the invention translates a Web page's contents into vectors, the specification teaches that "because the resulting file graphics are handled as vectors, the end user can control

real time changes in the size of text and graphics as well as what portion of the file is viewable in the display." Appx243-244(4:67-5:3). That causal statement makes clear, as the Board held, "that 'real-time' is a 'characteristic of using vectors for scaling.'" Appx30 (quoting Appx92). The specification confirms as much by noting that "[t]his 'zoom and pan' capability" was already "familiar to CAD and *other vector content software* users." Appx244(5:3-5) (emphasis added). The patent teaches that real-time zooming is an established feature of vector-based software generally, not just one particular program.

SoftView simply ignores those disclosures when it suggests that the patent ties "real-time zooming" to using "vectors in a specific way and in combination with other teachings." Br. 65. All SoftView points to within the specification is a subsequent statement that the invention could include a mobile device "graphics rendering engine … so efficient that file manipulation happens in a fraction of a second." Br. 66 (quoting Appx244(5:10-13)). But that sentence simply notes that certain mobile graphics engines are particularly powerful, without purporting to define or limit the meaning of "in real-time."

Beyond that, SoftView asserts that the Board misstated an argument within the rehearing petition. Br. 66. That is wrong, and the dispute would have no bearing on claim construction in any event. SoftView's petition argued that two specific PDAs employed additional features, beyond the use of vectors, to "achieve

real-time rendering and zooming." *Id.* (quoting Appx2863). The Board accurately summarized that argument as purporting to list "[a]dditional known ways to implement real time rendering besides … vectors" alone. Appx30. And regardless of how the Board recited it, SoftView's argument fails to move the needle. SoftView does not contend on appeal that the operations of those two PDAs constitute extrinsic evidence that could alter the meaning of "in real-time" within the '353 patent. For good reason: Although SoftView's rehearing petition claimed that the PDAs derived real-time functionality from additional features beyond the use of vectors, those features amount to nothing more than the nuts and bolts of vector-based rendering—namely, "vectorized" objects, "a display list of vectors," and a "vector-based rendering engine/library." Br. 66 (quoting Appx2863).

SoftView fares no better in citing the prosecution history. During initial prosecution of what became the '353 patent, a different examiner rejected distinct, earlier claims that described certain functions as "substantially in real-time." *See* Appx2452, Appx2460. The ground for rejection was that the undefined adjective "substantially" rendered whatever followed indefinite. Appx2452. SoftView responded by amending the relevant limitations to omit "substantially." Appx2460. Unsure how the examiner would approach the remaining term "in real-time," SoftView made the statement it now cites. It asserted that the meaning of "real-time" depends on "context." Appx2461. And it suggested that *"[f]or the*

*purpose of a defined time period*," the term "as used herein means the operation is performed in a few seconds or less.'" *Id.* (emphasis added); *see* Br. 65.

SoftView does not contend that this statement constituted lexicography or disavowal. Nor could it. The statement conveyed only a conditional proposition—that *if* "in real-time" were read to demand a "defined time period," then for that "purpose," SoftView would want to use "a few seconds" as an outer bound. Appx2461. None of that dictates the meaning of "in real-time" in the claims at issue. The Board explained that they ***should not*** be read to require a defined time period, precisely because the specification uses "in real-time" in a fundamentally different sense—not as a precise measure of time, but as a feature inherent in vector-based software.

On top of that, even if "in real-time" indicated a particular time frame—say, zooming within a few seconds—that *still* would not undermine estoppel. The specification would still define real-time functionality (and its "few seconds" time frame) as inherent in vector-based zooming. So the canceled claims still would have implicitly required it simply by mandating vector-based zooming.

