**Appeal Nos. 2023-1005 and 2023-1007**

**IN THE**

# United States Court of Appeals for the Federal Circuit

**SOFTVIEW LLC**,
*Appellant,*

*v.*

**APPLE INC. and MOTOROLA MOBILITY LLC**,
*Appellees*

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
*Intervenor*

APPEAL FROM
THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD
IN REEXAMINATION CONTROL NOS. 95/000,634 AND 95/002,132

## REPLY BRIEF OF APPELLANT SOFTVIEW LLC

R. ALAN BURNETT

**LAW OFFICE OF R. ALAN BURNETT**

4108 131st Ave SE
Bellevue WA 98006
(425) 417-4729

*Attorneys for Appellant*
SOFTVIEW LLC

May 27, 2023

# CERTIFICATE OF INTEREST



## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1005 and 2023-1007

**Short Case Caption** SoftView LLC v. Apple Inc.

**Filing Party/Entity** SoftView LLC

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/27/2023

Signature: /s/ R. Alan Burnett

Name: R. Alan Burnett

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| SoftView LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................... i

INTRODUCTION .................... 1

ARGUMENT .................... 3

I. APPLICATION OF C.F.R § 42.73(d)(3)(i) .................... 3

A. C.F.R § 42.73(d)(3)(i) Estoppel is Not Applicable to Any Claim on Appeal .................... 3

B. § 42.73(d)(3) Estoppel Must Apply Traditional Principles of Collateral Estoppel/Issue Preclusion .................... 7

1. "Patentably Indistinct" Means "Substantially" or "Essentially the Same" .................... 9

C. All Claims on Appeal are Patentably Distinct Over All Claims Cancelled in the '353 IPR .................... 10

1. The Elephant in the Room: Board's Use of New Claim Construction for Estoppel Cannot Stand .................... 10

2. Claim Construction for Appealed Claimed .................... 14

a) Independent Claims 87, 185, 285, and 318 .................... 15

b) Independent Claims 1, 36, 70, 149, 209, and 216 .................... 16

D. Board's Claim Rejections under New Ground .................... 17

1. Claims 87, 185, 285, and 318 .................... 17

2. Rejection of Dependent Claims .................... 20

a) Additional Synergy Analysis Not Supported By Any Court Precedent .................... 20

**Page**

b) Real-time Rendering/Zooming .......................... 21

c) Preserving Billions of Web Pages ..................... 25

d) Cascaded Style Sheets ...................................... 31

e) Tap to Zoom on Column and Paragraph .......................................................... 34

f) XML Code ......................................................... 37

E. No Remand is Required ........................................................ 38

F. Violation of the Administrative Procedure Act (APA) ........................................................................... 38

G. Equitable Considerations ...................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
908 F.3d 792 (Fed. Cir. 2018) ....................16

*Bd. of Trs. of Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*,
860 F.3d 1367 (Fed. Cir. 2017) ....................18

*Bourns, Inc. v. U.S.*,
537 F.2d 486, 493 (Ct. Cl. 1976).................... 21, 34

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ....................27

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016)....................3

*DSS Tech. Mgt., Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) ....................18

*Ex parte Tytgat,*
225 USPQ 907 (Bd.Pat. App.Int. 1985 ....................9

*Genentech, Inc. v. Hospira, Inc.*,
946 F.3d 1333 (Fed. Cir. 2020) ....................27

*Google v. Hammond Development International, Inc.,*
No. 21-2218 (Fed. Cir. Dec. 8, 2022)....................21

*Graham v. John Deere Co.*,
383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ....................21

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79, 85 (2017) ....................10

*In re Deckler,*
*977 F.2d 1449 (Fed. Cir. 1992)*....................9

*In re Google LLC*,
56 F.4th 1363 (Fed. Cir. 2023) ....................18

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................26

*In re McKellin,*
529 F.2d 1324, 188 USPQ 428 (CCPA 1976) ....................9

*In re Nelson,*
47 C.C.P.A. 1031, 280 F.2d 172, 181 (1960)....................14

*Johnson v. Whitehead*,
647 F.3d 120 (4th Cir. 2011) ....................6

*LizardTech, Inc. v. Earth Resource Mapping, Inc.,*
424 F.3d 1336, 1345 (Fed.Cir.2005) .................... 15, 30

*Michigan v. E.P.A.*,
576 U.S. 743, 758, 135 S. Ct. 2699, 192 L. Ed. 2d 674 (2015) ....................18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ....................27

*Phillips v. AWH Corp*.,
415 F.3d 1303, (Fed. Cir. 2005) (en banc) .................... passim

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318, 1326 (Fed. Cir. 2015) .................... 18, 27

*SEC v. Chenery Corp.*,
318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ....................18

*SEC v. Chenery Corp.*,
332 U.S. 194, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947) ....................18

*Westwood Chemical, Inc. v. U.S.*,
525 F.2d 1367 (Ct. Cl. 1975).................... 10, 21, 33, 34

*Willow Wood Co. v. Alps S., LLC*
735 F.3d 1333 (Fed. Cir. 2014) ....................21

**Statutes**

35 U.S.C. § 103 ....................5

35 U.S.C. § 2(b) ....................3

35 U.S.C. § 301 ....................5

35 U.S.C. § 304 ....................5

35 U.S.C. § 311 (pre-AIA) ....................5

35 U.S.C. § 316 ....................5

**Rules**

37 C.F.R. § 42.401 ....................10

C.F.R § 42.73(d)(3)(i) .................... passim

All emphasis in **bold** and ***bold italics*** added unless otherwise noted.

