# United States Court of Appeals for the Federal Circuit

---

**SOFTVIEW LLC,**
*Appellant*

**v.**

**APPLE INC., MOTOROLA MOBILITY LLC,**
*Appellees*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2023-1005, 2023-1007

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. 95/000,634, 95/002,132.

---

Decided: July 26, 2024

---

ALAN BURNETT, Law Office of R. Alan Burnett, Bellevue, WA, argued for appellant.

SONAL NARESH MEHTA, Wilmer Cutler Pickering Hale and Dorr LLP, Palo Alto, CA, argued for all appellees. Motorola Mobility LLC also represented by MADELEINE C.

LAUPHEIMER, Boston, MA; JOHN C. ALEMANNI, Kilpatrick Townsend & Stockton LLP, Raleigh, NC; DAVID A. REED, Atlanta, GA.

EDMUND HIRSCHFELD, Orrick, Herrington & Sutcliffe LLP, New York, NY, for appellee Apple Inc. Also represented by MELANIE L. BOSTWICK, Washington, DC; MARK S. DAVIES, White & Case LLP, Washington, DC; JAMES P. MURPHY, Polsinelli PC, Houston, TX.

FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by PETER J. AYERS, MICHAEL S. FORMAN.

---

Before LOURIE, BRYSON, and REYNA, *Circuit Judges*.

BRYSON, *Circuit Judge*.

Appellant SoftView LLC appeals from a decision of the Patent Trial and Appeal Board in two *inter partes* reexamination proceedings. Based on a prior decision in an *inter partes* review ("IPR") proceeding, the Board held all claims of SoftView's U.S. Patent No. 7,461,353 ("the '353 patent") invalid under the estoppel provision set forth in 37 C.F.R. § 42.73(d)(3)(i).

SoftView challenges the Board's application of section 42.73(d)(3)(i) on various grounds. First, SoftView contends that the PTO improperly interpreted the regulation in a manner that gave it broader scope than the common law rule of collateral estoppel. Second, SoftView argues that the Patent and Trademark Office ("PTO") lacks statutory authority to promulgate a regulation governing the estoppel effect of IPR decisions in subsequent proceedings before the PTO. Third, SoftView maintains that the regulation by its terms does not apply to claims that have already issued.

We uphold the validity of the regulation and the estoppel standard adopted in the regulation. With respect to the scope of the regulation, however, we agree with SoftView that the regulation applies to new claims or amended claims, but not to previously issued claims.

I

1. The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, 125 Stat. 284 (2011), established the IPR process and gave the PTO rulemaking authority to implement it. Specifically, Congress instructed the Director of the PTO to prescribe regulations "governing inter partes review . . . and the relationship of such review to other proceedings under this title." 35 U.S.C. § 316(a)(4).

Pursuant to its authority under section 316(a)(4), the PTO promulgated rules governing the procedures to be followed in IPR proceedings. Among those rules was the rule codified at 37 C.F.R. § 42.73(d)(3), which addressed the operation of estoppel principles in patent office proceedings.

That rule prohibits a patent owner from "taking action inconsistent with the adverse judgment" in various proceedings, including IPR proceedings. As the PTO explained when the regulation was issued, section 42.73(d)(3) applies to judgments in "derivation proceedings, *inter partes* review, post-grant review, and covered business method review." *Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions* ("*Rules of Practice II*"), 77 Fed. Reg. 48612, 48649 (Aug. 14, 2012). In particular, the regulation prohibits a patent owner from "obtaining in any patent: (i) A claim that is not patentably distinct from a finally refused or canceled claim."

2. The '353 patent is directed to displaying internet content on mobile devices. Various phone manufacturers have challenged the validity of the '353 patent in proceedings before the PTO. In 2011, Apple filed a request for *inter*

*partes* reexamination of the ’353 patent. Proceeding No. 95/000,634. Over the next two years, Apple filed a separate request for *ex parte* reexamination of the ’353 patent, proceeding No. 90/009,994, and Motorola also filed a request for *inter partes* reexamination of the ’353 patent, proceeding No. 95/002,132. On October 12, 2012, Kyocera filed a petition for *inter partes* review of 18 of the 319 claims of the ’353 patent, proceeding No. IPR2013-00007. The Board stayed all of the reexamination proceedings pending the outcome of the IPR proceeding.