As a separate matter, SoftView never even suggests that reading "in real-time" to require action within a specific time frame (but not inherent to vector-based rendering) would create a patentable distinction over the canceled claims. With good reason: Evidence cited by the Board and the examiner already resolved

that issue against SoftView. As the Board confirmed, Pad++ discloses that its browser could be used on a mobile device, including a "PDA." Appx90 (quoting Appx2006). Pad++ also undisputedly teaches that its browser enables "real-time interaction," including "zooms." Appx2081. And it instructs that its browser may be adjusted to "maintain constant perceptual flow, independent of processor speed, scene complexity, and window size." Appx2082. As the examiner explained, those teachings establish that even if SoftView's "in real-time" limitations imposed a temporal requirement not inherent in vector-based zooming, Pad++ would describe a browser "fast enough" to render those limitations obvious. Appx1995; *see* Appx2079-2083.

### 3. Dependent claims 35, 69, 111, 184, 185, 215, 251, 310, 319 and 274 (billions of Web pages)

SoftView contends that claims 35, 111, and 274 are patentably distinct from the canceled claims because they additionally recite "wherein the device enables a user to browse, zoom, and pan ***billions of Web pages*** in a manner that preserves the original layout, functionality, and design of the HTML-based Web page content of each Web page." Br. 66-69 (emphasis added). They are not.

First, SoftView ignores that canceled claim 252 ***also*** includes the identical "billions of Web pages" limitation: "wherein the Web browser enables a user of the device to browse, zoom, and pan billions of Web pages in a manner that preserves the original layout, functionality, and design of the HTML-based Web

page content of each Web page at each zoom level and panned view." Appx263(claim 252). SoftView waived any separate argument as to the "billions of Web pages" limitation by failing to contest Petitioner's argument in the IPR. *Genentech*, 946 F.3d at 1340. This limitation therefore cannot render the claims patentably distinct from canceled claim 252.

Even if the claims on appeal differed from the canceled claims by including "billions of Web pages, browsing "billions of Web pages" is merely a recitation of intended use and does not limit the claims, as the Board found. Appx107-108; Appx174-175. SoftView contends that, in order to preserve billions of Web pages, the rendering engine would have had to support different versions of HTML and CSS. Br. 67-69. But the claims do not require support for different versions of HTML and CSS. Nor do the claims require support for ***every*** Web page. They only require support for "billions of Web pages." In other words, the claims say nothing about the ***kind*** of Web pages that must be supported, just the ***number*** of pages. Because there is no difference in structure needed to preserve features of many Web pages compared to one Web page, "billions of Web pages" is a non-limiting intended use. *In re Miller*, 2022 WL 594417, at *3 (Fed. Cir. Feb. 28, 2022) ("emergency" not limiting because no structural difference between "emergency" water storage and non-emergency water store).

Even if it were not an intended use, simply changing the number of Web pages would have been obvious, as the Board found. Appx108; Appx174-175. SoftView does not explain why a person of ordinary skill would not have been motivated to enable use of many Web pages rather than just one. Indeed, the original claims are not limited to any particular number of Web pages, so the addition of "billions of Web pages" does not change the question of patentability.

#### 4. Dependent claims 106, 182, 204, 282, 304, and 322 (cascaded style sheets)

SoftView does not explain how claims 106, 182, 204, 282, 304, and 322, which recite a "cascaded style sheet" are different from canceled claim 66, which also recites a "cascaded style sheet." Appx34-35. As the Board explained, "the language of canceled claim 66 and the language of claim 106 is substantively identical and Patent Owner has not provided any authority or evidence that explains why substantively identical claim language would be materially different with respect to patentability." Appx34, Appx176; *see* Appx110-111, Appx115.

Instead, SoftView contends that claim 66 was not "given up" and repeats its argument that the "preserving" limitation in these claims must be reconstrued. Br. 69-70. But SoftView does not dispute that, in the IPR, it did not present any separate evidence or argument relying on the CSS limitation in response to the petitioner's showing that claim 66 was unpatentable. *See id.* It therefore waived any such argument, and the claim has been finally canceled. And the "preserving"

limitation does not render these claims patentably distinct for the reasons described *supra* § III.C.1.