## INTRODUCTION

After more than a decade of prosecution of the two *Inter Partes* Reexaminations (IPXs) under appeal, the Board came to the only rational conclusion it could make in consideration of the record evidence – all claims on appeal were nonobvious over the art of record, and all § 103 rejections must be reversed. Rather than confirm patentability of all appealed claims, the Board issued a new ground of rejection under an overly broad interpretation of 37 C.F.R § 42.73(d)(3)(i) that has no statutory support and belies the promulgation history and *dictum* from this Court regarding the rule. Rather than determining whether the elements of common law collateral estoppel and *res judicata* are present, the Board insists such is not required and applies its own interpretation of the rule. The Board's position that the elements of common law collateral estoppel need not be considered is likewise argued by Appellees and the Director. Indeed, if this Court holds that the elements of common law collateral estoppel must be evaluated, Appellees have waived any argument that the new ground of rejection can be sustained.

In its Brief, Appellees dance around the elephant in the room – the claim construction used to cancel the claims in the '353 IPR is not the claim construction used by the Board to establish whether the claims on appeal are patentably distinct over the cancelled claims. Thus, claims on appeal that are patentable over the '353

IPR art are sought to be cancelled … (in effect) over that same art using § 42.73(d)(3)(i) estoppel using a different, dramatically narrower claim construction that eviscerates any identity-of-issues considerations. This turns principles of common law collateral estoppel on its head.

# ARGUMENT

## I. APPLICATION OF C.F.R § 42.73(d)(3)(i)

### A. C.F.R § 42.73(d)(3)(i) Estoppel is Not Applicable to Any Claim on Appeal

Appellant SoftView reasserts it arguments in its opening brief (*Blue Br.*) that the estoppel provision of C.F.R. § 42.73(d)(3)(i) is not applicable to any claim on appeal, while adding further arguments herein to address arguments and issues raised in Appellees' and the Director's Briefs. The absence of a reply to a specific rejection, issue or comment does not signify agreement with or concession of that rejection, issue, or comment.

In traversing Appellant's argument that 35 U.S.C. § 2(b) precludes the PTO from issuing substantive rules as applied to patentability, the Director cites to *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016). *Cuozzu* concerned whether 35 U.S.C. § 316(a)(4) granted the PTO authority to use the broadest reasonable interpretation (BRI) in construing claims, which the Supreme Court held was proper. Under § 316(a)(4), "The Director shall prescribe regulations – establishing and governing inter partes review under this chapter ***and the relationship of such review to other proceedings under this title***."

In the (Respondent) PTO's *Cuozzu* Brief[1] the PTO acknowledged (Appx4561), "Congress has declined to authorize the PTO to issue rules interpreting the substantive patentability criteria established by the Patent Act." The PTO further argued (Appx4581-4588) "The broadest-reasonable-construction standard is not a substantive rule beyond the PTO's delegated regulatory authority." This section included (Appx4586-4587),

[1] https://www.justice.gov/sites/default/files/osg/briefs/2016/04/14/15-446bsunitedstates.pdf

> e. Even if the PTO were precluded from engaging in "substantive" rulemaking, the decision to adopt the broadest-reasonable-construction approach in agency proceedings would not be "substantive" under the Federal Circuit's case law. ***The broadest-reasonable construction rule does not prescribe what is patentable and what is not***; it prescribes a uniform interpretive method for the Board to use in applying the Patent Act's requirements to the claims before it.

There is nothing on the Congressional Record for H.R. 1249 - Leahy-Smith America Invents Act (AIA) concerning § 316(a)(4) other than publication of its text, including no proposed amendment in either chamber or argument by any member of congress on the floor of the house or senate. However, the Congressional Record is clear that the "***and the relationship of such review to other proceedings under this title***" applied to 35 U.S.C. § 315(d), which recites,

> **(d) Multiple Proceedings.—**
> Notwithstanding sections 135(a), 251, and 252, and chapter 30, ***during the pendency of an inter partes review***, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, ***including providing for stay, transfer, consolidation, or termination of any such matter or proceeding***.

This statutory provision, which does not include cancelling claims in other proceedings ***nor any action after an IPR is completed***, was argued in the PTO's *Cuozzo* Brief in support of Section 42.100(b) being statutory (Appx4589).

The PTO's *Cuozzo* Brief further argues (Appx4586),

> d. Petitioner contends (Br. 36) that Congress considered and rejected proposals to grant the PTO "substantive" rulemaking authority. That debate, however, concerned an altogether different question: ***whether to authorize the PTO to issue legislative rules governing the basic conditions for patentability***, such as subject-matter eligibility under 35 U.S.C. 101.

Under the Board's interpretation of § 42.73(d)(3)(i) the rule prescribes what is patentable and what is not, precluding consideration of basic conditions of patentability under 35 U.S.C. § 103. Additionally, application of § 42.73(d)(3)(i) in the manner done by the Board abrogates patentability criteria established by the Patent Act for at least (a) 35 U.S.C. §§ 301(a)(1) and 311 (pre-AIA); (b) 35 U.S.C. § 304; and (c) 35 U.S.C. § 316. *Blue Br.* pp.13-14.

At 30, the Director asserts,

> Section 42.73(d)(3) does not prescribe what is patentable and what is not. Instead, familiar principles of estoppel are applied to prevent patentees from recouping patent claims indistinct from claims that they have lost in AIA proceedings.

Under the Board's new ground, "familiar principles of estoppel" are not applied. The Board refused to consider the elements of common law collateral estoppel, acknowledging "it's not present." (Appx2747-2748). The Board knew it couldn't apply common law collateral estoppel (*aka* issue preclusion), so they had to argue estoppel under § 42.73(d)(3)(i) is broader than common law estoppel. As the Board stated during oral hearing, "But we do see the 42.73(d)(3) as that – that isn't based on issue preclusion case law." Appx2685

The Director's citation to *Johnson v. Whitehead* at 37 is unavailing. "No common law preclusion principle applies to an agency "when a statutory purpose

[in opposition to the preclusion rule] is evident." *Astoria*, 501 U.S. at 108, 111 S.Ct. 2166" *Johnson v. Whitehead*, 647 F.3d 120, 130-31 (4th Cir. 2011) (other citations omitted). The Board and Director have failed to identify a statutory purpose articulated by congress for patent owner estoppel under § 42.73(d)(3)(i). The provisions of the AIA indicate no such estoppel is authorized (*Blue Br.* p.15).