On March 27, 2014, the Board issued a final written decision in the IPR proceeding, finding each of the 18 challenged claims of the ’353 patent unpatentable. This court summarily affirmed. *SoftView LLC v. Kyocera Corp.*, 592 F. App’x 947 (Fed. Cir. 2015). The IPR certificate issued on January 12, 2016, canceling the challenged claims.

3. The stay of the *ex parte* and *inter partes* reexamination proceedings challenging the remaining claims of the ’353 patent was lifted on November 27, 2015. In *ex parte* reexamination No. 90/009,994, SoftView amended various claims of the patent, which were then deemed patentable over the prior art. There are 107 such amended claims.[1]

To the extent they differ more than trivially from the canceled claims, the amended claims merely combine limitations from multiple canceled claims. For example, original claims 1, 118, and 138 (which depends from claim 118)

---

[1] The amended claims are claims 5, 23–27, 60–61, 122, 137, 140–41, 147, 156, 174–77, 238–42, 248, 259, and 274–77, as well as the claims that depend from those directly amended, which are claims 9, 12–14, 16–17, 19–21, 71–83, 85, 86, 88–111, 126, 129, 130, 132, 134, 135, 162–64, 166–67, 215, 226–36, 245–47, 251, 265, 266, 268, and 270–71. This list includes some claims that are not on appeal.

were all found invalid in the IPR. Amended claim 5 combines the device of claim 1 together with the method of claim 118/138, with only immaterial differences in phrasing. *Compare* '353 patent, Ex Parte Reexamination Certificate at col. 1, line 31, to col. 2, line 10 (amended claim 5) *with* '353 patent at col. 22, ll.15–43 (canceled claim 1) and *id.* at col. 34, ll. 6–19 (canceled claim 138).

In the *inter partes* reexaminations, the examiner found the overwhelming majority of claims unpatentable over the prior art under 35 U.S.C. § 103. On appeal, the Board reversed the examiner's obviousness rejections on the ground that there was "insufficient articulated reasoning to support the Examiner's final conclusion that the claims would have been obvious to one of ordinary skill in the art at the time of Appellant's invention." J.A. 69. The Board, however, entered a new ground of rejection as to all pending claims based on 37 C.F.R. § 42.73(d)(3)(i). The Board applied that regulation both to the "amended claims" and to the claims that had already issued.

Going claim by claim, the Board found that each claim was either essentially the same as a canceled claim or merely a combination of limitations that had previously been invalidated on obviousness grounds in the IPR. Where the Board found the latter, it reasoned that the limitations in combination "merely perform as they did in each sub-combination." *See, e.g.,* J.A. 90. For that reason, the Board held that the claims were not "patentably distinct" from those that had been invalidated in the IPR proceeding and were therefore invalid under section 42.73(d)(3)(i) of the PTO's regulations.

## II

SoftView first challenges the Board's interpretation of the term "patentably distinct" that is used in section 42.73(d)(3)(i). SoftView contends that the regulation was intended to codify the common law doctrine of collateral estoppel and that the Board improperly interpreted the

regulation as giving broader preclusive effect to the decision in the IPR proceeding involving the ’353 patent claims than would have been the case if the Board had applied common law collateral estoppel principles.

The Board gave the term “patentably distinct” in section 42.73(d)(3)(i) the same meaning as that term is given in obviousness-type double patenting cases and in interference proceedings. *See, e.g., Takeda Pharm. Co. v. Doll*, 561 F.3d 1372, 1375 (Fed. Cir. 2009) (addressing whether claims are “patentably distinct” for purposes of double patenting rejection); *In re Deckler*, 977 F.2d 1449, 1452 (Fed. Cir. 1992) (precluding an applicant from obtaining “claims for inventions that are patentably indistinct from those in an interference that the applicant had lost”). Applying the same definition of the term “patentably distinct,” the Board interpreted section 42.73(d)(3)(i) to prohibit a patent owner from obtaining a claim that would be anticipated by, or obvious in light of, a previously canceled claim. *See* J.A. 17, 77 (citing *Eli Lilly & Co. v. Barr Lab’ys, Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001)).