**5. Dependent claims 13, 20, 50, 55, 90, 97, 129, 134, 162, 171, 187, 194, 227, 234, 265, 270, 287, and 294 (tap-to-zoom on column and paragraph)**

The Board correctly found that SoftView's dependent claims that recite tap-to-zoom limitations are not patentably distinct from those canceled during the IPR. Claims 13, 50, 90, 129, 162, 187, 227, 265, and 287 require enabling the user to "zoom on a column" by "tapping on the column via the display." *E.g.*, Appx97-98 (claim 13). Claims 20, 55, 97, 134, 171, 194, 234, 270, and 294 similarly require enabling the user to "zoom on a paragraph" by "tapping on the paragraph." *E.g.*, Appx253 (claim 20); *see* Appx101.

As an initial matter, canceled claim 317 covered a mobile device that also enabled the user to "zoom in on a column … by tapping on the column via the display." Appx208. So the IPR already invalidated the precise tap-to-zoom limitation that SoftView contends differentiates claims 13, 50, 90, 129, 162, 187, 227, 265, and 287. Appx369, Appx372. That alone warrants affirming the Board's estoppel ruling.

The Board focused its estoppel analysis on canceled claims 1, 138, and particularly 48, which already covered a mobile device that enabled the user to "zoom on a column" via an unspecified "user input." Appx139. The Board

soundly concluded that the tap-to-zoom limitations of the claims now at issue are not patentably distinct from that canceled language because it would have been obvious for a skilled artisan to select tapping as the user input, and to extend the tap-to-zoom function to paragraphs as well as columns. Appx31-33; Appx98; Appx101; Appx119-120. SoftView offers no ground for overturning those findings.

The Board cited comprehensive evidence that a skilled artisan would have considered it obvious to select tapping as the input used to zoom on a column. First, in assessing a closely related claim, the Board found that Pad++ taught that a column could be the subject of zooming. Endorsing the examiner's careful analysis, the Board explained that "Pad++ is designed to support … zooming of 'standard objects,'" including "HTML objects such as 'HTML … text, images, bullet items, and horizontal rules.'" Appx97 (quoting Appx1999-2000). The Board agreed with the examiner that Pad++'s "standard objects" encompass portions of a page like "column objects," since "a column is a frame object identified by horizontal rules and text." Appx97 (quoting Appx1999-2000).

The Board next found that Pad++ taught the use of a single input (a mouse click on a computer) to zoom on a standard object (*e.g.*, a full "page" of text). Appx97 (quoting Appx2000). As noted above, Pad++ also disclosed that it was designed to be used on a mobile device, including a "PDA." Appx90 (quoting

Appx2006). Citing another patent as an example, the Board found that "tapping is a known form of user input for a PDA," just as mouse clicks were familiar input for computers. Appx98 (citing Ausems patent); *see* Appx372 (IPR Board finding that "Pad++ could be designed for use on handheld devices with small screens and the expedient of tapping the screen corresponds to clicking with a mouse on a large screen device").

Putting all of that together, the Board soundly found that SoftView's addition of a tap-to-zoom requirement for columns did not create a patentable distinction from the canceled claims. Appx98. Pad++ already taught that objects like columns could be zoomed; disclosed using a click-to-zoom feature for other objects; and contemplated running the browser on a PDA. Given the prevalence of tapping as a PDA input, substituting tap-to-zoom for click-to-zoom would have been obvious, as would applying that feature to columns alongside other objects like pages. *Id.* (Indeed, as noted above, canceled claim 317 required tap-to-zoom for columns. *Supra* 54.)

The Board concluded that the same was true for zooming on paragraphs. It explained that when assessing the obviousness of tap-to-zoom, there was "no meaningful difference" between a column and a paragraph. "Both are well-known arrangements of printed material, and the claimed computer/display operations performed on one would be recognized by an artisan as equally applicable to the

other." Appx101. So a skilled artisan would have been equally motivated to implement tap-to-zoom for paragraphs. *Id.*

SoftView offers no ground for overturning the Board's thoroughly reasoned findings. It first renews its unpersuasive argument that the Board assessed obviousness with an impermissible "domino approach." Br. 70; *see supra* § III.B.