At 19, Appellees argues the *Arthrex* Court had "doubts about whether the Director had the authority under 35 U.S.C. § 316" to issue 37 C.F.R. § 42.73***(b)***, which relates to requests for adverse judgments, (not § 42.73(d)(3), as SoftView contends). But the record indicates otherwise:

> At the outset, we note that Arthrex has specifically disclaimed any argument that the regulations are not authorized by the statute.[2] Under these circumstances, we do not decide whether the PTO had authority to adopt this regulation. We reserve that issue for another day.
>
> 2 "Q: You're not contending that the PTO doesn't have the authority to adopt a regulation ***providing for estoppel on the cancellation of a patent or a claim***, right?
>
> A: That is correct, we are not contending that the Patent Office does not have authority." Oral Arg. at 1:11-1:25.

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1349 at fn. 2. (Fed. Cir. 2018).

§ 42.73***(b)*** does no refer to estoppel, while § 42.73***(d)*** is titled *Estoppel*. Moreover, the only provision § 42.73***(d)*** that could apply to *Arthrex* is § 42.73***(d)(3)(i)*** – thus it is clear the *Arthrex* Court was raising the issue of whether the Patent Office had authority for § 42.73***(d)(3)(i)***.

### B. § 42.73(d)(3) Estoppel Must Apply Traditional Principles of Collateral Estoppel/Issue Preclusion

The Board, Director, and Appellees assert that claims can be rejected under § 42.73(d)(3)(i) without applying the principles of collateral estoppel. *See, e.g.*, Director at 23. However, the promulgation history makes clear the PTO did not authorize application of § 42.73(d)(3)(i) in a manner that would exceed the scope of the common law doctrine of issue preclusion, as was done by the Board (Appx3030):

> *Comment 213*: A number of comments questioned whether there is statutory basis for the patent owner estoppel provisions set forth in proposed § 42.73(d)(3). Several comments specifically stated that proposed § 42.73(d)(3)(ii) ***is inconsistent with the AIA and other statutory provisions, and exceeds the scope of the common law doctrines of claim preclusion and issue preclusion***. Several comments suggested <u>***alternative language***</u> ***for the rule. For instance, two comments suggested that the proposed rule should be revised to be limited to claims that are not patentably distinct from the claims held to be unpatentable in the proceeding***. On the other hand, several other comments were in favor of proposed § 42.73(d)(3). According to those comments, it is reasonable for the Office ***to limit recapture of substantially similar claim limitations, and the estoppel provision is consistent with the interference estoppel***.
>
> *Response:* In view of the comments, the Office modified the proposed rule. As adopted in this final rule, § 42.73(d)(3) does not contain the provision that a patent applicant or owner may not obtain in a patent ''[a] claim that could have been filed in response to any properly raised ground of unpatentability for a finally refused or cancelled

> claim.'' Additionally, the Office modified the provision that was proposed in § 42.73(d)(3)(i) to ''[a] claim that is not patentably distinct from the finally refused or cancelled claim.''
>
> … Section 42.73(d)(3)(i), as adopted in this final rule, ***merely provides estoppel against claims that are patentably indistinct*** from those claims that were lost, and claim amendments that were presented and denied, during a trial. In other words, the patent owner may ***subsequently present in a continuing or reissue application claims that are patentably distinct from such claims***. ***As such, § 42.73(d)(3) set forth in this final rule is consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule. See, e.g., In re Deckler, 977 F.2d 1449, 1452 (Fed. Cir. 1992)***; ...

The PTO removed proposed § 42.73(d)(3)(ii) in its final rule since it was "not consistent with the AIA, other statutory provisions, and ***exceed[ed] the scope of the common law doctrines of claim preclusion and issue preclusion.***" The PTO asserted *§ 42.73(d)(3) set forth in this final rule is consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule*. Yet, under the Board and the Director's application of § 42.73(d)(3)(i), the rule is inconsistent with other statutory provisions and ***exceeds the scope of the common law doctrines of claim preclusion and issue preclusion***. The Board's application of § 42.73(d)(3)(i) leads to a different outcome than would common law collateral estoppel, and none of the Board, the Director, and Appellees have argued otherwise.

### 1. “Patentably Indistinct” Means “Substantially” or “Essentially the Same”

The Director’s argument concerning the scope of patently distinct under *In re Deckler* is inapposite to what the case states. The *Deckler* Court found that claims Deckler admitted were ***patentably indistinguishable*** for claims lost in an interference count were estopped under ***settled principles of res judicata and collateral estoppel***.

> It is therefore proper, and consistent with the policies of finality and repose embodied in the doctrines of res judicata and collateral estoppel, to use that judgment as a basis for rejection of ***claims to the same patentable invention***.” *Id* at 1452

The *Deckler* Court refers to the “same (patentable) invention” and “same patentable subject matter” four times, as well as “a single inventive concept” twice, including “We think it most unlikely that Congress could have intended for two patents to be issued to different parties for a single inventive concept.” *Id*. at 1451 (citing *Ex parte Tytgat,* 225 USPQ 907 (Bd.Pat. App.Int. 1985))

The only reference to “obvious variations” in *Deckler* is at 1453, where the Court addressed *In re McKellin,* 529 F.2d 1324, 188 USPQ 428 (CCPA 1976), stating,

> the "sole issue" before the court was "whether claims may be rejected under 35 U.S.C. § 103 on the ground that a losing party to an interference is not entitled to claims which are asserted to be obvious variations of the invention defined in the counts, when section 102(g) and ***interference estoppel are not applicable***." Id. at 1325.”