Because the term “patentably distinct” has a specialized meaning in patent law, it can be presumed that the PTO intended to adopt that meaning when it promulgated the regulation. Identical words used in a given field of law typically carry the same meaning. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). Thus, absent strong evidence to the contrary, the PTO’s use of the term “patentably distinct” in section 42.73(d)(3)(i) should be read to invoke the term’s established meaning in the double patenting and interference contexts. That is particularly so because the term “patentably distinct” serves a similar purpose in all three settings: to prohibit a patentee from exploiting patent claims that are not materially distinguishable from claims that have either expired or been invalidated in prior proceedings.

In its first argument to the contrary, SoftView contends that the term "not patentably distinct" in section 42.73(d)(3)(i) should be interpreted to mean "substantially the same." SoftView argues that the requirement that a claim be "substantially the same" as the previously canceled claim was meant to adopt the principles of common law collateral estoppel.

In support of that argument, SoftView points out that the initially proposed version of section 42.73(d)(3)(i) provided that estoppel based on a prior adverse ruling in an IPR proceeding would apply to "[a] claim to substantially the same invention as the finally refused or cancelled claim." *Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions* ("*Rules of Practice I*"), 77 Fed. Reg. 6879, 6913 (Feb. 9, 2012). In the final version of the regulation, the PTO revised that language to read "[a] claim that is not 'patentably distinct' from a finally refused or canceled claim." Although the PTO did not explain why it made the change from the initially proposed version of the regulation, it appears likely that the change was made for clarification, as the term "not patentably distinct" has a precise meaning in patent law, whereas "substantially the same" does not.

There is also support outside the context of section 42.73(d)(3) for the argument that "not patentably distinct" means "substantially the same." *See SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018) (holding, in the context of claim preclusion, that "claims which are patentably indistinct are essentially the same"). In fact, elsewhere in the PTO's regulations, the term "substantially the same" is defined to mean "patentably indistinct." 37 C.F.R. § 42.401.

While SoftView is correct that the terms "not patentably distinct" and "substantially the same" are equivalent, that does not advance SoftView's argument that the Board

misapplied section 42.73(d)(3)(i). The Board found that the regulation barred SoftView from obtaining claims that were not patentably distinct from those canceled in the IPR proceeding; the Board plainly would have reached the same conclusion if it had used the "substantially the same" test for which SoftView has advocated, as that test is defined to invoke the "not patentably distinct" standard.

SoftView's second argument is that section 42.73(d)(3)(i) should be construed as adopting common law principles of collateral estoppel. SoftView bases that argument principally on a response by the PTO to comments on the proposed version of section 42.73(d)(3) during the promulgation process. In response to a complaint that the proposed rule was at odds with various legal doctrines, the PTO stated that the regulation was "consistent with the AIA, other statutory provisions, the common law related to estoppel, and the common law related to the recapture rule." *Rules of Practice II*, 77 Fed. Reg. at 48649.

SoftView's position is unpersuasive. The Board's analysis, which involved comparing the claims before it with the previously canceled claims, paralleled the analysis under common law collateral estoppel, which would have involved comparing the claims before the Board with the prior art. In holding that the claims before it were not materially different from the canceled claims in any way that would affect patentability, the Board's approach merely considered whether the resolution of an issue in a previous case bars the relitigation of that issue in a subsequent case. That is the same question addressed under the common law rule. *See Regents of the University of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1345–46 n.5 (Fed. Cir. 2019) ("To the extent the estoppel provisions in 37 C.F.R. § 42.73(d)(3) prevent a patent owner from obtaining a patent on claims that are patentably indistinct from cancelled claims in an IPR proceeding, that result is no different than what is mandated under traditional principles of res judicata and collateral estoppel.").