At times, SoftView also appears to suggest that the Board somehow misconstrued the tap-to-zoom limitations. But SoftView never identifies an error. It notes that "[c]laims must be construed as a whole, in context," and that "[t]he zoom must be 'in response to' tapping on the column (or paragraph) and may not include subsequent zoom operations using additional inputs to obtain the fit across the display limitation." Br. 71. But the Board never held otherwise. It simply found that tapping in that fashion was an obvious variation on canceled claims covering a wider range of user input.

Ultimately, most of SoftView's arguments are evidentiary: It takes aim at the factual sufficiency of the Board's finding that a skilled artisan would have considered it obvious to select tapping as the user input for zooming on a column or paragraph. SoftView comes nowhere close to showing that no "reasonable mind might accept" the Board's evidence "as adequate." *Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1354-1355 (Fed. Cir. 2022) (citation omitted). Indeed, SoftView does not even acknowledge, let alone purport to clear, that high bar for

reversal. The Board grounded its obviousness determination in a range of disclosures from Pad++, and SoftView never asserts (nor could it show) that a reasonable mind would be compelled to reject that evidence.

Instead, SoftView focuses on proving a legally irrelevant point—that Pad++ alone did not expressly disclose a tap-to-zoom implementation for columns or paragraphs. SoftView notes that Pad++ illustrated a click-to-zoom function (using a formatting feature called a bounding box) for certain objects like full pages, but not for other objects like "paragraphs or columns." Br. 74-75. SoftView also emphasizes that Pad++ taught "clicking inputs" but did not discuss tapping. Br. 76. And SoftView contends that Pad++ did not illustrate the translation of "HTML elements" corresponding to "columns," even as it translated other HTML elements. Br. 76-78.

The Board, however, was not required to "seek out precise teachings directed to the specific subject matter of the challenged claim." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Instead, the Board properly took "account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* It explained why a skilled artisan, drawing on Pad++'s broader teachings and expert knowledge of PDA functionality, would have *expanded on* Pad++'s express click-to-zoom disclosures by substituting tapping for clicking and extending the function to columns and paragraphs. *Supra* 55-57. Regarding the

translation of the HTML elements for columns, in particular, the Board agreed with the examiner (and the IPR Board) that "the selection of which [HTML] tags to implement" in a mobile browser "is a matter that would be well within the knowledge and abilities of a person of ordinary skill in the art and would be obvious." Appx84 (quoting Appx2042). In short, even if Pad++ did not directly illustrate tap-to-zoom for columns and paragraphs, its teachings would have led a skilled artisan to implement those features. SoftView offers no ground for overturning that well-founded conclusion.

#### 6. Dependent claims 105, 203, and 303 (XML code)

The Board correctly found that dependent claims 105, 203, and 303 are not patentably distinct from those canceled during the IPR. For the most part, these claims repeat limitations familiar from canceled claims in a way that creates no "additional synergy." Appx115. Beyond that, the claims specify that "a portion of the HTML-based Web content" on the rendered web page "comprises XML code." Appx255-256. As the examiner explained, XML is an "extensible markup standard" that could "enhance the delivery of content" of web pages, as demonstrated by prior-art references like the Bray patent. Appx2014. It was such a well-known feature of web pages that the '353 specification calls it out expressly: "In addition to basic HTML, web page documents may contain XML … code." Appx245(7:65-67). In the name of "simplicity," the patent even subsumes XML

within its definition of "HTML documents." Appx245 (8:1-4). SoftView thus concedes on appeal that it was "well-known by a POSITA at the time of the invention" that "an HTML document (e.g. a Web page) includes … HTML (and optionally … XML)." Br. 48-49. No surprise, then, that the Board found incorporating XML code to be an obvious variation on the canceled claims. Appx115.