In *McKellin*, none of the appealed claims were within the scope of the interference counts (*Id.*), thus interference estoppel was not applicable. The

*McKellin* court found the interference count could not be used as prior art under §103. *Id.* at 1330-1331.

The promulgation history specifically refers to *Deckler,* under which patentably indistinct claims under the common law relating to (collateral) estoppel are directed to the "same patentable invention" and a "single inventive concept." For alleged "obvious variations," the proper analysis is a §103 analysis where the subject matter as a whole is evaluated against the prior art. *Westwood Chemical, Inc. v. U.S.*, 525 F.2d 1367, 1375 (Ct. Cl. 1975).

At 31, Appellees' assertion regarding *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017) (Petitioners did not show "why we should abandon our usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'") is without merit. Obviousness-type double-patenting is judge-made law not defined under any statute. If a CFR is considered a statute, the applicable CFR is 37 CFR 42, which includes a single definition for patentably indistinct:

E – Derivation:

**§ 42.401 Definitions**.

…

***Same or substantially the same means patentably indistinct***.

§ 42.73(d)(3) applies to derivation proceedings. Appx3030 Comment 214.

### C. All Claims on Appeal are Patentably Distinct Over All Claims Cancelled in the '353 IPR

#### 1. The Elephant in the Room: Board's Use of New Claim Construction for Estoppel Cannot Stand

In applying estoppel under § 42.73(d)(3)(i), the Board applied a new claim construction to the cancelled claims – a construction that was not and could not

have been used to cancel the claims in the ’353 IPR. Notably absent in the Appellees’ and Director’s Briefs is any discussion concerning the dramatic change in claim scope the Board uses to argue claims on appeal are not patentably distinct over the cancelled claims.

A side-by-side comparison of the claim construction used in the ’353 IPR FWD and by the Board is shown below. *Blue Br.* 51 – *See Blue Br.* 38-41 for further explanation.

| ’353 IPR FWD | Board ’634 Appeal Decision |
|---|---|
| *we construe the preserving limitation to mean, maintains the features of the web page's capabilities and appearances in a manner consistent <u>with the translated portion</u> of HTML code defining those capabilities and appearances.* | Essentially, cancelled claim 1 required HTML-based Web content that includes A=(layout), B=(functionality), C=(design), and X=(additional content), and only the ABC portion of the content was required to be translated and preserved when scaling. |

The IPR claim construction is not the claim construction the Board used under its new grounds, and neither Appellees nor the Director provide any justification for use of a different construction, as there is none. The Board’s justification includes (p.27),

> [T]he issue is whether the public should be able to rely on the Office's cancellation of claims that are ***not materially different*** from the

> current claims, thereby putting the public on notice that the subject matter of those claims is in the public domain. (Citing *Cf Vectra Fitness, Inc. v. TNWK Corp*., 162 F.3d 1379, 1384 (Fed. Cir. 1998).
>
> and
>
> Thus, under Patent Owner's theory, a person could be sued a second time on the same patent, even though ***identical claims*** have already been found invalid, because the patent expired and ***prevents the application of issue preclusion***.

Here, the Board refers to ***not materially different*** and ***identical claims*** – yet under the new ground the Board uses a double-patenting obviousness-type comparison. Notably, any alleged "identical claims" were always patentable under the correct claim construction, which is inapposite to the errant claim construction in the '353 IPR. The Board, Appellees, and Director now wish to invalidate claims that are patentable over the art of record in the IPXs – a determination the Board itself made in reversing the Examiner on all §103 rejections on the merits.

At 10 Appellees state,

> The Board held that the different claim-construction standards applied in the IPR and after expiration did not defeat estoppel because (1) the IPR construction was based on SoftView's proposed *Phillips* construction and did not expressly rely on the broadest-reasonable-interpretation ("BRI") standard, and (2) SoftView failed to explain to the Board "what the new construction should be or why the difference in standards would materially alter the question of patentability."

(1) and (2) have been refuted in *Blue Br*. 39, 44-50, and Req. Reh'g, Appx2842-2850, Appx2859-2861 and Appellees fail to address these arguments. It is irrefutable the claim construction of the "preserve(s) / preserved / preserving / preservation" limitation in the '353 IPR FWD was not based on Softview's proposed *Phillips* (*Phillips v. AWH Corp*., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)) construction, which was ordinary and plain meaning (Appx3055-3056, Appx3068-3069):

**14. "preserve(s) / preserved / preserving / preservation"[6]**

a. Plaintiff's Proposed Construction: this term has a plain and ordinary meaning and does not need to be construed.[7]

b. Defendants' Proposed Construction: those terms are indefinite and therefore cannot be construed.

[6]Pursuant to the Court's Order (D.I. 560), the parties submitted supplemental briefing with respect to their dispute on these terms. (*See* D.I. 612; D.I. 613; D.I. 623; D.I. 624)

[7]In a post-hearing letter to the Court (D.I. 612), Softview proposes an alternative construction: "keeps substantially the same or identical look and feel." Softview continues to prefer a construction of "plain and ordinary meaning." (*Id.*)

17

Appx3055

Case 1:10-cv-00389-LPS Document 1103 Filed 09/04/13 Page 20 of 27 PageID #: 20427

c. Court's Construction: this term has a plain and ordinary meaning and does not need to be construed.

At 41 Appellees assert "SoftView concedes that "[t]he '926 Decision to

Institute"—on which the construction in the '353 IPR FWD is based—"used Patent Owner's claim construction *proffered* in the litigation."" SoftView proffered identical claim constructions used in the '926 and '353 Decision to Institute (Appx4477-4478, Appx4517-4518) that did not include a proposed construction for the preserving limitation (or term). Also, each CLAIM CONSTRUCTION section includes, "We have reviewed the Patent Owner's proposed constructions and determined that they are consistent with ***the broadest reasonable construction***.