SoftView's core complaint is that the Board applied estoppel based on the IPR decision canceling claims from the '353 patent rather than comparing the claims before it to the prior art. As to that issue, however, the plain text of the regulation unambiguously supports the Board's action. Section 42.73(d)(3)(i) goes beyond the common law rule by calling for a comparison between the claims an applicant is "obtaining" and the "finally refused or canceled claim." Whether the Board's action was lawful thus depends on whether the PTO had statutory authority to issue the regulation, an issue that we address below.

## III

Because section 42.73(d)(3) renders unpatentable a category of claims that would not necessarily be unpatentable on obviousness grounds over the prior art, SoftView argues that the PTO lacked authority to promulgate it. Under the legal framework in place absent the regulation, claims are judged for obviousness over the prior art—not over previously canceled claims, as allowed by the regulation. SoftView contends that the PTO has statutory authority to issue regulations on procedural matters, but not on substantive issues of patent law, such as the estoppel effect of PTO decisions. The appellees and the intervenor, however, point to 35 U.S.C. § 316(a)(4), which authorizes the Director to prescribe regulations "establishing and governing *inter partes* review under this chapter and the relationship of such review to other proceedings under this title." We reject SoftView's argument and hold that section 42.73(d)(3) of the PTO's regulations was lawfully promulgated pursuant to the agency's rulemaking authority under section 316(a)(4) of the Patent Act.

This court has held that 35 U.S.C. § 2(b)(2)(A), which authorizes the PTO to issue regulations that "govern the conduct of proceedings in the Office," does not authorize the PTO to issue "substantive" rules. *See Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335–36 (Fed. Cir. 2008). But

section 316(a)(4) refers broadly to regulations "governing *inter partes* review and the relationship of such review to other proceedings" before the PTO, and it provides a separate source of rulemaking authority for the PTO to issue such regulations.[2]

Thus, contrary to SoftView's contention, section 316(a)(4) is not limited to authorizing the PTO to issue procedural rules. The Supreme Court made that point explicitly in *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016), in which the Court distinguished section 316(a)(4) from section 2(b)(2)(A), which this court had interpreted as being "limited to procedural rules."[3] *Id.* at 277. The Court held the caselaw interpreting section 2(b) inapplicable because section 316(a)(4) is not limited to "proceedings," and

---

[2] To be sure, the PTO's authority under Section 316(a)(4) is not unbounded. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14 (1976). Section 316(a)(4) does not grant the PTO the authority to legislate new patent laws, but rather charges it with prescribing regulations governing IPR proceedings. *See* Oral Arg. 26:00–50 (appellee conceding that the PTO does not have "unfettered" authority under section 316(a)(4)). We do not define the exact limits of this statutory provision today but narrowly determine that it authorized the PTO to promulgate section 42.73(d)(3)(i). The task of defining the bounds of section 316(a)(4) is for a later date and to be decided on a record with briefing more dedicated to that issue and in consideration of the Supreme Court's recent ruling in *Loper Bright Enters. v. Raimondo*, Nos. 22-451, 22-1219, (U.S. June 28, 2024).

[3] The Court questioned whether section 2(b)(2)(A) itself should be limited to procedural rules, noting that the statute "does not clearly contain the Circuit's claimed limitation." *Cuozzo*, 579 U.S. at 277.

instead applies "broadly to regulations 'establishing and governing inter partes review.'" *Id.*

Section 42.73(d)(3), which prohibits "taking action inconsistent with [an] adverse judgment," is clearly directed to "governing inter partes review" and the "relationship of such review to other proceedings" before the PTO. As the PTO explained when it adopted the set of regulations to which section 42.73(d)(3) belongs, one of the purposes of those regulations is to "ensure the integrity of the trial procedures." *Rules of Practice II*, 77 Fed. Reg. at 48612. Preventing a patent owner or applicant from acting inconsistently with the outcome of an IPR proceeding ensures that the decisions in those proceedings have practical effect. Preventing such inconsistent action is therefore closely tied to the statutory grant of authority to issue regulations "governing *inter partes* review."