SoftView's two-sentence challenge to this ruling, Br. 79, provides no ground for reversal. SoftView again reiterates its unpersuasive "domino" critique. *Id.*; *supra* § III.B. SoftView also notes that the Board mentioned Bray when explaining the ubiquity of XML code in HTML Web pages—a reference "not considered in the '353 IPR." Br. 79. But even assuming Bray was somehow off limits, the Board's decision is amply supported by the '353 patent's disclosures, not to mention SoftView's matching concession on appeal. And while SoftView faults the Board for not expressly enumerating each *Graham* factor (Br. 79), that formality was not required to clarify the Board's reasoning on such a straightforward obviousness issue.

#### 7. SoftView does not challenge the Board's determination that other claims are not patentably distinct.

SoftView does not contest the Board's determination that claim 320 (reciting an HTML paragraph object) and claim 321 (reciting an HTML table data object) are not patentably distinct from finally canceled claims. Nor does SoftView make

any additional argument for the many dependent claims at issue that both (1) do not depend from the independent claims argued to have a different "preserving" scope and (2) do not include limitations related to real-time rendering, billions of Web pages, cascaded style sheets, tap-to-zoom, or XML code. It is therefore undisputed that, if § 42.73(d)(3) applies, the Court should affirm the rejection of those claims.

### D. If Estoppel Does Not Apply, Remand Is Required.

The Board reversed the examiner's obviousness rejection of certain claims not because it determined they were patentably distinct over the cited prior art, but because the examiner did not adequately explain the rejection.

If the Court decides that estoppel does not apply (or does not apply to issued claims), these claims should be returned to the examiner to better articulate the reasons for the rejection. Appx67-69.

Remand would also be required for the Board to address Appellees' arguments as to the unpatentability of claims 106, 182, 204, 282, 304, and 322. Appx59; Appx194.

## IV. THE BOARD DID NOT VIOLATE THE APA.

Finally, SoftView contends that the Board's decision was arbitrary and capricious because certain claims now found to be estopped were determined to be

patentable in the EPX over the same prior art and patentably distinct from the IPR claims. Br. 79-80.

As the Board explained (Appx179), the *ex parte* proceeding was made on a different record from this proceeding, which included arguments and evidence from an adverse, interested party. *See Stevenson*, 713 F.2d at 710 (explaining that a "prior holding of validity is not necessarily inconsistent with [a] subsequent holding of invalidity" due to factors such as "different records"). There are many ways for a claim to be found unpatentable, but it is only patentable if it meets ***every*** requirement. *See id.* at 711 ("[P]atents cannot be held 'valid' under all circumstances. Rather, a court merely decides in a particular case that the one attacking validity has not overcome the statutory presumption of validity."). Indeed, every patent that goes through an IPR or *inter partes* reexamination has already been examined and found patentable, sometimes over the same art. *See* 35 U.S.C. § 312(a) (pre-AIA) ("The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."). That does not make a later finding of unpatentability arbitrary and capricious.

An EPX is similar to an initial examination—it is handled by an examiner, and only the patent owner has the ability to appeal to the Board or the Federal Circuit. Nothing prohibits a later finding of unpatentability. Furthermore, here,

the EPX was handled entirely by the examiner, and never appealed to the Board. Just as the Board may reverse an examiner within a proceeding, it is not arbitrary and capricious for the Board to come to a different conclusion from an examiner in a related proceeding.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decision, or at most, vacate and remand.

Respectfully submitted,

/s/ Sonal N. Mehta

Sonal N. Mehta
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

Madeleine C. Laupheimer
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Appellee* MOTOROLA MOBILITY LLC

Melanie L. Bostwick
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400

Edmund Hirschfeld
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Attorneys for Appellee*
APPLE INC.

April 17, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 13,784 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Sonal N. Mehta
Sonal N. Mehta
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

April 17, 2023