In contrast to Appellees' argument at 12, SoftView has never argued that the difference in claim construction alone defeats estoppel. What SoftView has argued is the appealed claims when correctly construed under *Phillips* (and BRI for some claims) are patentably distinct from all cancelled claims under the claim construction used in the '353 FWD. An argument Appellees didn't even attempt to traverse, nor could they.

### 2. Claim Construction for Appealed Claimed

"The descriptions in patents are not addressed to the public generally, to lawyers or to judges, but, as section 112 says, to those skilled in the art to which the invention pertains or with which it is most nearly connected." *Phillips* 415 F.3d at 313 citing *In re Nelson,* 47 C.C.P.A. 1031, 280 F.2d 172, 181 (1960). "[T]he patent specification is written for a person of skill in the art, and such a person

comes to the patent with the knowledge of what has come before …" *LizardTech, Inc. v. Earth Resource Mapping, Inc.,* 424 F.3d 1336, 1345 (Fed.Cir.2005).

The '353 patent was written, and the claims drafted in view of how a PHOSITA would understand the invention(s). A PHOSITA would have had significant experience working with HTML and CSS at the time of the invention – under Wolf's PHOSITA, at least two years' industry or educational experience with creating and testing HTML-based and CSS content (Appx2204).

**a) Independent Claims 87, 185, 285, and 318**

At 45, Appellees argue the IPR Board gave "preserving" its plain meaning. Nothing could be further from the truth: [W]*e construe the preserving limitation to mean, maintains the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances.*

Claim 87 does not include a translating or processing limitation. Under the IPR Board's construction, preserving the original page layout, functionality, and design [of the HTML-based Web content defining the same] in claim 87 would read in a limitation and would not require preserving the original page layout, functionality, and design, which is inapposite to plain meaning, inconsistent with the specification and prosecution history, and inapposite to how a PHOSITA

would construe the claim under both BRI and *Phillips*. *See Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 796–98 (Fed. Cir. 2018).

At 46, Appellees argue, "SoftView contends that the prior art in the IPR cannot read on the appealed claims because the renderings of Web pages in the prior art do not look identical to the Mozilla renderings." Br. 55-61. SoftView has never made such an assertion in either of the '634 and '132 IPX proceedings, and this clearly isn't argued in *Blue Br*. 55-61. The comparisons show the dramatic difference between renderings that ***are compliant with applicable HTML and CSS standards*** (meaning of "as defined by the HTML-based Web content" as would be construed by a PHOSITA) and how the Pad++ browser rendered that same HTML-based Web content. SoftView asserted that the "preserving" was relative to how ***an HTML- and CSS-compliant rendering engine*** interpreted the HTML-based Web content. The section in the prosecution history referred to by Appellees at 46 (Appx2462-2478) included the penultimate criteria for meeting the preserving limitation:

1. …[U]nder aspects of embodiments of the invention … ***the overall layout, functionality and appearance (design) of the scaled Web pages defined by the HTML code for the Web page are preserved***.

### b) Independent Claims 1, 36, 70, 149, 209, and 216

In the Appeal Decision, the Board construed claim 1 correctly, as would be construed by a PHOSITA at the time of the invention in view of the patent

disclosure under BRI and *Phillips*. The Board doesn't indicate whether it applied BRI or the *Phillips* claim construction standard, and from all intents this appears to be the Boards' BRI construction since there is no mention of *Phillips* in the Appeal Decision.

Claim 1, as construed in the Appeal Decision, is clearly patentably distinct over cancelled claim 1 as construed in the '353 IPR FWD. None of the Board, Appellees, nor Director have or can argue otherwise.

### D. Board's Claim Rejections under New Ground

#### 1. Claims 87, 185, 285, and 318

In rejecting claim 87 as not being patentably distinct from claims 1 and 36 the Board asserted,

> Claim 87 is a combination of the cancelled sub-combination claims 1 and 36. Our review does not find any additional synergy from the combination of cancelled claims 1 and 36. Appx0113-0114.

However, this is not the position advanced by Appellees. Rather, Appellees falsely assert (pp.42-44), "[B]y SoftView's own admission, a browser that cannot implement certain HTML tags can ignore those tags, and still meet the "preserving" limitation," and further argue claims 87, 185, 285, and 318 are not patentably distinct over claims 1 and 36 using the '353 FWD construction. In addition to this assertion being refuted (*supra, also* Appx2147-2158 discussion of

no claim scope disavowal), it is not a position asserted by the Board in its Decisions.

As this Court as stated,

> Under the *Chenery* doctrine, we decline Apple's invitation to consider evidence that the Board did not cite in its decision. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*, 860 F.3d 1367, 1376 (Fed. Cir. 2017) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947)) ('We must base our review on the analysis presented by the Board.'). *DSS Tech. Mgt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1376 n.4 (Fed. Cir. 2018).

Also see *In re Google LLC*, 56 F.4th 1363, 1367-1368 (Fed. Cir. 2023),

> "Meritorious or not, the [appellee]'s arguments cannot sustain the Board's decision below because they do not reflect the reasoning or findings the Board actually invoked. *Michigan v. E.P.A.*, 576 U.S. 743, 758, 135 S. Ct. 2699, 192 L. Ed. 2d 674 (2015) ('It is a foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action.' (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943))); *see also Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) ('Our review of a patentability determination is confined to the grounds upon which the Board actually relied.' …)

Appellees' assertions at 44-45 are wrong:

> [T]he claims on appeal cover: (1) starting from ABCX and preserving ABCX or (2) starting from ABC and preserving ABC. Thus, both sets

of claims lead to zooming that preserves ABC, ***which the IPR Board found was taught by the prior art***. "[W]hat is the 'entire' preserved content in the [appealed] claims encompasses the preserved 'portion' in the canceled claim given the obvious variation of simply removing completely from the canceled claim processing the original web page content portion that is not preserved." Appx26.