Section 42.73(d)(3)(i) provides a specific example of such an inconsistent action. It would be inconsistent with the decision in an IPR if, for example, a patent owner obtained claims not patentably distinct from those canceled in the IPR by way of a continuation or reissue application. Section 42.73(d)(3)(i) thereby serves the same purpose as the more general provision in section 42.73(d)(3): ensuring the integrity of the proceedings before the PTO by preventing actions that would undermine the outcomes of those proceedings. As such, the estoppel provision in section 42.73(d)(3)(i) falls within the rulemaking authority granted to the PTO in section 316(a)(4) of the Patent Act.

## IV

Although we agree that the PTO was authorized to promulgate section 42.73(d)(3)(i), we disagree with the Board's application of that regulation to previously issued claims. By its terms, the regulation applies to "obtaining" a claim—not maintaining an existing claim. For that reason, we vacate the Board's decision as to the "issued claims"

on appeal but affirm its application of the regulation to the "amended claims."[4]

A

Two other panels of the Board have previously held that section 42.73(d)(3)(i) does not apply to issued claims. In *Apple Inc. v. Contentguard Holdings, Inc.*, the Board explained that

> comments accompanying the rule suggest that it is intended to preclude recapturing in another USPTO proceeding—e.g., prosecuting a continuing or reissue application—subject matter that was lost in an AIA proceeding. Thus, this rule does not preclude Patent Owner from defending the patentability of the challenged claims.

IPR2015-00458, at *8 (P.T.A.B Jul. 15, 2015) (internal citation omitted); *see also Gen. Elec. Co. v. United Techs. Corp.*, IPR2017-00428, at *8 (P.T.A.B Jun. 22, 2018).

The Board in the present case found the decisions in *Apple v. Contentguard* and *General Electric v. United Technologies* distinguishable because those decisions were in IPR cases, whereas the present case concerns an *inter partes* reexamination. Unlike IPR proceedings, the Board reasoned, *inter partes* reexaminations are "examination-like" proceedings, warranting the application of a different

---

[4] SoftView's notices of appeal recite fewer than all rejected claims. The issued claims on appeal are those that are both listed in SoftView's notices of appeal and do not belong to the "amended claims." The issued claims on appeal include claims 3, 6, 11, 18, 30–32, 35, 37–38, 41, 50, 53, 55, 69–70, 75, 87, 111, 128, 131, 133–34, 144–45, 147, 150–51, 154, 161, 165, 168–69, 171, 182, 184–87, 189–94, 196, 199, 203–04, 206–07, 209, 216, 253–54, 264, 267, 269, 282, 285–88, 290–94, 296, 303, 304–07, 310, and 318–22.

estoppel standard. J.A. 76; *but see Cuozzo*, 579 U.S. at 279 ("Although Congress changed the name from 'reexamination' to 'review,' nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely, to reexamine an earlier agency decision.").[5]

We agree with the Board's conclusions in *Apple v. Contentguard* and *General Electric v. United Technologies*, and we hold that the reasoning in those cases applies to both IPRs and *inter partes* reexaminations. For purposes of section 42.73(d)(3)(i), we see no meaningful distinction between maintaining a non-distinct claim in an IPR proceeding and maintaining such a claim in an *inter partes*