The IPR Board did not find preserving ABC was taught by the prior art. Appx26 refers to Appx0086 where the Board argues (as applied to amended claim 5),

> We conclude the Examiner was mistaken in determining the amended claims to be patentably distinct based on their "preserving 'the entire HTML-based Web content."

No claim on appeal requires preserving any HTML-based Web content that is not used to define the original page layout, functionality, and design ('X' under the new claim construction), as would be understood by a PHOSITA (Appx2843-2844).



Taken in proper context, the Examiner was referring to "preserving 'the entire HTML-based Web content [defining the original page layout, functionality, and design]". At no point during prosecution of the IPXs has the Examiner ever mentioned anything relating to what the board deems ‘X’ (HTML content that does not define any of the page layout, functionality, or design).

**2. Rejection of Dependent Claims**

**a) Additional Synergy Analysis Not Supported By Any Court Precedent**

Appellees double-down on the Board’s “additional synergy” arguments and further falsely assert (p.34), “[T]he Board evaluated whether any differences recited in the dependent claim limitations—***all of which are individually in the prior art***, and some of which appear in other canceled claims—added anything to the claims to make them more than the obvious sum of their parts, making clear that it was considering each claim as a whole.” Moreover, Appellees argue the Board’s ***obviousness*** determinations are proper and “The appealed claims are at best ***obvious variations*** of claims already found to be unpatentable” (p.36).

The Board did not reject any claim on appeal as being obvious. The Board and Appellees assert that dependent claims are ***obvious variations*** over cancelled claims in view of the Board’s new construction of those cancelled claims, and conclusory assertions by the Board without consideration of the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d

545 (1966) as a prerequisite to such an invalidity determination. This is clearly improper under *Westwood Chemical*, *Bourns, Inc. v. U.S.*, 537 F.2d 486, 493 (Ct. Cl. 1976), and *Ohio Willow Wood Co. v. Alps S., LLC* 735 F.3d 1333 (Fed. Cir. 2014).

As acknowledged by a representative of Google, one of the parties of interest in this proceeding, "If you have to do a Graham factor analysis then … you cannot apply collateral estoppel because you no longer have identity-of-issues." Oral argument for *Google v. Hammond Development International, Inc.,* No. 21-2218 (Fed. Cir. Dec. 8, 2022)[2] in response to question by Judge Chen. *Blue Br.* 21-22.

Significantly, the Board's conclusory obviousness assertions (1) are made by APJs who were not PHOSITAs in the relevant art at the time of the invention, (2) are not supported by fact-based evidence as applied to what a PHOSITA would have known, and (3) did not employ a *Graham* factor analysis.

**b) Real-time Rendering/Zooming**

Appellees' discussion of real-time rendering/zooming (pp.47-51) argues real-time is inherent in vector-based zooming and "vectorized" objects, "a display list of vectors," and a "vector-based rendering engine/library" are the "nuts and bolts of vector-based rendering" (p.49). These assertions are false. In addition to

[2] https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2218_10042022.mp3

not mentioning that bounding boxes linked to ***the page's DOM (Document Object Model) objects*** were "vectorized" (a clearly novel approach), the assertion doesn't cite any factual evidence that all techniques disclosed by SoftView were known in the prior art.

If real-time rendering/zooming was inherent in any system employing vector-based zooming, then empirical evidence simulating Pad++ zooming of Web page on a PDA[3] and expert analysis of evidence documented in the Bederson references would have confirmed this, rather than demonstrate it could not. Discussions of real-time zooming and empirical test evidence of simulated Pad++ performance on a PDA with the fastest processor available in June 2001 are provided in SoftView's Appeal Brief (Appx2173-2175, Appx2179-2182), which include the following test evidence demonstrating a dynamic zoom in and a window zoom.

---

[3] Per Bederson, Pad++ could not run on a PDA. Appx2172




First Zoom In Step ΔT = 40 Seconds




Second Zoom In Step ΔT = 25 Seconds




Third Zoom In Step ΔT = 19 Seconds




Fourth Zoom In Step ΔT = 11 Seconds

Dynamic Zoom (Appx2180)




Window Zoom In Starting State




Zoom Window Box First Appears




Zoom Window Complete ΔT = 52 Seconds

Window Zoom (Appx2181)

Appellees' "context" argument (pp.49-50) in the prosecution history comments is unavailing. The specific context identified was human-computer interaction and included the following definition (Appx2461):

DEFINITION- Also see real-time clock and real-time operating system. ¶

*Real time* is a level of computer responsiveness that a user senses as sufficiently immediate or that enables the computer to keep up with some external process (for example, to present visualizations of the weather as it constantly changes). *Real-time* is an adjective pertaining to computers or processes that operate in real time. Real time describes a human rather than a machine sense of time. ¶

In the days when mainframe batch computers were predominant, an expression for a mainframe that interacted immediately with users working from connected terminals was *online in real time*.

Pad++ clearly could not meet this definition (if it could have ran on a PDA).

Appellees' arguments at 51 are (1) not assertions made by the Board in its Decisions and (2) meritless. Appellees' evidence of Pad++ teaching real-time interaction is for Pad++ running on a 200MHz Pentium Pro PC that has a floating-point unit (FPU). No PDA in existence in June 2001 had an FPU, requiring floating-point calculations to be done in software – performance that was simulated by disabling the FPU on a 200MHz Pentium Pro PC to produce the empirical test evidence above.

**c) Preserving Billions of Web Pages**

In addressing claims under which users are enabled to browse billions of Web pages while preserving the original page layout, functionality, and design, Appellees assert arguments and evidence the Board did not cite in either the Appeal Decision or Rehearing Decision, and cannot be considered here. At 35, Appellees assert the Board supported rejection of claims with "billions of Web pages" based on canceled claim 252. However, the Board's Decisions do not

discuss the billions of Web pages limitations in claim 252, nor assert this was a basis for rejecting appealed claims containing this limitation.