---

[5] In support of that distinction, the Board in this case cited *Ex parte Nelson*, 2020 WL 8186425 (P.T.A.B. Dec. 31, 2020), in which the patent owner argued, in an *inter partes* reexamination, that "obtaining" did not include maintaining claims. But the Board in *Nelson* did not address that argument. Instead, the Board rejected the patent owner's position because the provision in section 42.73(d)(3) that prohibits a patent owner from taking "action inconsistent with the adverse judgment" separately estopped the patent owner from arguing issues decided in the earlier IPR. *Nelson* ultimately held that estoppel applied, "but only to the extent that Appellant's arguments [were] inconsistent with the prior adverse judgment." 2020 WL 8186425, at *7; *see also id.* at *5 ("Appellant's narrow focus on the single example provided in sub-section (i) ignores the broader language in § 42.73(d)(3)," which "is not limited to . . . obtaining a claim that is not patentably distinct from a finally canceled claim." (cleaned up)). The Board in *Nelson* did not hold, as the Board panel in this case believed, that section 42.73(d)(3)(i) has the effect of prohibiting a patent owner from maintaining non-distinct claims in *inter partes* reexamination proceedings.

reexamination, and we note that the regulation does not draw any such distinction.

Drawing a distinction between obtaining a new claim and maintaining a previously issued claim makes sense. It is reasonable to characterize "obtaining" a new claim that is not patentably distinct from a finally refused or canceled claim" as an "action inconsistent with the adverse judgment" under 37 C.F.R. § 42.73(d)(3), because such an action can fairly be viewed as an effort to circumvent the prior adverse judgment. By contrast, seeking to maintain an already issued claim cannot be viewed as circumventing a subsequent decision on related claims. We therefore conclude that, as the plain language of the rule suggests, the PTO elected not to include the latter class of claims within the scope of the estoppel rule in section 42.73(d)(3)(i). Accordingly, we vacate the Board's decision as to the issued claims that the Board invalidated based on estoppel.

B

SoftView does not challenge the Board's holding that claims amended during an *ex parte* reexamination are "obtained" for purposes of section 42.73(d)(3)(i). Instead, SoftView argues that the amended claims at issue are patentably distinct from the claims canceled in the IPR proceeding. Specifically, SoftView challenges the Board's general methodology of considering whether two obvious limitations, when combined, perform differently such that their combination renders the resulting claim nonobvious. SoftView further argues that errors in claim construction infected the Board's analysis of various claims. We affirm the Board's conclusions on these issues.

The question whether claims are patentably distinct focuses on "the differences in subject matter between the claims." *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1361 (Fed. Cir. 2009). That step "is analogous to an obviousness analysis under 35 U.S.C. § 103." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1377

(Fed. Cir. 2012). In general, the combination of known elements may be nonobvious if the invention as a whole "is more than the predictable use of prior art elements according to their established functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). The Board's "patentably distinct" analysis merely applied *KSR's* instruction to the canceled claims rather than to prior art references. The Board evaluated whether the combination of the canceled claim limitations—all of which are individually in the prior art—made them anything more than the obvious sum of their parts. The Board concluded that it did not.

There are 107 amended claims at issue in this case. SoftView does not raise specific arguments with respect to whether particular amended claims are patentably distinct from the canceled claims. Our review is therefore limited to the Board's general methodology, which we uphold. We do not address whether that methodology was correctly applied to specific claims. We also do not address whether the various claim constructions SoftView challenges were improper. Even if we were to agree with SoftView's positions, SoftView's failure to tie its claim construction arguments to specific claims prevents us from determining whether the Board's constructions "could impact the conclusion." *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1068 (Fed. Cir. 2003). We therefore affirm the application of section 42.73(d)(3)(i) to the amended claims.

## V

We have considered SoftView's remaining arguments and find them unpersuasive. For the reasons stated, we affirm the Board's application of section 42.73(d)(3)(i) to the amended claims, but we vacate and remand for further consideration of the application of the regulation to issued claims 3, 6, 11, 18, 30–32, 35, 37–38, 41, 50, 53, 55, 69–70, 75, 87, 111, 128, 131, 133–34, 144–45, 147, 150–51, 154, 161, 165, 168–69, 171, 182, 184–87, 189–94, 196, 199, 203–

04, 206–07, 209, 216, 253–54, 264, 267, 269, 282, 285–88, 290–94, 296, 303, 304–07, 310, and 318–22.

**AFFIRMED-IN-PART AND VACATED AND REMANDED-IN-PART**

COSTS

No costs.