The ’353 IPR FWD likewise did not address the billions of Web pages limitation. Rather, the Board stated, “Patent Owner notes that claims 149 and 252 are method and machine readable medium claims that correspond to apparatus claim 36” and “Patent Owner argues that claims 1, 33, 36, 43, 58, 59, 66, 118, 138, 139, 149, 183, 252, and 283 would not have been obvious over the combination of Zaurus and Pad++ based on the preserving limitation.” Appx0358-0359.

As argued at *Blue Br.* 37, in the ’353 IPR the burden was shifted to SoftView to prove patentability. This Court has held this burden shift is improper: "the petitioner continues to bear the burden of proving unpatentability after institution, and ***must do so by a preponderance of the evidence at trial***." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1377 (Fed. Cir. 2016).

Although the Board and petitioners Kyocera and Motorola presented no evidence at trial regarding the billions of Web pages limitation in claim 252, Appellees argue that independent claim 185 and dependent appealed claims with billions of Web pages limitations should be canceled based on cancelation of claim 252. At 51, Appellees contend,

> SoftView waived any separate argument as to the “billions of Web pages” limitation by failing to contest Petitioner’s argument in the

IPR. *Genentech*, 946 F.3d at 1340. This limitation therefore cannot render the claims patentably distinct from canceled claim 252.

First, this is an argument not raised by the Board, and as held by this Court,

> We have no warrant to "accept appellate counsel's *post hoc* rationalizations for agency action," (*Burlington Truck Lines, Inc. v. United States,*371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)), or to supply a reasoned justification for an agency decision that the agency itself has not given (*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). *Power Integrations* 797 F.3d at 1326).

Second, Appellees misconstrue *Genentech*, in which a dependent claim (5) was not separately argued, "Thus, dependent claim 5 stands or falls together with independent claim 1." *Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1340 (Fed. Cir. 2020). *Genentech* does not stand for the proposition that patentability of a dependent claim cannot be argued in a separate proceeding under which a different (and correct) claim construction is applied to the independent claim, rendering the scopes of the dependent claims entirely different.

Under the FWD, preserving in a dependent claim would have the same meaning as preserving in the independent claim and thus the capability to render billions of pages while *maintain[ing] the features of the web page's capabilities and appearances in a manner consistent <u>with the translated portion</u> of HTML code defining those capabilities and appearances* would have fallen within the claim

scope. Under the correct interpretation of the claims on appeal, the entirety of the original page layout, functionality and design as defined by the HTML-based Web content for billions of pages must (be enabled to) be preserved. As argued in *Blue Br*. 59-60, the differences in claim scope cannot be overstated:



www.yahoo.com (April 18, 1997)



www.yahoo.com (April 4, 2001)



www.msn.com (April 3, 2001)



www. nytimes.com (Nov. 9, 2000)



www.aol.com (April 1, 2001)



www.about.com (April 1, 2001)

Consistent with the Board, Appellees chose to use the prosecution history when they find it advantageous, yet completely dismiss the prosecution history when adverse to their position. Appellees do not address the detailed discussion of the scope of preserving … for billions of pages in the prosecution history (Appx2478-2480). Rather, without citing any supporting evidence, at 52 Appellees assert the claims do not require support for different versions of HTML and CSS. This is refuted by Wolf: "In order to meet the preserving "billions of pages" limitation, the browser rendering engine would have needed to support each of HTML 3.2, HTML 4.0/4.01 and CSS, including CSS 1 and part of CSS 2." Appx2219 ¶62.

As stated in *Phillips*, "Importantly," skilled artisans are "deemed to read the claim term . . . in the context of the entire patent." *Id.* at 1313. PHOSITAs also are knowledgeable of the art at the time of the invention. *LizardTech,* 424 F.3d at 1345.

The following graphic (Appx2667) shows the number of Websites and when various HTML and CSS standards were introduced. The vast majority of Websites by 2001 were introduced following publication of the HTML 4.0 and CSS 2 standards.




This is knowledge a PHOSITA would have, and a PHOSITA would recognize to meet the preserving billions of pages limitation the rendering engine would need to support different version of HTML, including HTML 4/4.01, and different versions of CSS (CSS1 and parts of CSS2).

Appellees intended use argument is also unavailing. Rather than traverse Appellant's arguments and evidence in *Blue Br.* 75-78, Appellees merely parrot the same errant assertions made by the Board.

**d) Cascaded Style Sheets**

Appellees cite no case authority that SoftView waived it right to argue for patentability of claim 66 in an IPX since it didn't argue for the patentability of claim 66 separately in the IPR. Claims such as 106, 182, 204, 282, 304, and 322

require all the web page's layout and design defined by the CSS code to be preserved under both BRI and *Phillips*, and all other CSS claims require the same under *Phillips*. This is inapposite to the Board's construction of claim 36. Moreover, the IPR Board never construed claim 66 in view of its preserving construction of claim 36, which was not the construction in the IPR petition. Under the IPR Board's construction of claim 36, HTML-based content comprising CSS content would not be required to be processed, and thus not preserved under claim 66. *See Blue Br*. 69-70:




Appx2853 (Enlarged)

The non-litigated claims are not of identical scope to claim 66, thus under *Westwood* the patentability of the non-litigated claims must be determined under §103 using a *Graham* factor analysis – an analysis that bars cancellation of claims under collateral estoppel.

#### e) Tap to Zoom on Column and Paragraph

To invalidate the tap to zoom on column claims the Board again uses its domino approach, stating “there is no reasonable dispute the user input of claim 48 can be "tapping,"” (Appx0032). However, the Board failed to construe the claims in their entirety (as a whole). *Westwood Chemical*, 525 F.2d at 1375.

At 54, Appellees argue that tapping to zoom on a column is covered by canceled claim 317. However, the tapping to zoom on a column in claim 317 had different scope, including no preserving limitation, and no fit across the display limitation. Moreover, a determination of whether claims are patentably distinct cannot be based on combining individual claim limitations of disparate claims. *Id.*; *Bourns,* 537 F.2d at 493; *Ohio Willow Wood*, 735 F.3d at 1343-44 “[t]he determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim.”

With respect to claim 317, the ’353 FWD states (Appx0372), as discussed above, Pad++ discloses a zooming interface applicable to images, ***as well as other objects, such as columns***. Yet, there is nothing “above” (Appx0369-0372) that supports this false assertion.

The IPR Board cancelled claim 48 under combinations involving Zaurus using multiple user inputs (magnify key + horizontal and vertical scrolling), none of which involved tapping on page content. Appx0370, *Blue Br*. 75-76.




ZAURUS PLAZA (Zaurus home page) screen

Appx1926

The cancellation of claims 48, 50, 51 and 317 was also based on, "The '353 Patent also discloses that it is conventional to generate the page layout in conjunction with bounding boxes," (Appx0371) implying this was something Pad++ and Zaurus did. A PHOSITA would have recognized they did not. The '353 patent states,

> As will be recognized by those skilled in the art, the functions performed in blocks 150, 152, and 154 are commonly performed by ***conventional browsers during a pre-rendering process***. In some browsers, these functions are performed by ***the Mozilla rendering engine*** …

Pad++ rendered HTML content inline using a single-pass parser (Howard, Appx2328-2332). The conventional browsers referred to in the '353 patent were versions of Microsoft Internet Explorer (IE) (5, 5.5) and Netscape (6.x) at the time

of the priority application that implemented CSS, which includes the CSS box model. As explained by experts Wolf (Appx2207) and Howard (Appx2268), a PHOSITA would recognize the bounding boxes referred to in the ’353 patent are CSS (bounding) boxes. Neither the Board nor Appellees have refuted this.

Zooming on a column or paragraph (to fit the content across the display) requires a bounding box for the column or paragraph. Wolf, Appx2221-2223, Appx2248-2252.



It is irrefutable Pad++ could not interpret any HTML content used to define columns and Pad++ did not create a bounding box for a paragraph (Howard Appx2325-2332). Zaurus did not support CSS, did not support zooming by tapping on page content, and there is no evidence that Zaurus generated bounding boxes for columns or paragraphs.

The Board's and Appellees' assertion (p.56) that when assessing the obviousness of tap-to-zoom, there was "no meaningful difference" between a column and a paragraph (which are separate HTML structures) is not supported by any record evidence, but rather is a conclusory assertion (1) made up by the Board, and (2) refuted by both experts Wolf and Howard using fact-based evidence.

Appellees' assertion (p.58), "The Board grounded it obviousness determination in a range of disclosures from Pad++, and SoftView never asserts (nor could it show) that a reasonable mind would be compelled to reject that evidence" is wrong. None of the Board's rejections are obviousness rejections, as the Board did not apply a §103 *Graham* factor analysis to any claim. Moreover, the Board reversed the Examiner's §103 rejections of the same claims over the same Pad++ references.

#### f) XML Code

Appellees' assertion that the XML claims merely require XML ignores the requirement that any page layout, functionality, or design aspects for the Web page

defined by the XML must be preserved. Also, the Board did not reject any of the XML claims under §103 as obvious.

### E. No Remand is Required

Appellees' assertion (p.61) that remand is required to return prosecution to an examiner to better articulate reasons for rejections is not supported by any rule, case law, nor recognized legal principle, nor is any cited. Also, claims 106, 182, 204, 282, 304, and 322 cannot be found unpatentable if their independent claim (or subject matter incorporated from an independent claim) is found patentable.

### F. Violation of the Administrative Procedure Act (APA)

At 61-62, Appellees argue (1) that because the records between the '994 EPX and the IPXs on appeal are different, and (2) an IPX includes arguments and evidence from an adverse, interested party there cannot be a violation of the APA. The new grounds in the Appeal Decision are not based on any differences in the record evidence, nor any argument or evidence submitted by 3PRs. Appellees fail to address the Board's finding the same claims determined by the Examiner to be patentably distinct (over the cancelled claims) in the '994 EPX (Appx4507-4512) to not be patentably distinct based on a new claim construction not asserted by any party is not an abuse of discretion and/or not arbitrary and capricious.

### G. Equitable Considerations

Under the Board's and Appellees' position, the PTAB would operate as an extrajudicial body for which common law principles of collateral estoppel could

not be considered, no matter how errant or unfair a PTAB decision and/or proceeding was. At 27 Appellees assert, "This Court does not revive patent claims invalidated under BRI upon patent expiration to test their validity under *Phillips*; as the Board explained, such a rule would be unworkable and would yield absurd results."

What would be unworkable and yield absurd results is what the Board and Appellees urge: Claims on appeal that were always patentable over the art of record (in the '353 IPR and the IXPs) to be cancelled under estoppel without the requirements or safeguards under the principles of common law estoppel and without a §103 *Graham* factor analysis.




Claims 87, 185, 285, and 318 have always been patentable over the IPR art under both BRI and *Phillips*.




Under the Board's new construction and *Phillips*, all claims are patentable over the IPR art.

Dated: May 27, 2023

Respectfully submitted,

By: /s/ R. Alan Burnett

LAW OFFICE OF R. ALAN BURNETT, PS

*ATTORNEYS FOR APPELLANT*
*SOFTVIEW LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1005 and 2023-1007

**Short Case Caption:** SoftView LLC v. Apple Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 7,000 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 05/27/2023

Signature: /s/ R. Alan Burnett

Name: R. Alan Burnett